1   Robert F. Vaage, Esq.  (SBN 106437)
    rfvaage@vaagelaw.com
2   Elizabeth H. Teixeira, Esq. (SBN 259788)
    eteixeira@vaagelaw.com
3   LAW OFFICES OF ROBERT VAAGE
    110 West C Street, Suite 2300
4   San Diego, CA  92101-3910
    Telephone:  (619) 338-0505
5   Facsimile:   (619) 338-0588

6   Attorneys for Plaintiff JEROME LEW

7

8

9              **UNITED STATES DISTRICT COURT**

10      **CENTRAL DISTRICT OF CALIFORNIA, WEST DISTRICT**

11

12  JEROME LEW,                          Case No:  2:14-CV-8303-MWF (VBK)

13              Plaintiff,               *[On Removal from Superior Court of California,*
                                         *County of Los Angeles, Santa Monica*
14          v.                           *Courthouse, Case No.  SC123264]*

15  MEDTRONIC, INC.; MEDTRONIC           PLAINTIFF'S MEMORANDUM OF
16  SOFAMOR DANEK USA, INC.; and         POINTS AND AUTHORITIES IN
    DOES 1 through 100, inclusive,       SUPPORT OF MOTION FOR ORDER
17                                        GRANTING LEAVE TO AMEND/
            Defendants.                  JOINDER TO COMPLAINT AND
18                                        REMAND; EXHIBITS IN SUPPORT
                                         THEREOF

19                                       Hearing Date:     December 15, 2014
                                         Hearing Time:     10:00 a.m.
20                                       Hearing Dept:     Courtroom 1600

21                                       Hon. Michael W. Fitzgerald (Judge
                                         Presiding)
22

23                                       Complaint Filed:   October 17, 2014

24                                       [Filed concurrently with Plaintiff's
                                         Notice of Motion; Decl. of Robert F.
25                                       Vaage; Decl. of Jerome Lew; Request for
                                         Judicial Notice]

26

27

28

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES............................................ 1

I.     INTRODUCTION.................................................................................. 1

II.    PROCEDURAL HISTORY ......................................................................... 2

III.   LEGAL ARGUMENT ............................................................................. 4

       A.    Justice Requires Leave to Amend....................................................... 4

       B.    DR. WANG and THE REGENTS May be Joined 7
             as Permissive Parties................................................................. 7

       C.    The Court Has Discretion to Permit Joinder and Remand
             the Action to State Court under 28 USC §1447(e) ............................ 10

       D.    Amendment to Join DR. WANG and THE REGENTS
             Is Needed for Just Adjudication.......................................................... 11

       E.    The Statute of Limitations Would Not Preclude an
             Original Action against DR. WANG and THE REGENTS
             in State Court ................................................................................. 12

       F.    There Has Been No Delay in Requesting Joinder .............................. 13

       G.    The Claims Against DR. WANG and THE REGENTS
             Are Valid......................................................................................... 13

       H.    Plaintiff Is Not Joining DR. WANG and
             THE REGENTS for an Improper Purpose .......................................... 16

       I.    Joinder Is Still Allowed Even with the Existence
             of a State Court Action against Joinder Defendants.......................... 18

       J.    Denial of the Motion to Amend/Joinder and Remand
             Will Prejudice Plaintiff ................................................................. 19

IV.    CONCLUSION ...................................................................................... 20

## **TABLE OF AUTHORITIES**

**Federal Cases**                                                                 **Page(s)**

*Boon v. Allstate Ins. Co.* (C.D.Cal. 2002) 229 F.Supp.2d, 1016................... 13 (fn2)

*CP Nat'l Corp v. Bonneville Power Admin.* (9th Cir. 1991) 928 F.2d 905 ........... 12

*Hamilton Materials, Inc. v. Dow Chem. Corp*.

    (9th Cir. 2007) 494 F.3d 1203 ....................................................... 17

*Hayfield v. Home Depot* (E.D. Pa. 2001) 168 F.Supp.2d 436......................... 6 (fn1)

*IBC Aviation Servs., Inc. v. Compania Mexicana de Aviacion,*

    *S.A. de C.V.* (N.D. Cal.2000) 125 F.Supp.2d 1008 ................................ 11, 12

*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*

    (1982) 456 U.S. 694 ....................................................................... 18

*Mammano v. American Honda Motor Co., Inc.*

    (W.D. N.Y. 1996) 941 F. Supp. 323 ................................................. 18

*Mayes v. Rapoport* (9th Cir. 1999) 198 F.3d 457.......................................... 11

*Newcombe v. Adolf Coors Co.* (9th Cir 1998) 157 F.3d 686 ............................ 10

*Righetti v. Shell Oil Co.* (N.D. Cal. 1989) 711 F.Supp. 531 ............................ 10

*Shields v. Barrow* (1855) 58 U.S. (17 How.) 130 ......................................... 12

*Vanderzalm v. Sechrist Industries, Inc.* (E.D. N.Y. 2012)

    875 F.Supp.2d 179........................................................................ 19

*Wilkinson v. Shackelford* (8th Cir. 2007) 478 F.3d 957 .................................. 17


**State Cases**                                                                   **Page(s)**

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*

    (1994) 7 Cal.4th 503..................................................................... 6, 7

*Nogart v. Upjohn Co.*  (1999) 21 Cal.4th 383 ............................................. 12

*Stueve Bros. Farms, LLC v. Berger Kahn* (2013) 222 Cal.App.4th 303 ............... 12

///

**<u>Federal Statutes</u>**                                               **<u>Page(s)</u>**

28 United States Code §1441(b) ..................................................................... 2

28 United States Code §1447 ............................................................... 10, 18

28 United States Code §1447(a) ............................................................... 10

28 United States Code §1447(e) .......................................... 1, 4, 10, 11, 13 (fn2)

Federal Rules of Civil Procedure, Rule 15(a)(2) .................................... 1, 4

Federal Rules of Civil Procedure, Rule 19(a) ........................................ 11

Federal Rules of Civil Procedure, Rule 20(a) ................................. 1, 7, 10

**<u>California Statutes</u>**                                           **<u>Page(s)</u>**

Code of Civil Procedure §335.1 .................................................................. 12

Code of Civil Procedure §338(d) ........................................................... 2, 12

Code of Civil Procedure §364 ............................................................... 2, 17

Code of Civil Procedure §364(a) ............................................................... 2

Code of Civil Procedure §1048(a) ............................................................ 17

Health & Safety Code §111295 .................................................................. 1

Health & Safety Code §111550 .................................................................. 1

Memorandum of Points and Authorities in Support of Motion to Amend, Joinder and Remand; Exhibits

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

In this action, Plaintiff JEROME LEW (hereinafter "MR. LEW") asserts three causes of action stemming from his cervical spine surgery on May 11, 2009, performed by Jeffrey C. Wang, M.D. ("DR. WANG"), at The Regents of the University of California UCLA Medical Center in Santa Monica, California ("THE REGENTS"):  Fraud by Concealment, Battery, and Negligence.  Plaintiff alleges that Defendants MEDTRONIC, INC., and MEDTRONIC SOFAMOR DANEK USA, INC. (hereinafter referred collectively as "MEDTRONIC") conspired with DR. WANG and THE REGENTS to commit fraud and battery by implanting in him an unapproved/uncleared corpectomy cage and using it with a bone morphogenic protein called Infuse®, both manufactured and provided by MEDTRONIC (Exh. 1, ¶¶68, 70, 94, 95).  Plaintiff further alleges that the corpectomy cage, individually and with the Infuse® bone graft, were a new device and/or adulterated device that MEDTRONIC delivered to DR. WANG at THE REGENTS' hospital for implant in MR. LEW in violation of California Health & Safety Code §§111295 and 111550 (Exh. 1, ¶¶121-126).

Plaintiff asserts that DR. WANG and THE REGENTS, as co-conspirators with MEDTRONIC, are necessary and indispensable parties to the conspiracy to commit fraud and battery causes of action.  By this motion, Plaintiff seeks leave to amend the complaint to add and join DR. WANG and THE REGENTS as defendants pursuant to Federal Rule of Civil Procedure ("FRCP") §§15(a)(2) and 20(a), and 28 USC §1447(e).  Plaintiff further seeks to remand the case for lack of subject matter jurisdiction/lack of diversity pursuant to 28 USC §1447(e).

///

///

///

## II.

## PROCEDURAL HISTORY

Plaintiff was originally represented by the firm of Robinson, Calcagnie, Robinson, Shapiro, Davis, Inc. (hereinafter "Robinson Firm").  On September 18, 2012, the Robinson Firm served Notices of Intention to Commence Action letters pursuant to California Code of Civil Procedure ("CCP") §364 to DR. WANG and THE REGENTS (Exh. 2, CCP §364 Notices) and other health care providers.  "No action based upon the health care provider's professional negligence may be commenced unless the defendant has been given at least 90 days' prior notice of the intention to commence the action." CCP §364(a).  The time for commencement of an action against DR. WANG and THE REGENTS was extended for 90 days per CCP §364(d).

On September 21, 2012, the Robinson Firm filed a complaint against the MEDTRONIC defendants in state court (Exh. 3).  In that complaint, Plaintiff stated his intent to add DR. WANG and THE REGENTS to the state court action once the 90-day wait period expired without resolution (Exh. 3, p. 11, ¶¶57 and 58).

Prior to the expiration of the 90-day notice period per CCP §364, on October 16, 2012, MEDTRONIC removed the case to federal court under 28 USC §1441(b) based on complete diversity between the parties (Exh. 4, Notice of Removal of Action).

On October 26, 2012, and October 29, 2012, Counsel for MR. LEW and MEDTRONIC entered into a "Tolling Agreement" whereby Plaintiff agreed to dismiss without prejudice his complaint against MEDTRONIC in exchange for MEDTRONIC's agreement to "toll or suspend the running of any and all statutes of limitations that may apply to the claims asserted in the Complaint as of September 21, 2012, the date the Complaint was originally filed" (Exh. 5, Tolling Agreement, ¶6).

///

1      Shortly thereafter, on November 6, 2012, the Honorable Josephine Staton
2  Tucker ordered dismissal without prejudice of the federal complaint (Exh. 6, Order).
3      On December 19, 2012, the Robinson Firm filed a complaint in state court
4  against DR. WANG, THE REGENTS, and other healthcare providers (Exh. 7).
5      On March 8, 2013, the *Lew v. Wang, et al.* case was ordered transferred from
6  the Orange County Superior Court to the Los Angeles Superior Court, Santa Monica
7  Courthouse.  The parties stipulated to the change of venue (Exh. 8).
8      On August 11, 2014, Plaintiff filed a Substitution of Attorney, substituting the
9  Law Offices of Robert Vaage as new counsel of record (Exh. 9).
10      On September 19, 2014, Counsel for Medtronic indicated by letter Medtronic's
11  position that Mr. Lew had expressly agreed to re-file and maintain his action in
12  federal court, per the Tolling Agreement (Exh. 10).  Plaintiff disagreed.  His position
13  was that the parties cannot stipulate to jurisdiction (Exh. 15)
14      On September 22, 2014, new counsel for plaintiff gave notice to
15  MEDTRONIC's counsel of plaintiff's desire to end the Tolling Agreement (Exh. 11,
16  Vaage Decl. ¶12).
17      On October 1, 2014, by stipulation Plaintiff filed a Second Amended
18  Complaint against DR. WANG and THE REGENTS (Exh. 12, hereinafter
19  "WANG/REGENT action") in the state court.
20      On October 16, 2014, Plaintiff filed a complaint against the MEDTRONIC
21  defendants in state court (Exh. 1, hereinafter "MEDTRONIC action").
22      At the time of filing the MEDTRONIC action in state court, Plaintiff also filed
23  a Notice of Related Case, identifying the existing WANG/REGENT action as
24  involving "the same parties and same or similar claims," arising from "the same or
25  substantially identical transactions, incidents or events requiring the determination of
26  the same or substantially identical questions of law or fact," and likely requiring
27  "substantial duplication of judicial resources if heard by different judges" (Exh. 13).
28  The intent was to move to consolidate the MEDTRONIC action and the

1    WANG/REGENTS action.  See Vaage Decl. ¶20.

2        On October 27, 2014, before Plaintiff served the state complaint on

3    MEDTRONIC or could move to consolidate, MEDTRONIC removed the case to

4    federal court, again based on diversity (Exh. 14).

5        During the meet-and-confer process for MEDTRONIC's Motion to Dismiss,

6    Plaintiff's counsel e-mailed counsel for MEDTRONIC, Mildred Segura, on October

7    31, 2014, explaining that the items in the tolling document conferring subject matter

8    jurisdiction were unconscionable and unenforceable (Exh. 15).

9        On November 3, 2014, pursuant to Local Rule 7-3, counsel for Plaintiff

10    advised MEDTRONIC's counsel that he intended to file a motion to amend his

11    complaint to join Dr. Wang and The Regents to the complaint and then seek remand

12    under 28 USC §1447(e) (Exh. 16).  After an exchange of e-mails on November 3,

13    2014, November 4, 2014, and November 5, 2014, the parties were unable to reach a

14    resolution that would eliminate the need for the instant motion (Vaage Decl. ¶18).

15        Attached as Exhibit 17 is a copy of plaintiff's proposed First Amended

16    Complaint.

17                                    **III.**

18                            **LEGAL ARGUMENT**

19    A.    <u>**Justice Requires Leave to Amend**</u>

20        Federal Rules of Civil Procedure ("FRCP") Rule 15(a)(2) states in pertinent

21    part, "In all other cases, a party may amend its pleading only with the opposing

22    party's written consent or the court's leave.  The court shall <u>freely give leave</u> when

23    justice so requires." FRCP 15(a)(2), emphasis added.

24        Plaintiff's MEDTRONIC Complaint (Exh. 1) is replete with allegations and

25    factual support that MEDTRONIC conspired with DR. WANG and THE REGENTS

26    to commit fraud and battery and that all three were necessary parties to the

27    conspiracy.

28    ///

---

Under the fraud cause of action, plaintiff described the conspiracy as follows:

> Defendants [MEDTRONIC] would provide the Infuse® and the experimental corpectomy cage, The Regents would allow the unapproved/uncleared device into its hospital, and Dr. Wang would provide the patient/human subject, MR. LEW. [Exh. 1, p. 10, ¶68.]

These allegations are repeated in the proposed First Amended Complaint:

> 69. Plaintiff is informed and believes and thereon alleges that Defendants MEDTRONIC and DOES 1 through 50 conspired with DR. WANG and THE REGENTS and DOES 51 through 100 to convince MR. LEW to undergo surgery in his cervical spine. Plaintiff is informed and believes and thereon alleges that Defendants were experimenting with the use of rhBMP, including Infuse®, in the cervical spine. MEDTRONIC would provide the Infuse® and the experimental corpectomy cage, THE REGENTS would allow the unapproved/uncleared device into its hospital, and DR. WANG would provide the patient/human subject, MR. LEW. [Exh. 17, pp. 11-12, ¶69.]

Under the battery cause of action, plaintiff described the conspiracy as follows:

> 95. In order to perpetrate the battery, Dr. Wang needed the Defendants' [MEDTRONIC's] unapproved/uncleared cervical corpectomy cages and Infuse®. The Defendants [MEDTRONIC] needed The Regents to allow the unapproved or uncleared corpectomy cage and Infuse® into its hospital. The Defendants [MEDTRONIC] needed DR. WANG to provide the test subject for the experimental surgery on the cervical spine using their unapproved/uncleared devices. [Exh. 1, p. 16, ¶95.]

These allegations are repeated in the proposed First Amended Complaint:

> 96. In order to perpetrate the battery, DR. WANG and THE REGENTS and DOES 51 through 100 needed MEDTRONIC's unapproved/uncleared cervical corpectomy cages and Infuse®. DR. WANG, MEDTRONIC and DOES 1 through 100 needed THE REGENTS to allow the unapproved or uncleared corpectomy cage and Infuse® into its hospital. MEDTRONIC and DOES 1 through 50 needed DR. WANG to provide the test subject for the experimental surgery on the cervical spine using MEDTRONIC's unapproved/uncleared devices. [Exh. 17, p. 17, ¶96.]

Under California law[1], conspiracy imposes tort liability **co-equal** with immediate tortfeasors.

> Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration. By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy. In this way, a coconspirator incurs tort liability co-equal with the immediate tortfeasors. [*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510-511.]

---

[1] "When federal jurisdiction is based on diversity of citizenship under 28 U.S.C. §1332, **federal courts must,** '[e]xcept in matters governed by the Federal Constitution or by Acts of Congress, ... **[apply] the law of the State**.'" *Erie Railroad v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)." *Hayfield v. Home Depot* (E.D. Pa. 2001) 168 F.Supp.2d 436, 444, emphasis added.

" '[T]he major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity.' " *Id.* at 511, internal citations omitted.

As joint tortfeasors, DR. WANG and THE REGENTS would be liable to plaintiff arising out of the same occurrences and common facts as those alleged against MEDTRONIC.    Plaintiff's proposed First Amended Complaint joins DR. WANG and THE REGENTS as co-conspirator defendants and joint tortfeasors as to the Fraud by Concealment and Battery causes of action (Exh. 17, FAC). Neither MEDTRONIC nor DR. WANG nor THE REGENTS alone could perpetrate this fraud and battery on MR. LEW.  The triad of defendants required each other's agreement and cooperation in order to proceed with the experimental surgery on MR. LEW.  DR. WANG required MEDTRONIC's unlawful devices.  MEDTRONIC required DR. WANG to experiment with the unlawful devices.  DR. WANG needed a hospital provided by THE REGENTS to perform the experimental surgery.  Both DR. WANG and MEDTRONIC needed THE REGENTS to allow the unlawful devices into its hospital for implantation in MR. LEW.  Therefore, DR. WANG and THE REGENTS are necessary parties to the action, along with MEDTRONIC.

## B.    DR. WANG and THE REGENTS May be Joined as Permissive Parties

Under FRCP 20(a), defendants may be joined in one action "if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or **arising out of the same transaction**, **occurrence**, or **series of transactions or occurrences** and **if any question of law or fact common to all defendants** will arise in the action."  FRCP 20(a), emphasis added.

DR. WANG and THE REGENTS are permissive parties because the relief sought against them arises out of the same occurrence, the experimental surgery performed on May 11, 2009, and because the questions of fact and law are common to MEDTRONIC, DR. WANG, and THE REGENTS under conspiracy allegations.

In Plaintiff's proposed First Amended Complaint, he alleges as follows against Defendants MEDTRONIC, DR. WANG and THE REGENTS:

71.   Plaintiff further alleges that as part of the conspiracy to commit fraud, Defendants intentionally concealed and failed to disclose to plaintiff the following facts:

a.   That DR. WANG would be using the Infuse® Bone Graft product during the cervical surgery he performed on the Plaintiff on May 11, 2009;

b.   That the Infuse® Bone Graft Product had received only limited FDA approval for certain specific procedures and was not approved for use in the cervical spine;

c.   That there were additional risks involved in using the Infuse® Bone Graft product in the cervical spine, including unwanted bony overgrowth and migration to sensitive nerve areas which could exacerbate Plaintiff's pain;

d.   That use of the Infuse® Bone Graft product could cause severe, debilitating, permanent neck and back pain;

e.   That DR. WANG had a financial relationship with MEDTRONIC, the medical device manufacturer of the Infuse® Bone Graft product and corpectomy cage DR. WANG used during the procedure;

f.   That MEDTRONIC provided to DR. WANG a corpectomy cage that was not approved or cleared by the FDA for use in the cervical spine;

g.   That DR. WANG intended to use and did use a corpectomy cage that was not approved or cleared by the FDA for use in the cervical spine during the procedure;

///

h.    That DR. WANG intended to use and did use a corpectomy cage that was not approved or cleared by the FDA for use with the Infuse® Bone Graft Product;

i.    That the use of an unapproved or uncleared corpectomy cage meant that it had never been determined as safe and effective for use in the manner in which DR. WANG and MEDTRONIC intended to use the cage during Plaintiff's surgery, and that it carried additional risks of unwanted bone growth and migration and danger to plaintiff's nerves;

j.    That DR. WANG and MEDTRONIC were experimenting with uncleared/ unapproved products for the cervical spine and using Plaintiff as a test subject;

k.    That THE REGENTS allows the use of Infuse® in a manner that was not considered safe and was against its own policies; and

l.    That THE REGENTS allowed unapproved or uncleared medical devices into its hospital for implant in patients, like MR. LEW.   [Exh. 17, FAC, pp. 12-13, ¶71.]

Under the Battery Cause of Action in the proposed First Amended Complaint, Plaintiff alleges conspiracy by Defendants MEDTRONIC, DR. WANG, and THE REGENTS, as follows:

95.  Plaintiff is informed and believes and thereon alleges that Defendants DR. WANG and THE REGENTS and DOES 51 through 100 conspired with MEDTRONIC and DOES 1 through 50 to commit battery on patients undergoing cervical spine surgery by implanting unapproved/uncleared corpectomy cages and the Infuse® bone graft without the patient's consent.

96.   In order to perpetrate the battery, DR. WANG and THE REGENTS and DOES 51 through 100 needed MEDTRONIC's unapproved/uncleared cervical corpectomy cages and Infuse®. DR. WANG, MEDTRONIC and DOES 1 through 100 needed THE REGENTS to allow the unapproved or uncleared corpectomy cage and Infuse® into its hospital.   MEDTRONIC and DOES 1 through 50 needed DR. WANG to provide the test subject for the experimental surgery on the cervical spine using MEDTRONIC's unapproved/uncleared devices.

[Exh. 17, FAC, pp. 17-18, ¶¶95-96.]

As joint tortfeasors and conspirators with MEDTRONIC, DR. WANG and THE REGENTS are permissive parties who may be joined under FRCP 20(a).

**C.**   **The Court Has Discretion to Permit Joinder and Remand the Action to State Court under 28 USC §1447(e)**

The law governing amendment to a complaint to add non-diverse defendants whose joinder would destroy subject matter jurisdiction, i.e., diversity, is 28 USC §1447.   "In any case removed from a State court, the district court may issue all necessary orders and process to bring before it all proper parties whether served by process issued by the State court or otherwise."   28 USC §1447(a).   "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or **permit joinder and remand the action to the State Court**."   28 USC §1447(e), emphasis added.

Under the permissive language of 28 USC §1447(e), "Congress gave the courts broad discretion to allow joinder, even though remand may result."   *Righetti v. Shell Oil Co.* (N.D. Cal. 1989) 711 F.Supp. 531, 535.   The decision to grant leave to amend a complaint to add diversity-destroying defendants is left to the discretion of the district courts.   See *Newcombe v. Adolf Coors Co.* (9th Cir 1998) 157 F.3d 686, 691.

///

The Northern District Court of the State of California considered the following factors in deciding whether to allow amendment to add non-diverse defendants:

> (1) whether the party sought to be joined is needed for just adjudication and would be joined under Federal Rule of Civil Procedure 19(a); (2) whether the statute of limitations would preclude an original action against the new defendants in state court; (3) whether there has been unexplained delay in requesting joinder; (4) whether joinder is intended solely to defeat federal jurisdiction; (5) whether the claims against the new defendant appear valid; and (6) whether denial of joinder will prejudice the plaintiff.  [Internal citations omitted.]
>
> [*IBC Aviation Servs., Inc. v. Compania Mexicana de Aviacion, S.A. de C.V.* (N.D. Cal.2000) 125 F.Supp.2d 1008, 1011.]

Under the same guiding principles, Plaintiff will demonstrate that the parties sought to be joined, DR. WANG and THE REGENTS, are needed for just adjudication; the statute of limitations would not preclude an original action against the new defendants in state court; there has been no delay in requesting joinder; the claims against DR. WANG and THE REGENTS are valid; their joinder is not intended solely to defeat federal jurisdiction; and denial of joinder will prejudice the plaintiff.

**D.    Amendment to Join DR. WANG and THE REGENTS Is Needed for Just Adjudication**

When evaluating whether a party sought to be joined is paramount to just adjudication of the case, courts typically consider whether a party would meet the less restrictive variant of the "necessary" standard under FRCP 19(a).  *See*, *IBC Aviation Servs., Inc., supra*, at 1012.  Under 1447(e), the court has more flexibility to allow joinder of non-diverse parties than a Rule 19(a) analysis.  *See Mayes v. Rapoport* (9th Cir. 1999) 198 F.3d 457, 462.  The 9th Circuit has described necessary

parties under Rule 19 as persons "having an interest in the controversy, and who ought to be made a party, in order that the court may act on that rule which requires it to decide and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved."  *CP Nat'l Corp v. Bonneville Power Admin.* (9th Cir. 1991) 928 F.2d 905, 912, citing *Shields v. Barrow*, 58 U.S. (17 How.) 130, 139, 15 L.3d. 158 (1855).  The necessity standard is also met when "failure to join will lead to separate and redundant actions." *IBC Aviation Servs., Inc., supra*, at 1011.

DR. WANG and THE REGENTS are joint tortfeasors under conspiracy theories of liability with MEDTRONIC.  Failure to join will lead to separate and redundant actions and possibly inconsistent verdicts.  For example, the state court jury could find no battery by DR. WANG, but a federal court jury could find that MEDTRONIC was liable to plaintiff as a co-conspirator to commit battery with DR. WANG.  By allowing DR. WANG and THE REGENTS to be joined as defendants, the court may then remand the action to state court for consolidation, so that the state court may decide and finally determine the <u>entire controversy</u>.

**E.     The Statute of Limitations Would Not Preclude an Original Action against DR. WANG and THE REGENTS in State Court**

Plaintiff first learned or suspected that the corpectomy cage implanted in him was not a device approved or cleared by the FDA in October of 2013 (Decl. of Jerome Lew, ¶2).

The statute of limitations for battery is two years from the date of the wrongful act pursuant to CCP §335.1.  However, the "Discovery Rule" postpones the cause of action until plaintiff suspects/reasonably should suspect that he has been injured, the cause of the injury, and the tortious nature of conduct causing the injury.  *Nogart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397.

The statute of limitations for fraud by conspiracy is three years.  California Code of Civil Procedure §338(d), *Stueve Bros. Farms, LLC v. Berger Kahn* (2013) 222 Cal.App.4th 303.

Therefore, the statute of limitations would not preclude an original action against co-conspirators DR. WANG and THE REGENTS on both causes of action for fraud and battery.

**F.    There Has Been No Delay in Requesting Joinder**

Plaintiff filed his complaint against MEDTRONIC in state court on October 16, 2014.    MEDTRONIC removed the case to federal court on October 27, 2014. Plaintiff is bringing the instant motion to amend/join defendants and remand within 30 days of the removal to federal court.

**G.    The Claims Against DR. WANG and THE REGENTS Are Valid**

Plaintiff's intention to bring this motion to amend and remand is not solely to defeat federal jurisdiction.    The conspiracy claims against MEDTRONIC, DR. WANG, and THE REGENTS are valid.[2]    Plaintiff's motive in amending the complaint is to add necessary parties and have the case remanded to state court in order to consolidate the two cases for all purposes, including trial.

Comparing the MEDTRONIC complaint with the WANG/MEDTRONIC, multiple overlapping factual and legal allegations indicate an intention to consolidate the two cases.

Plaintiff alleged in the MEDTRONIC complaint that DR. WANG and THE REGENTS were indispensable parties:

> 6.  On December 19, 2012, Plaintiff filed a complaint based on the same underlying facts as the complaint herein against his treating surgeon, Jeffrey C. Wang, M.D. ("Dr. Wang"), Dr. Wang's employer, The Regents of the University of California, among others, in the Superior Court of the State of California, County of Los Angeles, Case No. SC120518.    That complaint

_____

[2] Under 1447(e), the court need not consider the validity or strength of a claim that eventually would be heard by the state court.    *See, Boon v. Allstate Ins. Co.* (C.D.Cal. 2002) 229 F.Supp.2d 1016, 1025.

was amended to include only Dr. Wang and The Regents of the University of California as defendants on October 1, 2014. **Plaintiff is informed and believes that Dr. Wang and The Regents of the University of California are indispensable parties to the adjudication of the damages upon which this action is based.** [Exh. 1, p. 2, ¶6, emphasis added.]

In Plaintiff's second amended complaint against Defendants WANG/REGENTS, Plaintiff makes similar factual allegations against these co-conspirators as Plaintiff does in his MEDTRONIC complaint:

156. Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, intentionally concealed or suppressed material facts from Plaintiff MR. LEW, including but not limited to the following:

a. That DR. WANG would be using the Infuse® Bone Graft Product during the surgery he performed on the Plaintiff on May 11, 2009;

b. That the Infuse® Bone Graft Product had received only limited FDA approval for certain specific procedures, and was not approved for use in the cervical spine;

c. That there were additional risks involved in using the Infuse® Bone Graft Product in the cervical spine, including unwanted bony overgrowth and migration of the bone to sensitive nerve areas which could exacerbate Plaintiff's pain;

d. That the FDA had warned physicians, including DR. WANG and DOES 1 through 50, about the risks of using Infuse® in the cervical spine and recommended that practitioners either use approved alternative treatments or consider enrolling as investigators in approved clinical studies;

e.      That use of the Infuse® Bone Graft Product could cause severe, debilitating, permanent neck and back pain;

f.      That at the time of plaintiff's proposed surgery, THE REGENTS were hosting an ongoing clinical trial on the safety and efficacy of the use of BMP, such as Infuse®, in the spine;

g.      That DR. WANG was a paid consultant of Medtronic, the medical device manufacturer of the Infuse® Bone Graft Product and corpectomy cage DR. WANG used during the procedure;

h.      That DR. WANG was a paid consultant of Biomet, the medical device manufacturer of the surgical plate DR. WANG intended to use during the procedure;

i.      That DR. WANG intended to use a corpectomy cage that was not approved or cleared by the FDA for use in the cervical spine during the procedure;

j.      That DR. WANG intended to use a corpectomy cage that was not approved or cleared by the FDA for use with the Infuse Bone Graft Product;

k.      That THE REGENTS allowed an unapproved, uncleared medical device, such as the corpectomy cage used in plaintiff's surgery, to be delivered to UCLA and implanted in and sold to plaintiff;

l.      That the use of an unapproved or uncleared corpectomy cage meant that it had never been determined as safe and effective for use in the manner in which DR. WANG intended to use the cage during Plaintiff's surgery, and that it

1    carried additional risks of unwanted bony overgrowth and

2    migration and danger to plaintiff's nerves;

3         m.    That alternative methods of surgery were

4    available;

5         n.    That plaintiff had evidence of ectopic bony

6    overgrowth in a March 2011 CT of the cervical spine ordered

7    by DR. WANG and completed at UCLA;

8         o.    That plaintiff's post-operative symptoms were not

9    normal and were signs indicative of bony overgrowth and

10   migration causing nerve damage from the use of Infuse.

11   [Exh. 12, pp. 24-25, ¶156.]

12

13   Further evidence of Plaintiff's intent to consolidate is also found in his Notice

14   of Related Case, where he advised the court with the filing of the *Lew v. Metronic, et*

15   *al.* complaint and that it and the *Lew v. Wang, et al.* complaint involved the same

16   parties, were based on the same of similar claims, arose from the same or

17   substantially identical events requiring the determination of the same or substantially

18   identical questions of law or fact, and was likely to require substantial duplication of

19   judicial resources if heard by different judges (Exh. 13).

20   The gravamen of plaintiff's claims against MEDTRONIC and the two joinder

21   defendants stem from conspiracy allegations:    MEDTRONIC conspired with

22   DR. WANG and THE REGENTS to commit battery and commit fraud by

23   concealment.    The claims are valid and therefore joinder and remand should be

24   granted.

25   **H.    Plaintiff Is Not Joining DR. WANG and THE REGENTS for an Improper**

26   **Purpose**

27   There is a general presumption against fraudulent joinder, and the burden of

28   proof is on the defendant to prove fraudulent joinder by clear and convincing

evidence.  *Hamilton Materials, Inc. v. Dow Chem. Corp*. (9th Cir. 2007) 494 F.3d 1203, 1206.

> We review a fraudulent joinder challenge to determine 'whether there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved.' *Filla v. Norfolk S. Ry*., 336 F.3d 806, 811 (8th Cir.2003). The district court was 'required to resolve all doubts about federal jurisdiction in favor of remand.' *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir.1997).  [*Wilkinson v. Shackelford* (8th Cir. 2007) 478 F.3d 957, 963.]

The 90-day wait period required by CCP §364 prevents a party from suing a health care provider during that window of time.  The Robinson Firm filed the original complaint naming the MEDTRONIC defendants during the 90-day hold created by CCP §364 with every intention of adding DR. WANG and THE REGENTS once the 90 days had run.  "Once the 90-day wait period expires without resolution, Plaintiff intends to amend his complaint to name Dr. Wang as a defendant" (Exh. 3, p. 11, ¶57) as well as to name THE REGENTS (Exh. 3, p. 11, ¶58).  MEDTRONIC took advantage of that 90-day window and used the lack of non-diverse parties to remove the action to federal court for complete diversity.  Counsel for the parties then entered into a Tolling Agreement (Exh. 5), and the case was subsequently dismissed without prejudice on November 6, 2012 (Exh. 6).

The only way to revive any causes of action subject to the Tolling Agreement and proceed with new causes of action against MEDTRONIC based on conspiracy with DR. WANG and THE REGENTS was to re-file the MEDTRONIC action in state court and then move to consolidate it with the existing state court action against DR. WANG and THE REGENTS.  However, before Plaintiff could serve the complaint or move to consolidate, MEDTRONIC again removed the case to federal

court for complete diversity, even knowing that Plaintiff was alleging that DR. WANG and THE REGENTS co-conspirators were indispensable parties (Exh. 1, p. 2, ¶6),

MEDTRONIC claims that the Tolling Agreement required Plaintiff to refile and maintain his action in federal court (Exh. 11). The Tolling Agreement stated, "If Claimant files a lawsuit concerning a claim that was tolled by this Tolling Agreement, the Clamant shall file such lawsuit only in the federal district where he is domiciled or where he had Infuse® implanted during a surgery or directly into an MDL, if one has been formed" (Exh. 5, p. 2, ¶9).

Plaintiff's counsel pointed out that any provision in the Tolling Agreement that conferred subject matter jurisdiction was unconscionable and unenforceable, and therefore he was not required to file his complaint in federal court (Exh. 15). "[N]o action of the parties can confer subject matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant, *California v. LaRue*, 409 U.S. 109 (1972), principles of estoppel do not apply, *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 17-18 (1951), and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings." *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee* (1982) 456 U.S. 694, 702.

Plaintiff's intent from his initial filing to the present motion has been to consolidate the MEDTRONIC action with the WANG/REGENTS action in state court. DR. WANG and THE REGENTS are not being joined for an improper reason.

## I. <u>Joinder Is Still Allowed Even with the Existence of a State Court Action against Joinder Defendants</u>

In *Mammano v. American Honda Motor Co., Inc.* (W.D. N.Y. 1996) 941 F. Supp. 323, the court allowed joinder and remand even though the defendants sought to be joined were already named defendants in state court. "In short, this action and the action against the individual defendants arise out of a common occurrence, and to require plaintiff to prosecute them separately in two different forums 'would be a

waste of judicial resources, which this court will not require.' [Internal citations omitted.]" *Id.* at 325.

In *Vanderzalm v. Sechrist Industries, Inc.* (E.D. N.Y. 2012) 875 F.Supp.2d 179, the court held that asserting claims in a second action against medical defendants named in a state action is not improper.

> This factual scenario – where a plaintiff seeks to join a non-diverse medical defendant who is also a defendant in a state medical malpractice action to a removed products liability action arising from the same transaction or occurrence – is not uncommon. In these similar cases, courts have generally found that asserting claims in the second action against the medical defendant was not improper, and that the plaintiff's motivation to consolidate the cases outweighed the motivation to destroy diversity. *Id.* at 189.

The fact that DR. WANG and THE REGENTS are already named defendants in state court does not preclude joinder. Plaintiff's motivation for joinder is to consolidate the MEDTRONIC action and WANG/REGENTS action in state court.

## J. Denial of the Motion to Amend/Joinder and Remand Will Prejudice Plaintiff

"[T]he fact that a plaintiff is motivated to destroy diversity will not necessarily weigh against joinder and remand where the destruction of diversity is not to avoid a federal forum, but rather to avoid multiple litigations and promote judicial economy." *Vanderzalm, supra,* at 188.

California law provides a mechanism to consolidate the two actions: "When actions involving a **common question of law or fact** are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated and it may make such orders concerning proceedings therein as may tend to **avoid unnecessary costs or delay**." California

1    Code of Civil Procedure §1048(a), emphasis added.

2         Furthermore, MEDTRONIC will not be prejudiced by remand and

3    consolidation with the existing WANG/REGENTS complaint in state court since

4    discovery cut-off is set for December 12, 2015, and no depositions have been taken to

5    date (Vaage Decl. ¶¶21, 22).  The current trial date for the WANG/REGENTS action

6    is January 11, 2016 (Vaage Decl. ¶22).

7         There is no question that the allegations against MEDTRONIC, DR. WANG,

8    and THE REGENTS involve common questions of law and fact and that they are

9    joint tortfeasors.  Should the court deny joinder and remand, Plaintiff will be required

10   to take duplicate depositions, conduct duplicate discovery, retain and pay for

11   duplicate experts to testify in two different actions and trials.  By having two separate

12   court actions in two different forums, there is always a risk of inconsistent verdicts,

13   which could be prejudicial to both parties.

14        Judicial economy will be served by amendment/joinder and remand to state

15   court, where the two cases can be consolidated.

16

17                                      **IV.**

18                                 **CONCLUSION**

19        The claims against MEDTRONIC, DR. WANG and THE REGENTS arise

20   from the same factual circumstances and involve common questions of law.

21   DR. WANG and THE REGENTS are alleged to be co-conspirators and joint

22   tortfeasors with MEDTRONIC and are therefore necessary parties to the just

23   adjudication of the case.  The statute of limitations would not preclude an original

24   action against DR. WANG and THE REGENTS in state court, and Plaintiff has not

25   delayed in requesting joinder.    Plaintiff's claims against DR. WANG and

26   THE REGENTS are valid and are not intended solely to defeat federal jurisdiction.

27   Plaintiff seeks to remand the case to state court so that he may move to consolidate

28   the two actions.  Denial of amendment/joinder of DR. WANG and THE REGENTS

1 | will prejudice the plaintiff by requiring duplicate, unnecessary costs, and creating
2 | potentially inconsistent verdicts. Therefore, it is to the economic benefit of all parties
3 | and the judicial system to have the entire controversy adjudicated only once, in the
4 | same forum.

5 |       Plaintiff respectfully requests that his motion to amend and join DR. WANG
6 | and THE REGENTS be granted, that Plaintiff be allowed to file his First Amended
7 | Complaint, and that the case then be remanded to state court for further adjudication.

8

9 | DATED:   November 13, 2014        Respectfully submitted,

10 |         LAW OFFICES OF ROBERT VAAGE

11

12 |         By:___*/s/  Robert F. Vaage*_____
13 |         Robert F. Vaage
   |         Attorney for Plaintiff

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

Exhibit 1
Page 22

CASE MANAGEMENT CONFERENCE

LISA HART COLE

JAN 2 8 2015          Date Dept 0 @ 8:30am

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

OCT 16 2014

Sherri R. Carter, Executive Officer/Clerk
By Darnetta Smith, Deputy

1  Robert F. Vaage, Esq.  (SBN 106437)
   LAW OFFICES OF ROBERT VAAGE
2  110 West C Street, Suite 2105
   San Diego, CA  92101-3910
3  Telephone:  (619) 338-0505
   Facsimile:  (619) 338-0588
4  E-mail:   rfvaage@vaagelaw.com

5  Attorneys for Plaintiff JEROME LEW

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              COUNTY OF LOS ANGELES, WEST DISTRICT

10

11 JEROME LEW,                              Case No:  SC123264

12          Plaintiff,                      COMPLAINT FOR DAMAGES FOR:

13    vs.                                   1.  Fraud
                                            2.  Battery
14 MEDTRONIC, INC.;                         3.  Negligence Per Se
   MEDTRONIC SOFAMOR DANEK USA,
15 INC.;  and DOES 1 through 100, inclusive,

16          Defendants.

17

18

19    COMES NOW Plaintiff JEROME LEW, who alleges as follows:

20                        **GENERAL ALLEGATIONS**

21    1.    The damages upon which this action is based occurred in the City of Santa Monica,

22 County of Los Angeles, state of California.

23    2.    At all times relevant herein, Plaintiff JEROME LEW ("Plaintiff" or "MR. LEW") is

24 and was a resident of Orange County, California.

25    3.    Defendant MEDTRONIC, INC., is a Minnesota corporation engaged in the business

26 of manufacturing, marketing, promoting and selling medical products and devices in California for

27 use on California citizens.  Medtronic maintains research, development, manufacturing and/or

28 distribution facilities in Los Angeles County.

                                    1
                         COMPLAINT FOR DAMAGES

Exhibit 1
Page 23

4.     Defendant MEDTRONIC SOFAMOR DANEK USA, INC., is a Tennessee corporation engaged in the business of manufacturing, marketing, promoting and selling medical products and devices in California for use on California citizens. Medtronic maintains research, development, manufacturing and/or distribution facilities in Los Angeles County. Defendants MEDTRONIC, INC., and MEDTRONIC SOFAMOR DANEK USA, INC., will hereinafter be collectively referred to as "MEDTRONIC."

5.     At all relevant times, MEDTRONIC maintained facilities dedicated to conduct research and development, manufacturing, or distribution in the following Southern California locations: Chatsworth and Northridge (Los Angeles County), Corona (Riverside County), Goleta (Santa Barbara County), and Santa Ana (Orange County). Medtronic also operates two Bakken Education Centers in Los Angeles and Woodland Hills (Los Angeles County), where thousands of medical professionals visit each year to gain hands-on experience with new technologies.

6.     On December 19, 2012, Plaintiff filed a complaint based on the same underlying facts as the complaint herein against his treating surgeon, Jeffrey C. Wang, M.D. ("Dr. Wang"), Dr. Wang's employer, The Regents of the University of California, among others, in the Superior Court of the State of California, County of Los Angeles, Case No. SC120518. That complaint was amended to include only Dr. Wang and The Regents of the University of California as defendants on October 1, 2014. Plaintiff is informed and believes that Dr. Wang and The Regents of the University of California are indispensable parties to the adjudication of the damages upon which this action is based.

7.     Plaintiff is informed and believes and thereon alleges that Jeffrey C. Wang, M.D., (hereinafter "Dr. Wang") is a resident of the County of Los Angeles, State of California, and is a physician duly licensed by the State of California to practice medicine and/or surgery in said state, under License No. 76303, and at all relevant times herein was rendering healthcare services to Plaintiff JEROME LEW.

8.     Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, The Regents of the University of California (hereinafter "The Regents"), is a corporation, incorporated in the State of California and licensed and doing business in the County

2

1    of Los Angeles, State of California, as UCLA Medical Center in Santa Monica, California.

2      9.     Plaintiff is ignorant of the true names and capacities of defendants sued herein as

3 DOES 1 through 100, inclusive, and therefore sues these defendants by such fictitious names.

4 Plaintiff will amend his Complaint to allege their true names and capacities and causes of action

5 against said fictitiously named defendants when same have been ascertained. Plaintiff is informed

6 and believes and thereon alleges that each of the defendants designated herein as a "DOE" is

7 responsible in some manner and liable herein to Plaintiff JEROME LEW for his injuries.

8      10.     Plaintiff is informed and believes and thereon alleges that at all times herein

9 mentioned, Defendants, and each of them, and their aggregates, corporates, associates, and

10 partners, and each of them, were the agent, servant, employee, assignee, permissive user, successor

11 in interest or joint venture of their co-defendants, and were acting within the time, purpose or scope

12 of such agency or employment or permission; and all acts or omissions alleged herein of each such

13 Defendant were authorized, adopted, approved, consented to, and ratified by each of the other

14 Defendants, except where stated otherwise below.

15      11.     Each of these acts and failures to act is alleged against each defendant whether acting

16 individually, jointly, or severally. Each of the defendants or their alter egos agreed and conspired

17 with others in the commission of these acts or failures to act.

18

19                         **FACTUAL ALLEGATIONS**

20 **A.**     **The Infuse® Bone Graft Device and Corpectomy Cage**

21      12.     Plaintiff is informed and believes that the Infuse® Bone Graft ("Infuse®") was

22 designed by MEDTRONIC for anterior approach lumbar spine surgery. Infuse® uses a genetically

23 engineered protein, rhBMP-2, a manufactured version of a protein already present in the body that

24 promotes bone growth, to help fuse vertebrae in the lower (lumbar) spine in order to treat

25 degenerative disc disease.

26      13.     Plaintiff is informed and believes that Infuse® was approved through the premarket

27 approval process by the United States Food and Drug Administration ("FDA") on July 2, 2002, for

28 use at a single level in the lower region of the spine (L4 through S1) with a lumbar fusion

containment cage to treat degenerative disc disease. That approval was later expanded to allow the use of Infuse at one level in the lower region of the spine (L2 through S1). It has never been approved for use in the cervical spine.

14.     Plaintiff is informed and believes that the approved Infuse® device for the lumbar spine consists of the following components: (1) a metallic spinal fusion containment cage, (2) the bone graft substitute Infuse®, and (3) a sponge-like carrier or scaffold for the protein that is placed inside the fusion cage.

15.     Plaintiff is informed and believes that in 2009, the FDA had only approved two cages for use with Infuse® in the lumbar spine: Medtronic LT cage (lumbar tapered) and Medtronic InterFix cage. These cages were specifically designed to attempt to contain the Infuse® bone graft to protect the spinal cord from bony overgrowth and migration outside the cage.

16.     Plaintiff is informed and believes that the Medtronic LT and InterFix cages are only FDA approved for use in the lumbar spine.

17.     Plaintiff is informed and believes that the LT and InterFix cages are too big to be used in the cervical spine.

18.     Plaintiff is informed and believes that Infuse® is FDA-approved only for use in the lower spine with the appropriate approved cages. Infuse® is also sold and distributed separately for certain tibia (leg) fractures and dental surgeries.

19.     Plaintiff is informed and believes that the use of Infuse® in the cervical spine has never been approved by the FDA.

20.     Plaintiff is informed and believes that Infuse® has become a bestseller for MEDTRONIC with one market analyst estimating that the product's sales were approximately $815 million for the fiscal year ended in April 2008.

21.     Plaintiff is informed and believes that on July 1, 2008, the FDA issued a Public Health Notification to healthcare practitioners about complications from the use of rhBMP, including Infuse®, in the neck or cervical area of the spine. The FDA reported that it had received 38 reports over a four-year period through July 1, 2008, of complications from cervical use of rhBMP with some reports of life-threatening and fatal events. Some of the complications were

1  associated with swelling of the neck and throat tissue, which resulted in compression of the airway

2  and/or neurological structures in the neck, and patients reported difficulty swallowing, breathing

3  and speaking.  Several patients required emergency treatment, including tracheotomies and the

4  insertion of feeding tubes.

5    22.    The FDA noted that the anatomical proximity of the cervical spine to airway

6  structures in the body had contributed to the seriousness of the events reported and the need for

7  emergency medical intervention with the use of rhBMP, including Infuse®, in the cervical spine.

8    23.    The July 1, 2008, FDA Safety Alert regarding MEDTRONIC's Infuse® product was

9  intended to alert physicians to:

10    "…reports of life-threatening complications associated with

11    recombinant human Bone Morphogenetic Protein (rhBMP) when used

12    in the cervical spine. **Note that the safety and effectiveness of rhBMP**

13    **in the cervical spine have not been demonstrated and these**

14    **products are not approved by FDA for this use."**

15    *FDA Public Health Notification: Life-threatening Complications*
    *Associated with Recombinant Human Bone Morphogenetic Protein in*
16    *Cervical Spine Fusion,* issued July 1, 2008
    (http://www.fda.gov/cdrh/safety/070108-rhbmp.html) (emphasis in
17    original).

18

19    24.    Plaintiff is informed and believes that Defendants and their co-conspirators were

20  aware of the July 1, 2008, FDA Safety Alert regarding the risks associated with use of rhBMP,

21  including Infuse®, in the cervical spine.

22  **B.    New and Adulterated Devices**

23    25.    Health & Safety Code §111550 states, "No person shall sell, deliver, or give away

24  any new drug or new device" unless it satisfies one of the specific delineated exceptions of Health

25  and Safety Code §111550.

26    26.    Under Health and Safety Code §109975 "New device" means "any device the

27  composition, construction, or properties of which are such that the device is not generally

28  recognized, among experts qualified by scientific training and experience to evaluate the safety

and effectiveness of devices, as having been adequately shown, through scientific investigations
to be safe and effective for use under the conditions prescribed, recommended, or suggested in the
labeling or advertising thereof" or "any device the composition, construction, or properties of
which are such that the device, as a result of such investigation to determine its safety and
effectiveness for use under these conditions, has become so recognized, but which has not,
otherwise than in the investigations, been used to a material extent or for a material time under the
condition."

27.    Plaintiff is informed and believes that the cervical corpectomy cage used during
Plaintiff's surgery was a "new device" as defined by California Health & Safety Code §109975.

28.    Plaintiff is informed and believes that the cervical corpectomy cage used during
Plaintiff's surgery was not reported to or approved by the FDA either as a substantially equivalent
device or a device requiring pre-market approval, and that Plaintiff was unaware of this fact.

29.    Plaintiff is informed and believes that the cervical corpectomy cage used during
Plaintiff's surgery with the Infuse® bone graft substitute along with a sponge-like carrier for the
protein created a "new device" as defined by California Health & Safety Code §109975.

30.    Health and Safety Code §11295: "It is unlawful for any person to manufacture, sell,
deliver, hold, offer for sale any drug or device that is adulterated."  Under Health and Safety Code
§11290 "any drug or device is adulterated if any substance has been mixed or packed with it so as
to reduce its quality or strength or if any substance has been substituted, wholly or in part, for the
drug or device."

31.    Plaintiff is informed and believes that the substitution of an unapproved or uncleared
cervical corpectomy cage for the LT or InterFix cages for use with the Infuse® Bone Graft and
sponge created an "adulterated device" as defined by California Health & Safety Code §11290.

C.    **MEDTRONIC's Financial Relationship with Dr. Wang**

32.    Plaintiff is informed and believes that Dr. Wang was an employee of The Regents
and was working as a clinical instructor and orthopedic surgeon at UCLA Medical Center.

33.    Plaintiff is informed and believes that at the time of plaintiff's consultation with Dr.
Wang in March 2009 and surgery on May 11, 2009, Dr. Wang had a financial relationship with

COMPLAINT FOR DAMAGES

Exhibit 1
Page 28

1 | MEDTRONIC.

2      34.   Plaintiff is informed and believes that as part of his relationship with MEDTRONIC,

3 | Dr. Wang received royalties for products manufactured by MEDTRONIC, including products used

4 | in spinal surgery.

5      35.   Plaintiff is informed and believes that Dr. Wang was paid by MEDTRONIC to

6 | consult on development of products, including attending product design meetings for

7 | MEDTRONIC. MEDTRONIC has surgical technique guides based on surgical techniques used

8 | by Dr. Wang.

9      36.   Plaintiff is informed and believes that as part of his relationship with MEDTRONIC,

10 | Dr. Wang has received compensation from MEDTRONIC. Plaintiff is informed and believes that

11 | some of the compensation from MEDTRONIC has been related to Dr. Wang's research on

12 | MEDTRONIC's medical devices.

13      37.   Plaintiff is informed and believes that Dr. Wang has extensive research interests in

14 | rhBMP, including the Infuse® product.

15      38.   The California Fair Political Practices Commission ("FPPC") requires that a

16 | principal investigator for clinical trials/studies disclose his/her financial relationship with the

17 | manufacturer who is running or funding the study/trial. The FPPC is concerned that conflicts of

18 | interest and/or bias may affect the integrity of reported outcomes of clinical investigations.

19      39.   Plaintiff is informed and believes that Dr. Wang failed to disclose and misrepresented

20 | his financial relationship with MEDTRONIC on FPPC Statement of Economic Interest forms

21 | signed under penalty of perjury for principal investigators in clinical studies/trials.

22      40.   Plaintiff is informed and believes that Dr. Wang stipulated to violations of the FPPC

23 | requirements and was fined by the California Fair Political Practices Commission ("FPPC") in

24 | 2010 for failing to disclose his financial interest in MEDTRONIC in relation to his clinical studies.

25 | Plaintiff is informed and believes that Defendants were aware of the fine.

26      41.   Plaintiff is informed and believes that Dr. Wang was also investigated by the U.S.

27 | Senate and The Regents of the University of California (UCLA) for failing to disclose his financial

28 | relationship with medical device manufacturers, including MEDTRONIC, as far back as 2007.

COMPLAINT FOR DAMAGES

Exhibit 1
Page 29

42.     Plaintiff is informed and believes that Defendants were aware that Dr. Wang was investigated by the U.S. Senate and The Regents (UCLA) for failing to disclose his financial relations with medical device manufacturers, including MEDTRONIC, as far back as 2007.

**D.     Surgery of Plaintiff Jerome Lew**

43.     On or about March 31, 2009, Plaintiff consulted Dr. Wang regarding numbness and pain in both of his hands. Dr. Wang diagnosed Plaintiff with "cervical stenosis and cervical myelopathy with herniated disk at C4-C5 and C5-C6, and degenerative disk disease."

44.     Dr. Wang did not disclose to Plaintiff during consultation or at any time prior to surgery that Dr. Wang had a financial relationship with MEDTRONIC, or that he intended to use MEDTRONIC's spine implant products during the surgery he planned for the Plaintiff.

45.     In the visits prior to surgery, Dr. Wang told Plaintiff that a routine cervical fusion would be performed.

46.     Prior to Plaintiff's surgery, there were no conversations regarding use of Infuse®, and it was Plaintiff's understanding that he was receiving only an autograft from bone harvested from his own body during the surgery.

47.     On May 11, 2009, Dr. Wang performed an "anterior C5 vertebrectomy and corpectomy, and C4-C6 anterior interbody fusion." The surgery was performed at The Regents' UCLA Medical Center in Santa Monica.

48.     During this procedure, Dr. Wang removed the central portion of the C5 vertebral body and used a vertebral body replacement device to fill the space where the C5 was partially removed. Then he inserted the Infuse®-soaked absorbable collagen sponge and bone from the C5 vertebra into the cervical corpectomy cage with the intention that it would stimulate bone growth over time in order to "fuse." The cervical corpectomy cage and Infuse® product were manufactured and provided by MEDTRONIC.

49.     A sales representative from MEDTRONIC was in the operating room throughout the Plaintiff's surgery.

50.     Plaintiff did not consent to a corpectomy or removal of his C5 vertebra.

51.     Plaintiff did not consent to replacement of the partially removed C5 vertebra with a

Exhibit    1
Page 30

1  corpectomy cage.

2      52.    Plaintiff did not consent to use of the Infuse® product.

3      53.    Plaintiff did not consent to a multi-level surgical procedure. He only consented to a
4  single C5-6 procedure.

5      54.    The use of the Infuse® product in the cervical spine had never been approved by the
6  FDA as it had never been determined as safe and effective for the type of surgery performed by
7  Dr. Wang.

8      55.    According to UCLA Medical Center and MEDTRONIC documentation, a
9  MEDTRONIC Verte-Stack corpectomy cage was implanted in Plaintiff.

10     56.    Plaintiff is informed and believes that the Verte-Stack device only had FDA
11  clearance for use in the thoracolumbar spine in 2009 and was noted to be contraindicated for
12  cervical spine surgery.

13     57.    Plaintiff is informed and believes that there was no legally approved, manufactured,
14  and distributed Verte-Stack corpectomy cage for use in the cervical spine at the time of plaintiff's
15  surgery, and that the Verte-Stack device cleared for the thoracolumbar spine would not fit in the
16  cervical spine.

17     58.    Plaintiff is further informed and believes that in 2009 there were no MEDTRONIC
18  corpectomy cages that were FDA-cleared and/or approved for the cervical spine.

19     59.    Plaintiff is informed and believes that the cervical corpectomy cage that Dr. Wang
20  implanted in Plaintiff during the cervical fusion surgery was manufactured and provided by
21  MEDTRONIC and was not cleared and/or approved by the FDA at the time of plaintiff's surgery.

22     60.    Plaintiff is informed and believes that MEDTRONIC and Dr. Wang were
23  experimenting with the use of rhBMP (Infuse®) in the cervical spine. MEDTRONIC provided the
24  Infuse® and cervical corpectomy cage, Dr. Wang provided the patient/human subject, MR. LEW,
25  and The Regents allowed the uncleared/unapproved cervical corpectomy cage to enter its hospital
26  and be implanted in MR. LEW.

27     61.    Neither MEDTRONIC nor Dr. Wang nor The Regents disclosed to plaintiff that an
28  unapproved or uncleared cervical corpectomy cage would be implanted during his surgery.

9

62.    After his May 2009 surgery, Plaintiff's symptoms initially improved. However, he later began to experience numbness and pain in both hands, dysphagia, neck pain, fatigue and residual hoarseness.

63.    A subsequent CT scan in March 2011 showed evidence of bony overgrowth present around and outside the corpectomy cage. Radiology studies done in May through July 2012, including cervical MRI and CT scans, revealed evidence of bony overgrowth posteriorly from the cage entering into the canal and compressing the cord.

64.    As a result of the significant bony overgrowth, Plaintiff underwent a cervical laminectomy and bilateral neural foraminotomies on September 5, 2012. Despite the corrective surgery, Plaintiff continues to suffer from chronic nerve damage as a result of the surgery defendants performed on him.

65.    Excessive bony overgrowth is one of the known, inherent dangers associated with the improper use of the Infuse® bone graft, and one of the primary reasons it is not approved for use in the cervical spine.

## I.

## FIRST CAUSE OF ACTION

### (Fraud by Concealment)

66.    Plaintiff incorporates by reference paragraphs 1 through 65 of this Complaint as if fully set forth here and further alleges as follows:

67.    Plaintiff is informed and believes and thereon alleges that Defendants conspired with physicians to fraudulently coerce patients into undergoing experimental cervical spine surgery with an unapproved/uncleared corpectomy cage and the Infuse® Bone Graft.

68.    Plaintiff is informed and believes and thereon alleges that Defendants conspired and agreed with Dr. Wang and The Regents to convince MR. LEW to undergo surgery in his cervical spine. Plaintiff is informed and believes and thereon alleges that Defendants were experimenting with the use of rhBMP, including Infuse®, in the cervical spine. Defendants would provide the Infuse® and the experimental corpectomy cage, The Regents would allow the unapproved/uncleared device into its hospital, and Dr. Wang would provide the patient/human

1 | subject, MR. LEW.

2 |     69.    Plaintiff is informed and believes and thereon alleges that Defendants acted in

3 | furtherance of a conspiracy to commit fraud with Dr. Wang and The Regents to convince

4 | MR. LEW to undergo cervical spine surgery.

5 |     70.    Plaintiff further alleges that as part of the conspiracy to commit fraud, Dr. Wang and

6 | The Regents intentionally concealed and failed to disclose to plaintiff the following facts:

7 |     a.    That Dr. Wang would be using the Infuse® Bone Graft product during the

8 |     cervical surgery he performed on the Plaintiff on May 11, 2009;

9 |     b.    That the Infuse® Bone Graft Product had received only limited FDA approval

10 |     for certain specific procedures and was not approved for use in the cervical spine;

11 |     c.    That there were additional risks involved in using the Infuse® Bone Graft product

12 |     in the cervical spine, including unwanted bony overgrowth and migration to

13 |     sensitive nerve areas which could exacerbate Plaintiff's pain;

14 |     d.    That use of the Infuse® Bone Graft product could cause severe, debilitating,

15 |     permanent neck and back pain;

16 |     e.    That Dr. Wang had a financial relationship with MEDTRONIC, the medical

17 |     device manufacturer of the Infuse® Bone Graft product and corpectomy cage

18 |     Dr. Wang used during the procedure;

19 |     f.    That Dr. Wang intended to use a corpectomy cage that was not approved or

20 |     cleared by the FDA for use in the cervical spine during the procedure;

21 |     g.    That Dr. Wang intended to use a corpectomy cage that was not approved or

22 |     cleared by the FDA for use with the Infuse® Bone Graft Product;

23 |     h.    That the use of an unapproved or uncleared corpectomy cage meant that it had

24 |     never been determined as safe and effective for use in the manner in which

25 |     Dr. Wang intended to use the cage during Plaintiff's surgery, and that it carried

26 |     additional risks of unwanted bone growth and migration and danger to plaintiff's

27 |     nerves;

28 | ///

11

COMPLAINT FOR DAMAGES

Exhibit 1
Page 33

i.    That Dr. Wang and MEDTRONIC were experimenting with uncleared/ unapproved products for the cervical spine and using Plaintiff as a test subject; and

j.    That The Regents allowed unapproved or uncleared medical devices into its hospital for implant in patients, like MR. LEW.

71.    At the time of Plaintiff's surgery, Plaintiff was unaware of any of the above-stated material facts, including the fact Dr. Wang intended to use Infuse® and an unapproved/uncleared corpectomy cage during the recommended cervical spine surgery; that Dr. Wang had a financial relationship with MEDTRONIC; that the Infuse® was not recommended for use in the cervical spine and that there were additional risks including risk of bone migration and nerve damage when used in the cervical spine; that the unapproved or uncleared corpectomy cage had never been determined as safe and effective for use in the cervical spine; that The Regents would allow unapproved and uncleared devices into its hospital for use during spine surgery; and that Dr. Wang and Defendants were experimenting on him.

72.    Plaintiff is informed and believes and thereon alleges that Defendants were aware that Dr. Wang was using Infuse® in the cervical spines of patients, including MR. LEW, and were supplying Dr. Wang with an unapproved or uncleared corpectomy cage device that Defendants intended for use in the cervical spine with the Infuse® Bone Graft product.

73.    Plaintiff is informed and believes and thereon alleges that Defendants were aware that The Regents would not prevent them from supplying to its hospital an unapproved or uncleared corpectomy cage so that Dr. Wang could implant the unapproved or uncleared device in patients, like MR. LEW.

74.    Plaintiff is informed and believes and thereon alleges that Defendants were aware of the fact the Infuse® Bone Graft was not intended for use in the cervical spine and that there were additional risks involved in using the Infuse® Bone Graft Product in the cervical spine, including unwanted bone growth and migration of the bone to sensitive nerve areas which could exacerbate Plaintiff's pain and potentially lead to life-threatening complications.

///

COMPLAINT FOR DAMAGES

Exhibit 1
Page 34

75.     Plaintiff is informed and believes and thereon alleges that Defendants were aware that the corpectomy cage device they provided to Dr. Wang at The Regents' hospital for use in the cervical spine during plaintiff's surgery was not cleared or approved by the FDA, and it had never been determined as safe and effective or substantially equivalent, and that it carried additional risks of unwanted bone growth and migration and danger to plaintiff's nerves.

76.     Plaintiff is informed and believes that Dr. Wang was involved in clinical investigations funded by MEDTRONIC on rhBMP-2 at UCLA Medical Center, and rhBMP-2 is the active biologic in the Infuse® product.

77.     Dr. Wang, The Regents, and Defendants were aware that Dr. Wang was using the Infuse® in a contraindicated and potentially dangerous manner and intentionally concealed the above-stated facts from the Plaintiff in order to induce Plaintiff to undergo cervical surgery.

78.     Plaintiff is informed and believes and thereon alleges that Dr. Wang and The Regents were aware that Defendants provided Dr. Wang with an uncleared/unapproved corpectomy cage for use in Plaintiff's cervical spine surgery in an unsafe and potentially dangerous manner and intentionally concealed the above-stated facts from the plaintiff in order to induce Plaintiff to undergo cervical surgery.

79.     Plaintiff is informed and believes and thereon alleges that Defendants conspired with Dr. Wang and The Regents to coerce the Plaintiff to undergo surgery. Plaintiff alleges that in furtherance of the conspiracy, Defendants intentionally supplied Dr. Wang and The Regents with a corpectomy cage to be used with the Infuse® in the cervical spine despite their knowledge that the cage was not approved or cleared for such use.

80.     Having failed to inform Plaintiff of these facts and risks, Defendants and their co-conspirators, including Dr. Wang and The Regents, never obtained Plaintiff's informed consent to perform the procedures that were performed using Defendants' unapproved or uncleared devices.

81.     Plaintiff was unaware that he was being used as a human test subject for Defendants' products.

82.     Had Plaintiff known the facts regarding Dr. Wang's relationship with MEDTRONIC, and the facts regarding the Infuse® and corpectomy cage that were available only

to Defendants and their co-conspirators at the time of the surgery, Plaintiff would not have elected to proceed in that manner.

83.    Plaintiff is informed and believes and thereon alleges that Defendants, by and through their managing agents identified herein and defendants' co-conspirators intended to induce Plaintiff's reliance.

84.    Plaintiff did rely on the fraud, in that but for the concealments of Defendants and their co-conspirators, Plaintiff would not have undergone treatment and surgery with Dr. Wang, who was provided the Infuse® and uncleared/unapproved corpectomy cage by Defendants at The Regents' hospital.

85.    Plaintiff's reliance on the representations of Defendants and their co-conspirators was reasonable and justifiable because Plaintiff was entitled to rely on his healthcare providers' representations and believe those representations were complete and rely on Defendants to not provide his healthcare providers, including Dr. Wang and The Regents, with uncleared or unapproved devices for use during his surgery.

86.    Furthermore, Plaintiff is informed and believes and thereon alleges that the intent of Defendants and their co-conspirators to induce Plaintiff to alter his position can be inferred from the fact that Defendants worked with Plaintiff's healthcare providers and provided unapproved/uncleared medical devices for use during Plaintiff's surgery, knowing that the Plaintiff would act in reliance on the information provided by the healthcare providers based on their medical expertise and positions as managing agents for The Regents.

87.    The acts and omissions alleged herein against corporate defendants MEDTRONIC and DOES 1 through 100 were actually committed, ratified, and/or authorized by managing agents of the business entity, including but not limited to defendants' officers, administrators and directors.

88.    Plaintiff is informed and believes and thereon alleges that plaintiff's reliance on the representations of Defendants and their co-conspirators was a substantial factor in causing his harm.

///

14

COMPLAINT FOR DAMAGES

Exhibit 1
Page 36

89.    As a direct and proximate result of the fraudulent concealments through conspiracy of MEDTRONIC, DOES 1 through 100 and their co-conspirators, Plaintiff has been injured in his health, strength and activity, and has suffered, continues to suffer and, on information and belief, will suffer indefinitely into the future, severe, lasting and debilitating physical and mental pain and suffering, some of which injuries may be permanent, all in an amount in excess of the jurisdictional minimum of the Court.

90.    As a further direct and proximate result of the fraudulent concealments through conspiracy of MEDTRONIC, DOES 1 through 100 and their co-conspirators, Plaintiff has lost earnings and earning capacity, and will continue to incur such losses for an indefinite period of time in the future, and some of which losses may be permanent, all in an amount excess of the jurisdictional minimum of the Court.

91.    As a further direct and proximate result of the fraudulent concealments through conspiracy of MEDTRONIC, DOES 1 through 100 and their co-conspirators, and each of them, Plaintiff has incurred medical, hospital and related expenses and, on information and belief, will continue to incur such expenses in the future, all in an amount in excess of the jurisdictional minimum of the Court.

92.    The aforementioned conduct of corporate defendants MEDTRONIC and DOES 1 through 100 was despicable and done with malice, oppression and fraud, and subjected plaintiff to cruel and unjust hardship in willful and conscious disregard of the plaintiff's rights and safety, so as to justify an award of exemplary and punitive damages.

## II.

## SECOND CAUSE OF ACTION

### (Battery)

93.    Plaintiff incorporates by reference paragraphs 1 through 65 and paragraphs 67 through 88 of the First Cause of Action as though fully set forth herein and further alleges as follows:

94.    Plaintiff is informed and believes and thereon alleges that Defendants conspired with physicians and The Regents to commit battery on patients undergoing cervical spine surgery by

1  implanting unapproved/uncleared corpectomy cages and the Infuse® bone graft without the
2  patient's consent.

3      95.    In order to perpetrate the battery, Dr. Wang needed the Defendants'
4  unapproved/uncleared cervical corpectomy cages and Infuse®. The Defendants needed The
5  Regents to allow the unapproved or uncleared corpectomy cage and Infuse® into its hospital. The
6  Defendants needed Dr. Wang to provide the test subject for the experimental surgery on the
7  cervical spine using their unapproved/uncleared devices.

8      96.    Plaintiff is informed and believes and thereon alleges that Defendants conspired and
9  agreed with Dr. Wang and The Regents to convince MR. LEW to undergo surgery in his cervical
10 spine with the Infuse® Bone Graft device and unapproved/uncleared corpectomy cage.

11     97.    Plaintiff is informed and believes and thereon alleges that MR. LEW was unaware
12 the surgery was experimental.

13     98.    Plaintiff is informed and believes and thereon alleges that Dr. Wang committed
14 battery by performing an operation and procedures to which the patient had not consented.

15     99.    Plaintiff is informed and believes and thereon alleges that Dr. Wang could not
16 commit the battery without the agreement of Defendants. Defendants supplied the Infuse® and
17 the unapproved or uncleared corpectomy cage that were used during plaintiff's surgery.

18     100.   Plaintiff MR. LEW did not consent to use of a corpectomy cage that was not cleared
19 or not approved by the FDA for use in his cervical spine or with the Infuse® product.

20     101.   Plaintiff is informed and believes and thereon alleges that the use of the unapproved
21 or uncleared corpectomy device with the Infuse® product was a substantially different procedure
22 than what the plaintiff consented to.

23     102.   Defendants' co-conspirator Dr. Wang did intentionally touch the plaintiff by
24 performing a fusion with an uncleared or unapproved corpectomy cage using the Infuse® product
25 supplied by Defendants.

26     103.   The touching performed by the Defendants' co-conspirator Dr. Wang resulted in
27 harmful or offensive contact with the plaintiff's person.

28     104.   Plaintiff is informed and believes and thereon alleges that defendants MEDTRONIC

Exhibit 1
Page 38

1  and DOES 1 through 100 acted in furtherance of a conspiracy with Dr. Wang and The Regents to
2  commit battery on MR. LEW.

3      105.    Plaintiff is informed and believes and thereon alleges that Defendants intentionally
4  acted in furtherance of a conspiracy to commit battery by intentionally manufacturing and
5  supplying to Dr. Wang at The Regents' hospital an unapproved/uncleared corpectomy cage
6  intended to be used in patients' cervical spines, including Plaintiff's cervical spine, during fusion
7  surgeries with the Infuse® Bone Graft product

8      106.    Plaintiff is informed and believes and thereon alleges that Defendants knew that the
9  corpectomy cage they were manufacturing and supplying to Dr. Wang and The Regents for use in
10 cervical spine surgery, including Plaintiff's surgery, was not cleared or approved by the FDA for
11 use in the cervical spine or with the Infuse® Bone Graft and that the safety and efficacy of these
12 corpectomy cages with Infuse® was not shown or proven.

13     107.    Plaintiff is informed and believes and thereon alleges that Defendants were aware
14 that Dr. Wang was implanting these unapproved/uncleared corpectomy cages with Infuse® into
15 patients' cervical spines, including Plaintiff's cervical spine, and agreed and ratified Dr. Wang's
16 use of these unauthorized cages by providing the unapproved/uncleared corpectomy cage and
17 Infuse® for Plaintiff's surgery.

18     108.    The acts and omissions alleged herein against corporate defendants MEDTRONIC
19 and DOES 1 through 100 were actually committed, ratified, and/or authorized by managing agents
20 of the business entity, including but not limited to defendants' officers, administrators and
21 directors.

22     109.    As a result of the intentional and harmful or offensive, unconsented to touching by
23 Defendants through their conspiracy with Dr. Wang, plaintiff was hurt and injured in his health,
24 strength, and activity and sustained injury to his body and shock and injury to his nervous system
25 and person, all of which have caused and continue to cause said plaintiff great mental, physical,
26 and nervous pain and suffering, and fright, grief, anxiety, worry, and apprehension, all to his
27 general damage in an amount in excess of the jurisdictional limits of this court.

28 ///

110.    As a further result of the battery committed by Defendants through their conspiracy with Dr. Wang, Plaintiff was required to and did employ physicians, surgeons and other healthcare providers to examine, treat and care for him and did incur medical, nursing and incidental expenses, and was further required to employ the services of friends and family members to provide nursing and related services.  The exact amount of such expense is unknown to plaintiff at this time, and inasmuch as the same is continuing and ongoing, plaintiff will seek leave of the court to prove said amount at the time of trial.

111.    As a further result of the battery committed by Defendants through their conspiracy with Dr. Wang, Plaintiff has been permanently hurt and injured in his health and physical ability, thereby causing loss of past and future earning and future earning capacity, all to his damage in an amount to be proven at the time of trial.

112.    The aforementioned conduct of corporate defendants MEDTRONIC and DOES 1 through 100 was despicable and done with malice, oppression and fraud, and subjected plaintiff to cruel and unjust hardship in willful and conscious disregard of the plaintiff's rights and safety, so as to justify an award of exemplary and punitive damages.

### III.

### THIRD CAUSE OF ACTION

### (Negligence Per Se)

113.    Plaintiff incorporates by reference paragraphs 1 through 65, paragraphs 67 through 88 of the First Cause of Action, and paragraphs 94 through 108 of the Second Cause of Action as though fully set forth herein and further alleges as follows:

114.    According to MEDTRONIC documentation and documentation from UCLA Medical Center, a Medtronic Verte-Stack corpectomy cage was implanted in Plaintiff.

115.    Plaintiff is informed and believes and thereon alleges that the Verte-Stack device only had FDA 510(k) clearance for use in the thoracolumbar spine in 2009.

116.    Plaintiff is informed and believes and thereon alleges that there was no legally approved, manufactured, and distributed Verte-Stack corpectomy cage for use in the cervical spine at the time of plaintiff's surgery.

18

COMPLAINT FOR DAMAGES

Exhibit 1
Page 40

117.    Plaintiff is further informed and believes and thereon alleges that Defendants did not manufacture or distribute an FDA-cleared and/or approved cervical corpectomy cage in 2009.

118.    Plaintiff is informed and believes and thereon alleges that the corpectomy cage provided by Defendants and implanted by Dr. Wang during surgery was not cleared and/or approved by the FDA at the time of plaintiff's surgery.

119.    Plaintiff is informed and believes and thereon alleges that Defendants manufactured and provided an unapproved or uncleared corpectomy cage to Dr. Wang and intended it to be implanted during MR. LEW's cervical spine surgery with the Infuse® Bone Graft.

120.    Plaintiff is informed and believes and thereon alleges that Defendants violated various laws, statutes and regulations, including but not limited, to the following:

121.    Plaintiff is informed and believes and thereon alleges that Defendants violated Health and Safety Code §111550: "No person shall sell, deliver, or give away any new drug or new device" unless it satisfies one of the specific delineated exceptions of Health and Safety Code §111550.

122.    Plaintiff is informed and believes that the cervical corpectomy cage used during Plaintiff's surgery was not reported to or approved by the FDA either as a substantially equivalent device or a device requiring pre-market approval, and that Plaintiff was unaware of this fact.

123.    Under Health and Safety Code §109975 "New device" means "any device the composition, construction, or properties of which are such that the device is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of devices, as having been adequately shown, through scientific investigations to be safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling or advertising thereof" or "any device the composition, construction, or properties of which are such that the device, as a result of such investigation to determine its safety and effectiveness for use under these conditions, has become so recognized, but which has not, otherwise than in the investigations, been used to a material extent or for a material time under the conditions."

124.    Plaintiff is informed and believes and thereon alleges that the corpectomy cage used

19

during Plaintiff's surgery was a "new device" as defined by California Health & Safety Code §109975.

125.    Plaintiff is informed and believes and thereon alleges that the corpectomy cage used during Plaintiff's surgery with the Infuse® bone graft substitute along with a sponge-like carrier for the protein created a "new device" as defined by California Health & Safety Code §109975.

126.    Plaintiff is further informed and believes and thereon alleges that defendants violated Health and Safety Code §111295: "It is unlawful for any person to manufacture, sell, deliver, hold, offer for sale any drug or device that is adulterated." Under Health and Safety Code §111290 "any drug or device is adulterated if any substance has been mixed or packed with it so as to reduce its quality or strength or if any substance has been substituted, wholly or in part, for the drug or device."

127.    Plaintiff is informed and believes and thereon alleges that only the Medtronic LT (lumbar tapered) and InterFix cages were approved as the spinal fusion containment cage components of the Infuse® device. The Medtronic LT and InterFix cages are only FDA approved for use in the lumbar spine.

128.    Plaintiff is informed and believes and thereon alleges that Defendants manufactured and delivered or offered for sale a corpectomy cage to be used in the cervical spine with the Infuse® Bone Graft.

129.    Plaintiff is informed and believes and thereon alleges that by substituting an unapproved or uncleared cage for the LT or InterFix cages for use with the Infuse® Bone Graft and sponge created an "adulterated device" as defined by California Health & Safety Code §111290.

130.    Plaintiff is informed and believes and thereon alleges that the violation of these laws and statutes was a substantial factor in causing injury to the plaintiff.

131.    Plaintiff is informed and believes and thereon alleges that the injury resulted from an occurrence of the nature which the above statutes were designed to prevent.

132.    Plaintiff is informed and believes and thereon alleges that he was of the class of persons for whose protection the statutes were adopted.

COMPLAINT FOR DAMAGES

Exhibit 1
Page 42

133.    Plaintiff relied on the fact that Defendants would not sell, deliver or give away a "new device," or would not manufacture, sell, deliver or offer for sale an "adulterated device" as defined by the California Health and Safety Code.

134.    As a result of the actions and representations by Defendants, Plaintiff underwent the May 11, 2009, surgery unaware that the surgery involved a new and adulterated device.

135.    Plaintiff is informed and believes and thereon alleges that as a result of the use of a new and/or adulterated device, the Infuse® was not contained within the corpectomy cage, causing unwanted bony overgrowth that injured plaintiff's nerves and caused permanent damage.

136.    Plaintiff is informed and believes and thereon alleges that Defendants were aware that the use of a new and adulterated device could cause unwanted bony overgrowth and migration that could damage plaintiff's nerves.

137.    The acts and omissions alleged herein against Defendants were actually committed, ratified, and/or authorized by managing agents of Defendants, including but not limited to defendants' officers, administrators and directors.

138.    As a direct and proximate result of the acts and omissions of Defendants, plaintiff was hurt and injured in his health, strength, and activity and sustained injury to his body and shock and injury to his nervous system and person, all of which have caused and continue to cause said plaintiff great mental, physical, and nervous pain and suffering, and fright, grief, anxiety, worry, and apprehension, all to his general damage in an amount in excess of the jurisdictional limits of this court.

139.    As a further direct and proximate result of the acts and omissions of Defendants, Plaintiff was required to and did employ physicians, surgeons and other healthcare providers to examine, treat and care for him and did incur medical, nursing and incidental expenses, and was further required to employ the services of friends and family members to provide nursing and related services.  The exact amount of such expense is unknown to plaintiff at this time, and inasmuch as the same is continuing and ongoing, plaintiff will seek leave of the court to prove said amount at the time of trial.

140.    As a further direct and proximate result of the acts and omissions of Defendants,

21

Plaintiff has been permanently hurt and injured in his health and physical ability, thereby causing loss of past and future earning and future earning capacity, all to his damage in an amount to be proven at the time of trial.

141.    The aforementioned conduct of corporate defendants MEDTRONIC and DOES 1 through 100 was despicable and done with malice, oppression and fraud, and subjected plaintiff to cruel and unjust hardship in willful and conscious disregard of the plaintiff's rights and safety, so as to justify an award of exemplary and punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against Defendants as follows:

1.    For general damages in an amount according to proof at the time of trial;

2.    For medical and incidental expenses and the reasonable value of nursing and therapy services, past and future, according to proof;

3.    For loss of earnings, past and future, and loss of earning capacity, according to proof;

3.    For special damages according to proof;

4.    For punitive damages as to the First, Second and Third Causes of Action;

5.    For pre-judgment and post-judgment interest as allowed by law;

6.    For costs of suit incurred herein; and

7.    For such other and further relief as the court may deem just and proper.

DATED: October 16, 2014                    LAW OFFICES OF ROBERT VAAGE

By: _____
ROBERT F. VAAGE
Attorney for Plaintiff

22

COMPLAINT FOR DAMAGES

Exhibit 1
Page 44

## DEMAND FOR JURY

Plaintiff hereby respectfully requests a jury trial as to all claims.

DATED:  October 16, 2014                    LAW OFFICES OF ROBERT VAAGE

By:_____
    ROBERT F. VAAGE
    Attorney for Plaintiff

# EXHIBIT 2

Exhibit _2_
Page 46



**PARTNERS:**
MARK P. ROBINSON JR
KEVIN F. CALCAGNIE
JEOFFREY L. ROBINSON
WILLIAM D. SHAPIRO
ALLAN F. DAVIS
DANIEL S. ROBINSON*
  *Admitted in CA, NY, PA
KAREN BARTH MENZIES
SCOT D WILSON

**ROBINSON CALCAGNIE ROBINSON SHAPIRO DAVIS, INC.**

19 CORPORATE PLAZA DRIVE
NEWPORT BEACH, CALIFORNIA 92660
TELEPHONE: (949) 720-1288
FACSIMILE: (949) 720-1292
WWW.ORANGECOUNTYLAW.COM

LOS ANGELES OFFICE
600 S. COMMONWEALTH, SUITE 1254
LOS ANGELES, CA 90005
TELEPHONE: (213) 355-3525
FACSIMILE: (213) 355-3526

INLAND EMPIRE OFFICE
893 EAST BRIER DRIVE
SAN BERNARDINO, CA 92408
TELEPHONE: (909) 890-1000
FACSIMILE: (909) 890-1001

September 18, 2012

**TO DOCTOR AND/OR HOSPITAL**

Sent Via Certified Mail, Return Receipt Requested

Jeffrey Chun Wang, M.D.
1250 16th Street, Suite 3145E
Santa Monica, CA 90404

UCLA Department of Orthopaedic Surgery
1250 16th Street, 7th Tower
Santa Monica, CA 90404

Re:    NOTICE OF INTENT TO COMMENCE LEGAL ACTION PURSUANT TO
        CALIFORNIA CODE OF CIVIL PROCEDURE § 364

Dear Dr. Wang:

      This letter is being sent pursuant to *California Code of Civil Procedure* § 364 and the purpose of this letter is to inform you and your medical group, referenced above, that Jerome Lew and his spouse intend to file a medical malpractice lawsuit against you within 90 days of your receipt of this letter. The lawsuit is under investigation and this letter is required to be sent pursuant to California law. Any such lawsuit against you and your agents and employees will be based upon allegations of professional/medical negligence by you and your agents and employees that resulted in personal injury to plaintiffs. In any such case, plaintiffs will be seeking general damages, past and future medical expenses, past and future loss of earnings, among others as a result of injuries which occurred relative to your care and treatment of Mr. Lew.

      On or about March 31, 2009, you conducted an initial consultation and performed a history and physical examination of Jerome Lew. He presented with a numbness and pain in both of his hands. The patient stated that he had no history of neck or arm pain until he was

Exhibit _2__
Page 47

Jeffrey C. Wang, M.D.
September 18, 2012
Page 2

struck by a car approximately one month prior to that date. You noted that Mr. Lew had a C5-6 disk herniation with compression at C5-6 and questionably at C4-5. You also noted that Mr. Lew had evidence of cervical myelopathy and that you recommended surgery. On May 11, 2009, you performed a surgical procedure known as an "anterior C5 vertebrectomy and corpectomy, and C4-C6 anterior interbody fusion." During this procedure, you utilized the placement of an interbody cage device to the C5 corpectomy defect and unbeknownst to Mr. Lew you used the Medtronic Infuse Bone Graft Product with local autogenous bone graft. The bone growth material is inserted with the intention that it would stimulate bone growth over time in order to "fuse".

Although your operative report states that you disclosed that you were using the Medtronic Infuse Bone Graft product, using it in an off-label manner, and that you advised Mr. Lew of the risks of such a product and surgery, this never happened. You never disclosed the fact to Mr. Lew or his wife, who was in the room during your discussions about the procedure, that you were using the Medtronic Infuse Bone Graft Product, and you never disclosed to Mr. Lew that you were using it in an off-label manner. You failed to provide critical information about the procedure and the product you intended to use on Mr. Lew and thus failed to obtain informed consent for use of this product or the off-label manner in which you used it. Due to your conduct and your misrepresentation and omission of critical information, Mr. Lew was wrongfully induced to consent to a procedure and a product to which he would not have otherwise consented.

When Mr. Lew began to experience numbness and pain in both hands, dysphagia, neck pain, fatigue and residual hoarseness, he presented to you for multiple post-surgical follow-ups. Mr. Lew was assured by you that it was normal for him to have these symptoms following the surgery and that the surgery and fusion were successful.

The Medtronic Infuse Bone Graft Product was approved by the Food and Drug Administration ("FDA") on July 2, 2002, for use only in the lower region of the spine (at levels L4 through S1) to treat degenerative disc disease, and was approved only for anterior surgeries at L4 through S1. That meant that it was initially approved only to be used by surgeons, when the surgeons placed the cage within the vertebrae in the lumbar region of the back, and only by entrance through the abdomen.

The Medtronic Infuse Bone Graft Product has never been approved by the FDA for use in other parts of the body or for use in any other type of procedure, and any such uses are "off-label". Companies are not permitted to promote off-label uses for their medical devices or to pay doctors inducements or kickbacks to promote the off-label uses or to perform procedures using the devices off-label. The use of the Medtronic Infuse Bone Graft Product for cervical spine fusion surgery has never been approved by the FDA, and the use of this product in the cervical spine is an off-label use.

You were aware or should have been aware that using the Medtronic Infuse Bone Graft Product in the manner that you did during the May 11, 2009 surgery on Mr. Lew was off-label,

Exhibit _2_
Page 48

Jeffrey C. Wang, M.D.
September 18, 2012
Page 3

and was without informed consent and capable of causing the significant injuries that were actually caused. As a direct result of your fraud and negligent medical care for Mr. Lew, he has suffered severe and permanent physical debilitating injuries, including, but not limited to, numbness and pain in both hands, dysphagia, fatigue, residual hoarseness, permanent neck and back pain, as well as other injuries and damages including, but not limited to, pain and suffering, past and future medical expenses, past and future loss of earnings and loss of consortium, loss of enjoyment of life, severe pain and suffering, anxiety, and past and future economic damages. Mr. Lew has had invasive surgery aimed at fixing the conditions and injuries created by your medical negligence and fraud, and has been informed that additional invasive surgeries that pose a significant risk to his health and possibly life will be necessary.

It is the purpose of California *Code of Civil Procedure* section 364 to allow a NINETY (90) period within which all potential litigants can and should investigate the merits of a potential claim.

I therefore request that you immediately forward a copy of this Notice and correspondence to your fraud, malpractice/errors and omissions liability insurance carrier. I also request that they contact the undersigned so that they may take full advantage of the intent and purpose of California *Code of Civil Procedure* section 364.

Very truly yours,

ROBINSON CALCAGNIE ROBINSON
SHAPIRO DAVIS, INC.

Daniel S. Robinson

Exhibit _2_
Page 49

**PARTNERS:**
MARK P. ROBINSON JR
KEVIN F. CALCAGNIE
JEOFFREY L. ROBINSON
WILLIAM D. SHAPIRO
ALLAN F. DAVIS
DANIEL S. ROBINSON*
  *Admitted in CA, NY, PA
KAREN BARTH MENZIES
SCOT D. WILSON

# RCRSD
CATASTROPHIC INJURY & PRODUCTS LIABILITY

## ROBINSON CALCAGNIE ROBINSON SHAPIRO DAVIS, INC.

19 CORPORATE PLAZA DRIVE
NEWPORT BEACH, CALIFORNIA 92660
TELEPHONE: (949) 720-1288
FACSIMILE: (949) 720-1292
WWW.ORANGECOUNTYLAW.COM

**LOS ANGELES OFFICE**
600 S COMMONWEALTH, SUITE 1254
LOS ANGELES, CA 90005
TELEPHONE: (213) 355-3525
FACSIMILE: (213) 355-3526

**INLAND EMPIRE OFFICE**
883 EAST BRIER DRIVE
SAN BERNARDINO, CA 92408
TELEPHONE: (909) 890-1000
FACSIMILE: (909) 890-1001

September 18, 2012

## TO DOCTOR AND/OR HOSPITAL

Sent Via Certified Mail, Return Receipt Requested

Regents of the University of California
1111 Franklin Street
Oakland, California 94607

Re:    NOTICE OF INTENT TO COMMENCE LEGAL ACTION PURSUANT TO
       CALIFORNIA CODE OF CIVIL PROCEDURE § 364

Dear Sir or Madam:

This letter is being sent to you pursuant to *California Code of Civil Procedure* §364 to advise you that Jerome Lew and his spouse intend to file a lawsuit against you within the next 90 days.  In this lawsuit, Mr. Lew will be alleging that the care and treatment rendered to him at University of California Los Angeles- Department of Orthopaedic Surgery, commencing on or about March 2009 through March 2012, was below the standard of care for the medical community.  The care was being rendered by several physicians, nurses, and other health care providers, including Jeffrey Chun Wang, M.D.

As a direct result of Dr. Wang's fraud and negligent medical care, Mr. Lew has suffered severe and permanent physical debilitating injuries, including, but not limited to, numbness and pain in both hands, dysphagia, fatigue, residual hoarseness, permanent neck and back pain, as well as other injuries and damages including, but not limited to, pain and suffering, past and future medical expenses, past and future loss of earnings and loss of consortium, loss of enjoyment of life, severe pain and suffering, anxiety, and past and future economic damages. Mr. Lew has had invasive surgery aimed at fixing the conditions and injuries created by Dr.

Exhibit _2_
Page 50

Regents of the University of California
September 18, 2012
Page 2

Wang's medical negligence and fraud, and he has been informed that additional invasive surgeries that pose a significant risk to his health and possibly life will be necessary.

      Please forward this letter to your insurance company and/or your risk managers and have them contact the undersigned at their earliest convenience.   Attached please find a copy of our correspondence mailed to Dr. Wang.

                    Very truly yours,

                    ROBINSON CALCAGNIE ROBINSON
                    SHAPIRO DAVIS, INC.

                    Daniel S. Robinson

Exhibit _2__
Page 51



PARTNERS:
MARK P. ROBINSON JR
KEVIN F. CALCAGNIE
JEOFFREY L. ROBINSON
WILLIAM D. SHAPIRO
ALLAN F. DAVIS
DANIEL S. ROBINSON*
   *Admitted in CA, NY, PA
KAREN BARTH MENZIES
SCOT D. WILSON

**CATASTROPHIC INJURY & PRODUCTS LIABILITY**

## ROBINSON CALCAGNIE ROBINSON SHAPIRO DAVIS, INC.

19 CORPORATE PLAZA DRIVE
NEWPORT BEACH, CALIFORNIA 92660
TELEPHONE: (949) 720-1288
FACSIMILE: (949) 720-1292
WWW.ORANGECOUNTYLAW.COM

LOS ANGELES OFFICE
600 S. COMMONWEALTH, SUITE 1254
LOS ANGELES, CA 90005
TELEPHONE: (213) 355-3525
FACSIMILE: (213) 355-3526

INLAND EMPIRE OFFICE
893 EAST BRIER DRIVE
SAN BERNARDINO, CA 92408
TELEPHONE: (909) 890-1000
FACSIMILE: (909) 890-1001

September 18, 2012

**TO DOCTOR AND/OR HOSPITAL**

Sent Via Certified Mail, Return Receipt Requested

Jeffrey Chun Wang, M.D.
1250 16th Street, Suite 3145E
Santa Monica, CA 90404

UCLA Department of Orthopaedic Surgery
1250 16th Street, 7th Tower
Santa Monica, CA 90404

Re:    NOTICE OF INTENT TO COMMENCE LEGAL ACTION PURSUANT TO
        CALIFORNIA CODE OF CIVIL PROCEDURE § 364

Dear Dr. Wang:

      This letter is being sent pursuant to *California Code of Civil Procedure* § 364 and the purpose of this letter is to inform you and your medical group, referenced above, that Jerome Lew and his spouse intend to file a medical malpractice lawsuit against you within 90 days of your receipt of this letter. The lawsuit is under investigation and this letter is required to be sent pursuant to California law. Any such lawsuit against you and your agents and employees will be based upon allegations of professional/medical negligence by you and your agents and employees that resulted in personal injury to plaintiffs. In any such case, plaintiffs will be seeking general damages, past and future medical expenses, past and future loss of earnings, among others as a result of injuries which occurred relative to your care and treatment of Mr. Lew.

      On or about March 31, 2009, you conducted an initial consultation and performed a history and physical examination of Jerome Lew. He presented with a numbness and pain in both of his hands. The patient stated that he had no history of neck or arm pain until he was

Exhibit  2
Page 52

Jeffrey C. Wang, M.D.
September 18, 2012
Page 2

struck by a car approximately one month prior to that date. You noted that Mr. Lew had a C5-6 disk herniation with compression at C5-6 and questionably at C4-5. You also noted that Mr. Lew had evidence of cervical myelopathy and that you recommended surgery. On May 11, 2009, you performed a surgical procedure known as an "anterior C5 vertebrectomy and corpectomy, and C4-C6 anterior interbody fusion." During this procedure, you utilized the placement of an interbody cage device to the C5 corpectomy defect and unbeknownst to Mr. Lew you used the Medtronic Infuse Bone Graft Product with local autogenous bone graft. The bone growth material is inserted with the intention that it would stimulate bone growth over time in order to "fuse".

Although your operative report states that you disclosed that you were using the Medtronic Infuse Bone Graft product, using it in an off-label manner, and that you advised Mr. Lew of the risks of such a product and surgery, this never happened. You never disclosed the fact to Mr. Lew or his wife, who was in the room during your discussions about the procedure, that you were using the Medtronic Infuse Bone Graft Product, and you never disclosed to Mr. Lew that you were using it in an off-label manner. You failed to provide critical information about the procedure and the product you intended to use on Mr. Lew and thus failed to obtain informed consent for use of this product or the off-label manner in which you used it. Due to your conduct and your misrepresentation and omission of critical information, Mr. Lew was wrongfully induced to consent to a procedure and a product to which he would not have otherwise consented.

When Mr. Lew began to experience numbness and pain in both hands, dysphagia, neck pain, fatigue and residual hoarseness, he presented to you for multiple post-surgical follow-ups. Mr. Lew was assured by you that it was normal for him to have these symptoms following the surgery and that the surgery and fusion were successful.

The Medtronic Infuse Bone Graft Product was approved by the Food and Drug Administration ("FDA") on July 2, 2002, for use only in the lower region of the spine (at levels L4 through S1) to treat degenerative disc disease, and was approved only for anterior surgeries at L4 through S1. That meant that it was initially approved only to be used by surgeons, when the surgeons placed the cage within the vertebrae in the lumbar region of the back, and only by entrance through the abdomen.

The Medtronic Infuse Bone Graft Product has never been approved by the FDA for use in other parts of the body or for use in any other type of procedure, and any such uses are "off-label". Companies are not permitted to promote off-label uses for their medical devices or to pay doctors inducements or kickbacks to promote the off-label uses or to perform procedures using the devices off-label. The use of the Medtronic Infuse Bone Graft Product for cervical spine fusion surgery has never been approved by the FDA, and the use of this product in the cervical spine is an off-label use.

You were aware or should have been aware that using the Medtronic Infuse Bone Graft Product in the manner that you did during the May 11, 2009 surgery on Mr. Lew was off-label,

Exhibit _2
Page 53

Jeffrey C. Wang, M.D.
September 18, 2012
Page 3

and was without informed consent and capable of causing the significant injuries that were
actually caused.  As a direct result of your fraud and negligent medical care for Mr. Lew, he has
suffered severe and permanent physical debilitating injuries, including, but not limited to,
numbness and pain in both hands, dysphagia, fatigue, residual hoarseness, permanent neck and
back pain, as well as other injuries and damages including, but not limited to, pain and suffering,
past and future medical expenses, past and future loss of earnings and loss of consortium, loss of
enjoyment of life, severe pain and suffering, anxiety, and past and future economic damages.
Mr. Lew has had invasive surgery aimed at fixing the conditions and injuries created by your
medical negligence and fraud, and has been informed that additional invasive surgeries that pose
a significant risk to his health and possibly life will be necessary.

It is the purpose of California *Code of Civil Procedure* section 364 to allow a NINETY
(90) period within which all potential litigants can and should investigate the merits of a
potential claim.

I therefore request that you immediately forward a copy of this Notice and
correspondence to your fraud, malpractice/errors and omissions liability insurance carrier.  I also
request that they contact the undersigned so that they may take full advantage of the intent and
purpose of California *Code of Civil Procedure* section 364.

Very truly yours,

ROBINSON CALCAGNIE ROBINSON
SHAPIRO DAVIS, INC.

Daniel S. Robinson

Exhibit _2_
Page 54

# EXHIBIT 3

Exhibit _3__
Page 55

MARK P. ROBINSON, JR. (SBN 054426)
DANIEL S. ROBINSON (SBN 244245)
WESLEY K. POLISCHUK (SBN 254121)
**ROBINSON CALCAGNIE ROBINSON
SHAPIRO DAVIS, INC.**
19 Corporate Plaza Drive
Newport Beach, California 92660
Telephone: (949) 720-1288
Facsimile: (949) 720-1292

Attorneys for Plaintiff,
JEROME LEW

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

09/21/2012 at 10:59:10 AM
Clerk of the Superior Court
By Fidel Ibarra, Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ORANGE – UNLIMITED JURISDICTION

| | |
|---|---|
| JEROME LEW,<br><br>            Plaintiff,<br><br>    vs.<br><br>MEDTRONIC, INC.;<br>MEDTRONIC SOFAMOR DANEK USA, INC.;<br>and DOES 1 through 100, inclusive,<br><br>            Defendants. | Case No.: 30-2012-00599810-CU-PL-CXC<br><br>**COMPLAINT FOR DAMAGES FOR:**<br><br>1. **Fraudulent Omission and Concealment**<br>2. **Strict Products Liability – Failure to Warn**<br>3. **Strict Products Liability – Manufacturing or Design Defect**<br>4. **Breach of Express and Implied Warranty**<br>5. **Fraud**<br>6. **Negligence**<br>7. **Medical Malpractice**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Judge Nancy Wieben Stock        CX-105 |

COMES NOW Plaintiff JEROME LEW, who alleges as follows:

I.    **INTRODUCTION**

1.      Plaintiff, by and through his undersigned counsel, hereby institutes this action against Defendants MEDTRONIC, INC. ("Medtronic"), a Minnesota corporation, MEDTRONIC SOFAMOR DANEK, USA, INC. ("MSD"), and DOES 1 through 100, inclusive, (collectively referred to as the "Defendants") as a result of injuries suffered by Plaintiff JEROME LEW. Medtronic and MSD will herein be collectively referred to as the "Medtronic Defendants." This case involves the spinal stimulating bone graft known as the Infuse® Bone Graft.

1

COMPLAINT FOR DAMAGES

Exhibit _3__
Page 56

2.    The medical device in question, the Infuse® Bone Graft, was promoted and sold to be used off-label to treat Plaintiff JEROME LEW. Infuse® Bone Graft is approved and indicated for lumbar surgery that is performed through the abdomen. It is not approved for use in cervical surgery. When the medical device is used off-label, it often causes the patient's throat to swell, difficulty swallowing and can potentially cause decreased oxygen to the brain, thereby creating a life-threatening condition, as it has in this case involving Plaintiff Jerome Lew.

3.    Because of Defendants' wrongful conduct, hundreds of patients, like Plaintiff JEROME LEW, underwent surgeries without knowing the risks that they faced. These patients' doctors were persuaded by Medtronic and Medtronic's consultant "opinion leaders," who are paid physician promoters, and Medtronic sales representatives, to use the product off-label.

4.    As a result, Plaintiff JEROME LEW suffered grievous bodily injuries.

**A.    The Infuse® Bone Graft Device**

5.    The Medtronic Defendants designed and marketed the Infuse® Bone Graft device ("Infuse®") for lumbar spine surgery.

6.    Infuse® is a bio bio-engineered bone filling material containing a bone morphogenetic protein ("BMP"), and is used as an alternative to grafting a patient's own bone, typically from the patient's hip. The purpose of Infuse® is to accomplish the same clinical outcomes as grafting a patient's own bone into these locations but without the difficulties of grafting bone from the hip and other sites, since grafting sites typically have side effects such as pain and long recovery.

7.    It uses a genetically engineered protein -- rhBMP -- to help fuse vertebrae in the lower (lumbar) spine in order to treat degenerative disc disease.

8.    The device consists of three components split among two parts: 1. a metallic spinal fusion cage, and; 2. the bone graft substitute which consists of a genetically-engineered human protein (rhBMP-2) along with a sponge-like carrier or scaffold for the protein (manufactured from bovine collagen) that is placed inside the fusion cage.

2

COMPLAINT FOR DAMAGES

Exhibit _3_
Page 57

9.      The fusion cage component maintains the spacing and temporarily stabilizes the diseased region of the spine, while the Infuse® bone graft component is used to form bone which would permanently stabilize (fuse) this portion of the spine.

10.     During surgery, rhBMP-2 is soaked onto and binds with the absorbable collagen sponge that is designed to resorb, or disappear, over time. As the sponge dissolves, the rhBMP-2 stimulates the cells to produce new bone.

**B.    Background on Bone Morphogenetic Proteins in the Infuse® Bone Graft**

11.     The active ingredient in the INFUSE® Bone Graft is rhBMP-2, a manufactured version of a protein already present in the body that promotes new bone growth.

12.     Certain BMPs have been studied for decades because of their ability to heal bone and eliminate the need for bone graft harvesting from other parts of the body. Approximately 20 BMPs have been discovered, but only six appear capable of initiating bone growth. Of these, rhBMP-2 has been studied more than any other BMP and is FDA approved for use only in the lower spine, tibia fractures, and dental surgeries.

13.     Naturally occurring BMP is found within the bone itself, but only in small amounts. To provide clinically useful and reproducible amounts of isolated, human BMP, it must be manufactured in a special facility.

14.     Scientists isolated the gene for one protein (BMP-2) from bone tissue and used molecular biology techniques to create genetically engineered cells. These cells then produce large quantities of rhBMP-2. A similar process is used to manufacture other proteins, such as insulin.

**C.    The FDA Approval Process**

15.     Infuse® was approved by the Food and Drug Administration ("FDA") on July 2, 2002, for use only in the lower region of the spine (at levels L4 through S1) to treat degenerative disc disease, and was approved only for anterior surgeries at L4 through S1. That meant that it was initially approved only to be used by surgeons, when the surgeons placed the cage within the vertebrae in the lumbar region of the back, and only by entrance through the abdomen.

COMPLAINT FOR DAMAGES

Exhibit_3_
Page 58

16.    Infuse® is also used to fill space where bone is needed in order to place dental implants (for example, dental implants with an exposed head used to secure dental devices such as crowns, fixed bridges, or dentures.) In dental surgeries, Infuse® is used to make enough bone in the sinus area to place dental implants in the upper jaw. Infuse® is also used to increase bone in extraction sites prior to implant placement.

17.    Infuse® was approved by the FDA on March 9, 2007, for dental use.

18.    In addition to use in lower spine fusion surgeries and dental surgeries, Infuse® has been approved for only one other use, that of repair of tibial fractures that have already been stabilized with intramedullary nail fixation after appropriate wound management.

19.    Infuse® has never been approved by the FDA for use in other parts of the body or for use in any other type of procedure, and any such uses are "off-label" uses. While physicians may use FDA-approved medical devices in any way they see fit, companies are not permitted to promote off-label uses for their medical devices or to pay doctors inducements or kickbacks to promote the off-label uses or to perform procedures using the devices off-label. The promotion of any such off-label use is considered misbranding under the federal regulations. *See* 21 USC §§ 331, 351.

20.    The use of Infuse® for cervical spine fusion surgery has never been approved by the FDA, and the use of this product in the cervical spine is an off-label use.

**D.    Infuse® is a Very Profitable Part of Medtronic's Business**

21.    Infuse® has become a best seller for Medtronic.

22.    One market analyst has publicly estimated that the product's sales were approximately $815 million for the fiscal year ended in April, 2008. Medtronic has been depending heavily on Infuse® since sales of many of its other products, such as cardiac defibrillators, have slowed because of the historic recalls.

**E.    The Off-Label Use of Infuse® in the Cervical Spine is Not Safe or Effective**

23.    Christopher B. Shields, chairman of neurological surgery at the University of Louisville, says it was apparent by late 2004 that using Infuse® in the neck area could cause serious problems.

Exhibit _3__
Page 59

24.    Susan Levine, a vice president at Hayes, Inc., which evaluates medical technologies for insurers, has reported that she has reviewed the research work on Infuse®, and finds it "really distressing to see something like this used in a potentially harmful way and without adequate evidence." According to Ms. Levine, Infuse® can be "good for a patient" when used properly.

25.    Questions about off-label use cropped up before the product was approved. For example, in early 2002, one member of an FDA advisory committee reviewing Infuse® asked agency staff for recommendations on "guarding against off-label use of this product."

26.    A number of patients say they have been harmed in off-label uses of Infuse®, which is approved by the FDA only for use in a small section in the lower, or lumbar, region of the spine. At least 280 reports of adverse events involving Infuse® have been made to the FDA.  Approximately 75% of those reports involve off-label use.

27.    On July 1, 2008, the FDA issued a Public Health Notification about complications from the off-label use of Infuse® in the neck, or cervical, area of the spine. The FDA reported that it had received 38 reports over a four year period through July 1, 2008, of complications from cervical uses of Infuse®; and, that some reports were of life-threatening and fatal events.  Some of the complications were associated with swelling of the neck and throat tissue, which resulted in compression of the airway and/or neurological structures in the neck, and patients reported difficulty swallowing, breathing and speaking.  Several patients required emergency treatment, including tracheotomies and the insertion of feeding tubes.

28.    The FDA noted that the anatomical proximity of the cervical spine to airway structures in the body has contributed to the seriousness of the events reported and the need for emergency medical intervention with the off-label use of Infuse® in the cervical spine.

29.    The July 1, 2008 FDA Safety Alert regarding Medtronic's Infuse product was intended to alert physicians to:

"...reports of life-threatening complications associated with recombinant human Bone Morphogenetic Protein (rhBMP) when used in the cervical spine. **Note that the safety and effectiveness of rhBMP in the cervical**

Exhibit _3_
Page 60

1    spine have not been demonstrated and these products are not
2    approved by FDA for this use."

3    *FDA Public Health Notification: Life-threatening Complications Associated with Recombinant Human*
4    *Bone Morphogenetic Protein in Cervical Spine Fusion,* issued July 1, 2008
5    (http://www.fda.gov/cdrh/safety/070108-rhbmp.html) (emphasis in original).

6    30.    Spine surgeons have also expressed concern about the use of rhBMP in the cervical
7    spine. For example, at a recent spine conference in 2008, a group of North Carolina surgeons reported
8    on a study that found a complication rate of 59% in cervical spine surgeries with Infuse®, as compared
9    to a 21% complication rate using conventional fusion surgery, which involves bone grafts or collagen.
10   The study, conducted between July 2005 and December 2007, examined 76 patients.

11   31.    In one lawsuit related to the off-label use of Infuse® in the cervical spine, surgeon
12   Bryan Wellman, M.D., a defendant in the suit, testified under oath at deposition that a Medtronic sales
13   representative encouraged him to use Infuse® off-label in cervical spine operations, and that he has
14   done more than 100 such procedures with the product. Dr. Wellman testified that he discussed with the
15   Medtronic employee the right dosage of the Infuse® material to use in the cervical spine surgeries, but
16   determined the dosage on his own.

17   **F.    Despite Lack of Safety and Effectiveness, Medtronic Improperly Promoted and**
18   **Marketed to Physicians the Off-Label Use of Infuse® in the Cervical Spine**

19   32.    Medical device companies look for surgeons who will use a high volume of their
20   devices and surgeons who are known as "Opinion Leaders." Opinion leaders are physicians whose
21   opinions on medical devices are held in high regard. If these influential physicians are willing to
22   promote the use of a certain device, then other surgeons are likely to follow suit and use that device.

23   33.    Many medical device companies, including Medtronic, cultivate relationships with these
24   opinion leaders, paying them handsome consulting fees, travel expenses for seminars, and other perks,
25   to encourage these physicians to promote the use of a particular medical device.

26   34.    Not only did Medtronic engage in such activities with respect to Infuse®, it improperly
27   paid doctors to promote the off-label use of Infuse® in cervical spine fusions.

28

35.    Medtronic, Inc. and Medtronic Sofamor Danek USA, Inc. have been named as defendants in two qui tam actions, *United States ex rel. (UNDER SEAL) v. Medtronic. Inc., et al.*, Civil Action No. 02-2709 (W. D. Tenn.), and *United States ex rel. Poteet v. Medtronic, Inc., et al.*, Civil Action No. 03-2979 (W. D. Tenn.) (the "Qui Tam Lawsuits"), both of which allege that Medtronic and MSD violated the False Claims Act, 31 U.S.C. 3729, *et seq.*, by paying illegal kickbacks to certain physicians in connection with promoting the off-label use of Infuse® in the cervical spine, which resulted in the submission of false or fraudulent claims to federal health care programs.

36.    In these lawsuits, the United States Department of Justice contended that between January 1, 1998 and April 30, 2003, MSD made payments and provided other remuneration to a number of physicians and entities in connection with its spinal products in the form of (1) payments and other remuneration for physicians' attendance and expenses at medical education events, "think tanks," VIP/opinion leader events, and meetings at resort locations; (2) services and payments for services to physicians through Medtronic's Healthcare Economic Services and eBusiness Departments; and (3) payments made pursuant to consulting, royalty, fellowship and research agreements with various physicians and entities.

37.    Based on its investigation, the United States contended that certain of the payments, services, and remuneration discussed above were improper, resulted in the submission of false or fraudulent claims, and gave rise to certain legal claims.

38.    In July, 2006, Medtronic agreed to pay $40 million to the United States to settle these lawsuits under the False Claims Act, 31 U.S.C. §§ 3729-3733, the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a, and the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812.

39.    As a result of this settlement, Medtronic and MSD agreed to enter into a Corporate Integrity Agreement with the Department of Health and Human Services Office of Inspector General.

40.    Also as a result of this settlement, Medtronic and MSD agreed to negotiate with representatives of the National Association of Medicaid Fraud Control Units to reach an agreement that provides for distribution of certain sums to the several states with which Medtronic and MSD agree to a settlement concerning the conduct at issue in the lawsuits.

7

Exhibit_3
Page 62

1     G.    <u>September 30, 2008 Letters From United States Senators Herb Kohl and Charles</u>

2    <u>Grassley to Medtronic Regarding Ongoing Concerns Over Medtronic's Payments to</u>

3    <u>Doctors Related to the Promotion and Marketing of Infuse®</u>

4     41.    Despite this July, 2006 settlement with the United States, concerns regarding

5 Medtronic's off-label marketing activities and related payments to doctors continued.

6     42.    On September 30, 2008, U.S. Senator Herb Kohl sent a letter to Medtronic noting that

7 earlier in 2008, Medtronic's outside counsel provided to the Special Committee on Aging a written

8 account of Medtronic's efforts to comply with the July, 2006 Settlement Agreement it reached with the

9 United States Department of Justice concerning allegations that Medtronic and its subsidiary

10 improperly compensated surgeons and physicians in connection with the Infuse® device.

11     43.    Senator Kohl's letter expressed several concerns, including the following:

12           "That account also addressed the corporate integrity agreement (CIA) that

13           Medtronic and its subsidiary entered into with the Office of the Inspector

14           General of the United States Department of Health and Human Services

15           stemming from those same allegations.  In that same letter to the

16           Committee, Medtronic and its subsidiary both denied that 'improper

17           payments were made to physicians in the first place (Medtronic's

18           agreement with DOJ does not contain any admission of liability), much

19           less that improper payments have continued.'  Consequently, it was with

20           concern that I read recent articles, in the *Wall Street Journal* and

21           elsewhere, which outlined highly disturbing allegations of improper, if not

22           illegal, payments by Medtronic to surgeons and physicians.

23           "These continuing allegations are directly relevant to the Committee's

24           oversight of inappropriate physician compensation practices within the

25           medical device industry.  All of the major orthopedic device companies

26           that settled with DOJ over such allegations were required to publicly

27           reveal information related to their payments to physicians.  Medtronic's

28

COMPLAINT FOR DAMAGES

Exhibit _3_
Page 63

1    response to the Committee's initial inquiry articulated no specific reasons

2    as to why Medtronic has yet to voluntarily make the same disclosures."

3        44.    In this letter, Senator Kohl requested both documentation of MEDTRONIC'S efforts to

4    comply with the July 2006 Settlement Agreement and interviews with corporate witnesses and

5    documents "given the ongoing, serious concerns publicly raised regarding the integrity and

6    transparency of MEDTRONIC'S physician compensation practices."

7        45.    Senator Kohl also asked MEDTRONIC to explain "the circumstances that led

8    MEDTRONIC'S former counsel to file suit against the company [alleging improper payments to

9    physicians] and how that matter was subsequently settled."

10        46.    Also on September 30, 2008, U.S. Senator Charles Grassley sent a similar letter to

11    MEDTRONIC pertaining to the marketing of Infuse® and allegations of related kickbacks to

12    physicians regarding the sale of the devices, noting that:

13    "Last week, the *Wall Street Journal (WSJ)* reported on allegations of

14    financial perks provided to doctors that included 'entertainment at a

15    Memphis strip club, trips to Alaska and patent royalties on inventions they

16    played no part in.'[1]  I would appreciate your assistance in better

17    understanding these allegations and would like to take this opportunity to

18    lay out my specific concerns and questions."

19        47.    Senator Grassley went on to express his concern over the *Wall Street Journal's* reports

20    "that one of the incentives Medtronic provided physicians was to include them on patents for medical

21    devices and reward them with royalties, even though the physicians may not have contributed to the

22    development of the product."

23        48.    This letter specifically addressed issues related to MEDTRONIC'S marketing of

24    Infuse®:

25    "Fourth, earlier this month the WSJ reported on problems with off-label

26    use of Medtronic's Infuse®. Infuse® is a bone graft replacement

27    _____

[1]  David Armstrong, "Lawsuit Says Medtronic Gave Doctors Array of Perks," *Wall Street Journal*,

28    September 25, 2008.

COMPLAINT FOR DAMAGES

Exhibit _3_
Page 64

technology that uses a protein which creates bone. Specifically, it was reported that Medtronic gave payments to physicians, in the form of consulting agreements, as a means of increasing sales of Infuse®. The allegations that Medtronic has been disguising these consulting agreements as inducements or kickbacks for physicians to use Infuse® are equally troubling. Likewise, this is a practice that I would like to better understand and I would like to know what if anything has changed since these reported events."

49.    Senator Grassley, in his September 30, 2008 letter, also questioned why several lawsuits against MEDTRONIC pertaining to Infuse® remained under seal, and indicated that he would like to "better understand the status of these lawsuits and the procedural process that has led to the current situation."

## II.    THE PARTIES

50.    Plaintiff JEROME LEW ("Plaintiff") is a 53-year-old male who is, and at all times relevant hereto was, a resident of Orange County, California.

51.    Defendant MEDTRONIC, INC. is a corporation organized and existing under the laws of the State of Minnesota with its principal place of business at 710 Medtronic Parkway, Minneapolis, Minnesota 55423.

52.    At all times relevant hereto, Defendant MEDTRONIC, INC. was engaged in the business of manufacturing, marketing, promoting and selling medical products and devices in California for use on California citizens. Medtronic maintains research, development, manufacturing and/or distribution facilities in Los Angeles County.

53.    Defendant MEDTRONIC SOFAMOR DANEK USA, INC. is a corporation organized and existing under the laws of the State of Tennessee with its principal place of business at 1800 Pyramid Place, Memphis, Tennessee 38132.

54.    At all times relevant hereto, Defendant MEDTRONIC SOFAMOR DANEK USA, INC. was engaged in the business of manufacturing, marketing, promoting and selling medical products and

10

Exhibit _3_
Page 65

1   devices in California for use on California citizens.  Medtronic maintains research, development,

2   manufacturing and/or distribution facilities in Los Angeles County.  Defendants MEDTRONIC, INC.

3   and MEDTRONIC SOFAMOR DANEK USA, INC. will hereinafter be collectively referred to as

4   "MEDTRONIC".

5       55.    At all relevant times, MEDTRONIC maintained facilities dedicated to conduct research

6   and development, manufacturing, or distribution in the following Southern California locations:

7   Chatsworth and Northridge (Los Angeles County), Corona (Riverside County), Goleta (Santa Barbara

8   County), and Santa Ana (Orange County).  Medtronic also operates two Bakken Education Centers in

9   Los Angeles and Woodland Hills (Los Angeles County), where thousands of medical professionals

10  visit each year to gain hands-on experience with new technologies.

11      56.    At all relevant times, MEDTRONIC was engaged in the manufacture, promotion and

12  sale of the Infuse Bone Graft.  The Infuse Bone Graft is a surgically implanted medical device

13  containing a genetically engineered protein designed to stimulate bone growth.

14      57.    On September 18, 2012, pursuant to Section 364 of the California Code of Civil

15  Procedure, Plaintiff, through his undersigned counsel, served his treating surgeon, Jeffrey C. Wang,

16  M.D. ("Dr. Wang"), with a 90-day notice of intention to commence action.  Once the 90-day wait

17  period expires without resolution, Plaintiff intends to amend his complaint to name Dr. Wang as a

18  defendant.  Dr. Wang is a resident and citizen of the state of California and has his principal place of

19  business in Los Angeles, California.

20      58.    On September 18, 2012, pursuant to Section 364 of the California Code of Civil

21  Procedure, Plaintiff, through his undersigned counsel, served the Regents of the University of

22  California, UCLA Department of Orthopaedic Surgery, UCLA Orthopaedic Surgery Clinic, UCLA

23  Health System Auxiliary, and the UCLA Spine Center, collectively referred to herein as "UCLA", the

24  healthcare facility where his cervical diskectomy surgeries were performed, with a 90-day notice of

25  intention to commence action.  Once the 90-day wait period expires without resolution, Plaintiff intends

26  to amend his complaint to name UCLA as a defendant.  UCLA is a California corporation and has its

27  principal place of business in Los Angeles, California.

28

COMPLAINT FOR DAMAGES

Exhibit _3_
Page 66

59.     The true names and capacities, whether individual, corporate, associate, or otherwise, of the defendants named herein, under the fictitious names of **DOES 1 through 100**, inclusive, are unknown to Plaintiff, who, therefore, sues said defendants by such fictitious names.  Plaintiff will ask leave of Court to amend this complaint and insert the true names and capacities of said defendants when the same have been ascertained.  Plaintiff is informed and believes and based thereon alleges that each of the defendants designated herein as a "Doe" is legally responsible in some manner for the events and happenings herein alleged, and that Plaintiff's damages were proximately caused by such defendants.  Unless otherwise specified, references herein to "Defendants" refer to the Medtronic Defendants and DOES 1 through 100, inclusive.

60.     At all times herein mentioned, defendants, and each of them, and their aggregates, corporates, associates, and partners, and each of them, were the agent, servant, employee, assignee, permissive user, successor in interest or joint venture of each other, and were acting within the time, purpose or scope of such agency or employment or permission; and all acts or omissions alleged herein of each such defendant were authorized, adopted, approved, or ratified by each of the other defendants.

### III.    PLAINTIFF JEROME LEW'S ALLEGATIONS

61.     On or about March 31, 2009, Plaintiff consulted Dr. Jeffrey Chun Wang of the UCLA Department of Orthopaedic Surgery regarding a numbness and pain in both of his hands.  Plaintiff stated to Dr. Wang that he had no history of neck or arm pain until he was struck by a car approximately one month prior.  Dr. Wang diagnosed Plaintiff with "cervical stenosis and cervical myelopathy with herniated disk at C4-C5 and C5-C6, and degenerative disk disease."

62.     On May 11, 2009, Dr. Wang performed a surgical procedure known as an "anterior C5 vertebrectomy and corpectomy, and C4-C6 anterior interbody fusion." During this procedure, Dr. Wang utilized the placement of an interbody cage device to the C5 corpectomy defect and used Infuse with local autogenous bone graft.  The bone growth material was inserted with the intention that it would stimulate bone growth over time in order to "fuse".

63.     The use of the Infuse Bone Graft Product in the procedure performed by Dr. Wang had never been approved by the FDA and therefore was considered to be an off-label use.

12

COMPLAINT FOR DAMAGES

Exhibit 3
Page 67

64.     Plaintiff is informed and believes and based thereon alleges that MEDTRONIC, through their sales representatives and paid Key Opinion Leaders, directly and indirectly promoted, trained and encouraged Dr. Wang to engage in off-label procedures, such as the one performed on Plaintiff, using the Infuse Bone Graft.

65.     Dr. Wang was well aware of the data and associated safety concerns surrounding the use of the Infuse Bone Graft Product for off-label procedures, particularly those involving the cervical spine. Despite this knowledge, however, Dr. Wang never informed Plaintiff that he would be using the Infuse Bone Graft product. He never informed Plaintiff that he would be engaging in an off-label procedure using the Infuse Bone Graft Product. He never informed Plaintiff that this product had only received limited FDA approval for certain specific procedures. He never informed Plaintiff that use of the Infuse Bone Graft Product could result in unwanted bone growth and migration of the bone to sensitive nerve areas exacerbating Plaintiff's pain. He never informed Plaintiff that use of the Infuse Bone Graft Product could cause severe, debilitating, permanent neck and back pain. He never informed Plaintiff of available alternative methods of surgery.

66.     Having failed to inform Plaintiff of these facts and risks, Dr. Wang never actually obtained his informed consent to perform the procedures that he performed. Had Plaintiff known the facts regarding the Infuse Bone Graft Product available to Dr. Wang at the time of the surgery, Plaintiff would have elected to not proceed in that manner.

67.     To cover up his own negligent actions, Dr. Wang fraudulently falsified Plaintiff's medical records, which became available to Plaintiff indirectly no earlier than September 29, 2010, by constructive receipt of his agent, and was only viewed by Mr. Lew personally in May 2012. Dr. Wang's negligent actions and fraud prevented Plaintiff from discovering the facts in this Complaint that give rise to Plaintiff's causes of action.

68.     Shortly after his May 2009 surgery, Plaintiff began to experience numbness and pain in both hands, dysphagia, neck pain, fatigue and residual hoarseness. Plaintiff presented to Dr. Wang and other physicians for multiple post-surgical follow-ups. Plaintiff was assured by Dr. Wang and these other physicians that it was normal for him to have these symptoms following the surgery and that the

COMPLAINT FOR DAMAGES

Exhibit_3
Page 68

1   surgery and fusion were successful. Although Dr. Wang knew that he used the Infuse Bone Graft

2   Product on Plaintiff in an off-label manner, he continued to withhold this information and only

3   prescribed additional physical therapy, thereby causing the bony fusion around the corpectomy cage to

4   worsen.

5        69.    Despite his knowledge of the root cause of Plaintiff's continuing problems, Dr. Wang

6   never took any corrective steps, nor did he contact MEDTRONIC to obtain updated warnings and

7   indications of product usage regarding the Infuse Bone Graft Product.

8        70.    A subsequent CT scan in March 2011 showed evidence of bony fusion present around

9   the corpectomy cage. An X-ray in July 2012 revealed evidence of bone growth posteriorly from the

10   cage entering into the canal. A CT myelogram performed at the same time showed bone growth

11   compressing the cord significantly, which along with pressure from the posterior aspect was pinching

12   the cord. This was deemed to be causing a significant spinal cord compression.

13        71.    The first time Plaintiff discovered that his pain, dysphagia, fatigues and hoarseness may

14   have been caused and exacerbated by a medical device was through his medical records which became

15   available to Plaintiff indirectly no earlier than September 29, 2010, by constructive receipt of his agent,

16   and was only viewed by Mr. Lew personally in May 2012. Prior to this point, Plaintiff had always been

17   led to reasonably believe -- by, among others, his treating surgeon Dr. Wang – that his ongoing and

18   escalating symptoms were caused by his underlying medical condition and not by the off-label use of

19   the Infuse Bone Graft Product. As a result of such assurances, Mr. Lew delayed seeking proper

20   treatment, causing more damage from bone growth and a general worsening of Mr. Lew's condition.

21        72.    The acts, conduct, and omissions of MEDTRONIC, and each of them, as alleged

22   throughout this Complaint were fraudulent, willful and malicious and were done with a conscious

23   disregard for the rights of Plaintiff and other users of the Infuse Bone Graft Product, and for the

24   primary purpose of increasing MEDTRONIC'S profits from the sale and distribution of the Infuse

25   Bone Graft Product. MEDTRONIC'S outrageous and unconscionable conduct warrants an award of

26   exemplary and punitive damages against MEDTRONIC in an amount appropriate to punish and make

27   an example of MEDTRONIC.

28

Exhibit _3
Page 69

73.     Prior to the manufacturing, sale and distribution of the Infuse Bone Graft Product, MEDTRONIC knew that the Infuse Bone Graft Product was in a defective condition as previously described herein and knew that those who received the Infuse Bone Graft Product would experience and did experience severe physical, mental, and emotional injuries. Further, MEDTRONIC, through its officers, directors, managers, and agents, had knowledge that the Infuse Bone Graft Product presented a substantial and unreasonable risk of harm to the public, including Plaintiff, and as such, consumers of the Infuse Bone Graft Product were unreasonably subjected to risk of injury or death.

74.     Despite such knowledge, MEDTRONIC, acting through its officers, directors and managing agents for the purpose of enhancing MEDTRONIC'S profits, knowingly and deliberately failed to remedy the known defects in the Infuse Bone Graft Product and failed to warn the public, including the Plaintiff, his treating physicians and healthcare providers, the medical, scientific, pharmaceutical and healthcare communities, the FDA, and the public in general, of the extreme risk of injury occasioned by said defects inherent in the Infuse Bone Graft Product.  MEDTRONIC and its individual agents, officers, and directors intentionally proceeded with the manufacturing, sale, distribution and marketing of the Infuse Bone Graft Product knowing that the public, including Plaintiff, would be exposed to serious danger in order to advance MEDTRONIC'S own pecuniary interest and monetary profits.

75.     MEDTRONIC'S conduct was despicable, and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by MEDTRONIC with willful and conscious disregard for safety, entitling Plaintiffs to exemplary damages under Civil Code § 3294.

## IV.    PLAINTIFF'S CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### FRAUDULENT OMISSION AND CONCEALMENT

### (Against the Medtronic Defendants)

76.     Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully set forth here and further alleges as follows:

COMPLAINT FOR DAMAGES

Exhibit _3_
Page 70

77.    MEDTRONIC had a confidential and special relationship with Plaintiff due to (a) MEDTRONIC'S vastly superior knowledge of the health and safety risks relating to Infuse®, and (b) MEDTRONIC'S sole and/or superior knowledge of their dangerous and irresponsible practices of improperly promoting to physicians the off-label use of Infuse® for cervical spine fusion surgery.

78.    As a result of this relationship, MEDTRONIC had an affirmative duty to fully and adequately warn Plaintiff of the true health and safety risks related to the off-label use of Infuse®, and MEDTRONIC had a duty to disclose their dangerous and irresponsible practices of improperly promoting to physicians the off-label use of Infuse® for cervical spine fusion surgery.  Independent of any special relationship of confidence or trust, MEDTRONIC had a duty not to conceal the dangers of the off-label use of Infuse® to Plaintiff.

79.    Misrepresentations made by MEDTRONIC about the health and safety of Infuse® independently imposed a duty upon MEDTRONIC to fully and accurately disclose to Plaintiff the true health and safety risks related to Infuse®, and a duty to disclose their dangerous and irresponsible off-label promotion and marketing practices.

80.    In connection with their Infuse® products, MEDTRONIC fraudulently and intentionally concealed important and material health and safety product risk information Plaintiff, all as alleged in this Complaint.

81.    MEDTRONIC engaged in the following, each of which is sufficient to independently establish MEDTRONIC'S liability for fraudulent omission and/or concealment:

    a.    MEDTRONIC fraudulently concealed the health and safety hazards, symptoms, constellation of symptoms, diseases and/or health problems associated with the off-label use of their Infuse® product in the cervical spine;

    b.    MEDTRONIC fraudulently concealed their practice of promoting and marketing to physicians, including Plaintiffs' physician, the off-label use of Infuse® in cervical spine surgery;

16

COMPLAINT FOR DAMAGES

Exhibit _3
Page 71

Case 2:14-cv-08303-JLS-VBK    Document 8-1    Filed 11/14/14    Page 76 of 232    Page
Case 8:12-cv-01788-JLS-MLG   Document #:196  Filed 10/16/12   Page 27 of 121   Page ID #:27
ID #:196

c.      MEDTRONIC fraudulently concealed information about the known comparative risks and benefits of the use of Infuse® and the relative benefits and availability of alternate products, treatments and/or therapies.

82.    MEDTRONIC knew that the information it concealed was important in determining the proper course of treatment, particularly insofar as it affected Plaintiff and Plaintiff's physicians' decision regarding whether or not to use Infuse® in cervical spine surgery.

83.    In addition to violating its common law duty to Plaintiff, MEDTRONIC'S same acts of fraudulent concealment and suppression and dangerous and irresponsible off-label promotion and marketing practices also violated FDA regulations as outlined above in paragraph 19. *See* 21 USC §§ 331, 351. *See also* USC 42 Syracuse 29.

84.    As a direct and proximate result of MEDTRONIC'S fraudulent concealment and suppression of material health and safety risks relating to Infuse® and of MEDTRONIC'S dangerous and irresponsible off-label promotion and marketing practices, Plaintiff suffered injuries and harm, and economic loss, and Plaintiff will continue to suffer injuries, harm, damages and economic loss. Plaintiff's damages include, but are not limited to, medical and hospital expenses, physical and mental pain and suffering, and lost wages.

85.    Plaintiff is therefore entitled to damages in an amount to be proven at trial, together with interest thereon and costs.

## SECOND CAUSE OF ACTION

### STRICT PRODUCTS LIABILITY – FAILURE TO WARN

#### (Against the Medtronic Defendants)

86.    Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully set forth here and further alleges as follows:

87.    At all times herein mentioned, MEDTRONIC placed the Infuse Bone Graft Product on the market.

88.    At all times herein mentioned, the off-label use of the Infuse Bone Graft Product used in the manner on Plaintiff by Dr. Wang was defective, unsafe and ineffective, and MEDTRONIC knew or

17

Exhibit _3__
Page 72

1   should have known that it was unsafe and ineffective when used in an off-label manner as promoted,

2   instructed and supplied by MEDTRONIC, and as utilized in Plaintiff's May 11, 2009 surgery.

3       89.     At all times herein mentioned, MEDTRONIC promoted the off-label use of the Infuse

4   Bone Graft Product with the knowledge of its risk to patients. MEDTRONIC had specific knowledge

5   of the risk involved in the off-label use of the Infuse Bone Graft Product when used in surgeries such as

6   the May 11, 2009 surgery performed on Plaintiff.

7       90.     At all times herein mentioned, Plaintiff and his agents relied upon the misrepresentations

8   of MEDTRONIC in utilizing the product in an off-label manner as promoted and instructed by

9   MEDTRONIC.

10       91.     At all times herein mentioned, the off-label use of the Infuse Bone Graft Product in a

11   procedure such as the May 11, 2009 surgery performed on Plaintiff produced serious side effects,

12   including unwanted bone growth and migration, and MEDTRONIC knew or should have known that

13   said usage could be unsafe because of said side effects.

14       92.     Plaintiff was given the Infuse Bone Graft Product in a manner that had been illegally

15   promoted and intended by MEDTRONIC.

16       93.     The off-label use of the Infuse Bone Graft Product, as given to Plaintiff, was ineffective,

17   defective and dangerous when manufactured, designed, promoted and instructed by MEDTRONIC,

18   which is strictly liable for the injuries arising from its use.

19       94.     The risk attendant to the off-label use of the Infuse Bone Graft Product greatly

20   outweighed the benefit to be expected from said use as promoted by MEDTRONIC.

21       95.     The off-label use of the Infuse Bone Graft Product failed to perform in a manner that a

22   reasonable consumer would expect it to perform.

23       96.     Plaintiff is informed and believes and thereon alleges that MEDTRONIC knew that the

24   Infuse Bone Graft Product manufactured, designed, and sold by it, when used off-label in the manner

25   described above and as promoted and instructed by MEDTRONIC, was defective and dangerous in the

26   manner hereinbefore described; that MEDTRONIC knew that, because said use was dangerous and

27   defective when so used off-label, the product could not be safely used for the purpose intended; that

28

18

COMPLAINT FOR DAMAGES

Exhibit _3
Page 73

1  MEDTRONIC, knowing that said product when used off-label was defective and dangerous, acted in a

2  despicable manner and in conscious disregard of the safety of the public, including Plaintiff, when it

3  placed the product on the market without warning of the defect, and knew when so placed that it would

4  be used without inspection for defect when so used.

5       97.    These same acts and omissions that constitute MEDTRONIC's common law strict

6  liability failure to warn also violate parallel FDA regulations, including those statutory regulations

7  mandating the reporting of adverse events, *see* e.g., 21 USC § 360i(a)(1)(A)-(B) and 21 C.F.R. §

8  803.50(a), as well as those statutory regulations prohibiting the promotion of off-label uses. *See* 21

9  USC §§ 331(a) and (d), 351(f)(1)(B), 352(f), 352(o), and 355(a), FD&C Act §§ 301(a) and (d),

10  501(f)(1)(B), 502(o), and 505(a), and 21 CFR § 201.100(c)(1).

11      98.    By placing said product on the market and promoting said off-label use, MEDTRONIC

12  impliedly represented it was safe for the purpose intended, and intended that doctors and patients in the

13  general public should rely on their misrepresentations. Plaintiff and his doctors did rely on each of said

14  misrepresentations, all to his damage as hereinabove alleged.

15                    **THIRD CAUSE OF ACTION**

16  **STRICT PRODUCTS LIABILITY – MANUFACTURING OR DESIGN DEFECT**

17                    **(Against the Medtronic Defendants)**

18      99.    Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully

19  set forth here and further alleges as follows:

20      100.   At all times herein mentioned, MEDTRONIC designed, distributed, manufactured,

21  tested, marketed, and sold the Infuse Bone Graft Product to consumers, including Plaintiff, as well as to

22  physicians throughout the United States.

23      101.   At all times herein mentioned, the Infuse Bone Graft Product was a device subject to

24  federal regulation. That is, MEDTRONIC's common law duty to avoid manufacturing or design

25  defects paralleled its duties under federal regulations governing manufacturing and quality control.

26  Such regulations include the FDA's Quality Systems (QS) and Good Manufacturing Practices (GMP),

27

28

COMPLAINT FOR DAMAGES

Exhibit _3
Page 74

1  as well as other international standards adopted by the FDA. *See* 21 CFR 820, ISO 9001: 1984, and

2  ISO CD 13485.

3      102.   At all times herein mentioned, the Infuse Bone Graft Product was defectively designed

4  and manufactured at the time that it left MEDTRONIC's control.

5      103.   At all times herein mentioned, the Infuse Bone Graft Product was unreasonably

6  dangerous in that it was unsafe when used as it was promoted by MEDTRONIC for use in off-label

7  cervical spine surgeries.

8      104.   At all times herein mentioned, the Infuse Bone Graft Product was not manufactured in

9  conformity with the manufacturer's design.

10      105.   At all times herein mentioned, the Infuse Bone Graft Product failed to perform as safely

11  as an ordinary consumer would expect and/or the risk of danger inherent in the design outweighs the

12  benefits of the design.

13      106.   At all times herein mentioned, MEDTRONIC's unreasonably dangerous and defectively

14  designed and manufactured Infuse Bone Graft Product was the direct, legal and proximate cause of

15  Plaintiff's damages including, but not limited to, medical expenses in the past, future medical expenses

16  and loss of earnings.

17                    **FOURTH CAUSE OF ACTION**

18            **BREACH OF EXPRESS AND IMPLIED WARRANTY**

19                    **(Against the Medtronic Defendants)**

20      107.   Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully

21  set forth here and further alleges as follows:

22      108.   At al times mentioned herein, MEDTRONIC utilized journal articles, advertising media,

23  sales representatives and paid Key Opinion Leaders to urge the use, purchase, and utilization of the off-

24  label use of the Infuse Bone Graft Product and expressly and impliedly warranted to physicians and

25  other members of the general public and medical community that such off-label uses, including uses in

26  procedures like the surgery Plaintiff underwent was safe and effective.

27

28

20

---

COMPLAINT FOR DAMAGES

Exhibit _3__
Page 75

1      109.    MEDTRONIC knew or, in the exercise of reasonable diligence, should have known that

2  such off-label uses had the serious side effects set forth herein.

3      110.    Plaintiff is informed and believes and based thereon alleges that his treating surgeon, Dr.

4  Wang, and his other physicians and medical professionals, relied on MEDTRONIC'S express and

5  implied warranty representations regarding the safety and efficacy of off-label use of the Infuse Bone

6  Graft Product, but such off-label uses, including uses in procedures like the surgery Plaintiff

7  underwent, was not effective, safe, and proper for the use as warranted in that such it failed, migrated,

8  lead to unwanted bone growth and was dangerous when put to its promoted use.

9      111.    Plaintiff is informed and believes and based thereon alleges that MEDTRONIC

10  breached the implied warranties of merchantability and fitness because the Infuse Bone Graft Product is

11  unsafe for the promoted uses, is not merchantable, is unfit for its promoted use when sold, is unfit for

12  the purpose for which it was sold, and/or is not adequately packaged and labeled, and did not

13  reasonably conform to the promises or affirmations of fact made by MEDTRONIC.

14      112.    As a direct and proximate result of the acts and conduct of MEDTRONIC, Plaintiff has

15  been injured in his health, strength and activity, and has suffered, continues to suffer and, on

16  information and belief, will suffer indefinitely into the future, severe, lasting and debilitating physical

17  and mental pain and suffering, some of which injuries may be permanent, all in an amount in excess of

18  the jurisdictional minimum of the Court.

19      113.    As a further direct and proximate result of the acts and conduct of the MEDTRONIC

20  Defendants, Plaintiff has lost earnings and earning capacity, and will continue to incur such losses for

21  an indefinite period of time in the future, and some of which losses may be permanent, all in an amount

22  excess of the jurisdictional minimum of the Court.

23      114.    As a further direct and proximate result of the acts and conduct of the MEDTRONIC

24  Defendants, and each of them, Plaintiff has incurred medical, hospital and related expenses and, on

25  information and belief, will continue to incur such expenses in the future, all in an amount in excess of

26  the jurisdictional minimum of the Court.

27

28

21

COMPLAINT FOR DAMAGES

Exhibit _3_
Page 76

Case 2:14-cv-08303-JLS-VBK    Document 8-1    Filed 11/14/14    Page 81 of 232    Page
Case 8:12-cv-01788-JLS-MLG    Document 1    Filed 10/16/12    Page 32 of 121    Page ID #:32
ID #:81

**FIFTH CAUSE OF ACTION**

FRAUD

**(Against the Medtronic Defendants)**

115.    Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully set forth here and further alleges as follows:

116.    As a medical device company, MEDTRONIC had an affirmative continuing duty to warn the public and medical community regarding risks it knew, learned, or should have known about associated with its medical devices and pharmaceutical products.

117.    MEDTRONIC concealed adverse information and provided inaccurate or misleading information which was material to treating surgeons' treatment decisions, which misled surgeons and patients who were relying on those surgeons' professional judgment, including Plaintiff and his treating surgeon. This misleading information, along with omissions of material facts related to the Infuse Bone Graft Product's safety and effectiveness, caused health care providers, patients and the general public, including Plaintiff and his surgeon, to be misled about the Infuse Bone Graft Product's risks and benefits and deprived surgeons from making a proper risk/benefit assessment as to the use and off-label use of the Infuse Bone Graft Product.

118.    Through internal adverse event reports, MEDTRONIC knew that the off-label use of the Infuse Bone Graft Product was not effective and could lead to serious side effects, including but not limited to unwanted bone growth, inflammation, and other serious side effects. MEDTRONIC failed to take any measures whatsoever to alert surgeons or the public regarding these risks and instead continued to promote the off-label use of the Infuse Bone Graft Product as safe and effective.

119.    Plaintiff is informed and believes and based thereon alleges that, despite knowing that the off-label promotion of the Infuse Bone Graft Product was illegal, MEDTRONIC, through its sales representatives and Key Opinion Leaders, promoted the off-label use of the Infuse Bone Graft Product to Dr. Wang and the staff and physicians at UCLA and concealed that the off-label use of the Infuse Bone Graft Product could result in unwanted bone growth and other serious side effects.

22

Exhibit _3_
Page 77

120. Plaintiff is informed and believes and based thereon alleges that, when the above representations and/or omissions were made by MEDTRONIC, it knew those representations and/or omissions to be false, or willfully and wantonly and recklessly disregarded whether the representations and/or omissions were true. These representations and/or omissions were made by MEDTRONIC with the intent of defrauding and deceiving the public and the medical community and with the intent of inducing surgeons and hospitals (including Dr. Wang and UCLA) to use and recommend the off-label use of the Infuse Bone Graft Product.

121. Plaintiff is informed and believes and based thereon alleges that, at the time the aforesaid representations and/or omissions were made by MEDTRONIC, Plaintiff and his medical providers were unaware of the falsity of said representations and/or omissions and reasonably relied upon MEDTRONIC's assertions, promulgated through aggressive sales tactics as set forth herein, that the off-label use of the Infuse Bone Graft Product was safe and effective when, in fact, it was neither.

122. Plaintiff is informed and believes and based thereon alleges that, in addition to violating Defendants' common law duty to Plaintiff, Defendants' same fraudulent acts also violated FDA regulations governing off-label use, as outlined above in paragraph 19. *See* USC §§ 331, 351.

123. Plaintiff is informed and believes and based thereon alleges that, in direct and indirect reliance upon said representations and/or omissions, Dr. Wang used the Infuse Bone Graft Product in an off-label procedure. Had Dr. Wang been made aware of the inefficacy and serious risks associated with such use, he would not have used it.

124. Had Plaintiff known of the actual dangers of and inefficacy of the off-label use of the Infuse Bone Graft Product, he would not have consented to its use in his surgery.

125. Plaintiff is informed and believes and based thereon alleges that MEDTRONIC's motive in failing to advise surgeons and the medical community of these risks and inefficacies was financial gain as well as fear that, if it provided proper and adequate information, the Infuse Bone Graft Product would lose sales and market share.

126. Plaintiff is informed and believes and based thereon alleges that, at all times herein mentioned, the actions of MEDTRONIC, its agents, servants, and/or employees was wanton, grossly

23

COMPLAINT FOR DAMAGES

Exhibit _3
Page 78

1    negligent, and reckless and demonstrated a complete disregard and reckless indifference to the safety

2    and welfare of Plaintiff in particular and to the public generally in that MEDTRONIC did willfully and

3    knowingly promote the off-label use of the Infuse Bone Graft Product with the specific knowledge that

4    it would be used by surgeons without adequate instructions and without adequate knowledge regarding

5    its efficacy, risks and side effects.

6         127.    Plaintiff is informed and believes and based thereon alleges that, at all times relevant

7    herein, MEDTRONIC's conduct was malicious, fraudulent, and oppressive toward Plaintiff in

8    particular and the public generally, and MEDTRONIC conducted itself in a willful, wanton, and

9    reckless manner.  Despite its specific knowledge regarding risks as set forth above, MEDTRONIC

10   deliberately recommended the off-label use of the Infuse Bone Graft Product and promoted it as being

11   safe and effective.

12   

### SIXTH CAUSE OF ACTION

13   

### FRAUD

14   (Against Does 41-60 – Physicians/Surgeons)

15        128.    Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully

16   set forth here and further alleges as follows:

17        129.    Dr. Wang never informed Plaintiff that:

18       a.    He would be using the Infuse Bone Graft Product;

19       b.    The Infuse Bone Graft Product had  received only limited FDA approval for certain

20           specific procedures, and its use in Plaintiff's procedure was off-label.

21       c.    Such an off-label use of the Infuse Bone Graft Product could result in unwanted

22           bone growth and migration of the bone to sensitive nerve areas exacerbating

23           Plaintiff's pain;

24       d.    Use of the Infuse Bone Graft Product could cause severe, debilitating, permanent

25           neck and back pain; and

26       e.    Alternative methods of surgery were available.

27

28

24

COMPLAINT FOR DAMAGES

Exhibit_3
Page 79

130.    Having failed to inform Plaintiff of these facts and risks, Dr. Wang never actually obtained Plaintiff's informed consent to perform the procedures that he performed. Had Plaintiff known the facts regarding the Infuse Bone Graft Product available to Dr. Wang at the time of the surgery, Plaintiff would not have elected to proceed in that manner.

131.    To cover up his own negligent actions, Dr. Wang fraudulently falsified Plaintiff's medical records, which became available to Plaintiff indirectly no earlier than September 29, 2010, by constructive receipt of his agent, and was only viewed by Mr. Lew personally in May 2012. Dr. Wang's negligent actions and fraud prevented Plaintiff from discovering the facts in this Complaint that give rise to Plaintiff's causes of action.

132.    The information Dr. Wang provided to Plaintiff was false, in that he failed to disclose to Plaintiff that he was using the Infuse Bone Graft Product and that he would be engaging in an off-label procedure using the Infuse Bone Graft Product. To cover up this fact, Dr. Wang knowingly falsified Plaintiff's medical records. Plaintiff is informed and believes and on that basis alleges that Dr. Wang and Does 41-60 deliberately withheld the use of the Infuse Bone Graft Product and his knowledge of the off-label manner in which he was using it.

133.    Plaintiff is informed and believes and on that basis alleges that Dr. Wang and Does 41-60 intended to induce Plaintiff's reliance on his misrepresentations. Plaintiff did rely on those misrepresentations in that but for the misrepresents of Dr. Wang and Does 41-60, Plaintiff would not have undergone the continued treatment as recommended by Dr. Wang and Does 41-60. Plaintiff's reliance on the misrepresentations of Dr. Wang and Does 41-60 was justifiable because Plaintiff was entitled to rely on the healthcare provider's representations.

134.    Plaintiff discovered the facts constituting this cause of action no earlier than September 29, 2010, when he constructively received his medical records from the May 11, 2009 surgery through his agent demonstrating Dr. Wang's failure to disclose to Plaintiff that he was using the Infuse Bone Graft Product and that he would be engaging in an off-label procedure using the Infuse Bone Graft Product, along with Dr. Wang's fraudulent misrepresentations and falsification of Plaintiff's medical records. Plaintiff did not, and could not in the exercise of reasonable diligence, have discovered the

COMPLAINT FOR DAMAGES

Exhibit _3__
Page 80

1    facts constituting this cause of action at any date earlier than September 29, 2010, due to Dr. Wang's

2    misrepresentations and falsification of medical records.  The statute of limitations applicable to this

3    cause of action, as set forth in Code of Civil Procedure section 340.5, should therefore be tolled as a

4    consequence of Dr. Wang's fraud. *See* Code Civ. Proc., § 340.5.

5        135.    As a direct and proximate result of the fraudulent misrepresentations of Dr. Wang and

6    Does 41-60, Plaintiff has been injured in his health, strength and activity, and has suffered, continues to

7    suffer and, on information and belief, will suffer indefinitely into the future, severe, lasting and

8    debilitating physical and mental pain and suffering, some of which injuries may be permanent, all in an

9    amount in excess of the jurisdictional minimum of the Court.

10       136.    As a further direct and proximate result of the fraudulent misrepresentations of Dr.

11   Wang and Does 41-60, Plaintiff has lost earnings and earning capacity, and will continue to incur such

12   losses for an indefinite period of time in the future, and some of which losses may be permanent, all in

13   an amount excess of the jurisdictional minimum of the Court.

14       137.    As a further direct and proximate result of the fraudulent misrepresentations of Dr.

15   Wang and Does 41-60, and each of them, Plaintiff has incurred medical, hospital and related expenses

16   and, on information and belief, will continue to incur such expenses in the future, all in an amount in

17   excess of the jurisdictional minimum of the Court.

18                            **SEVENTH CAUSE OF ACTION**

19          **NEGLIGENCE – DESIGN, MANUFACTURE, SALE AND WARNINGS**

20                          **(Against the Medtronic Defendants)**

21       138.    Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully

22   set forth here and further alleges as follows:

23       139.    At all times herein mentioned, MEDTRONIC, as well as its agents, sales

24   representatives, paid Key Opinion Leaders, servants and/or employees acting within the course and

25   scope of their employment, negligently, carelessly and recklessly researched, manufactured, sold,

26   advertised, promoted, labeled, analyzed, tested, distributed, and marketed the Infuse Bone Graft

27   Product in the United States.

28

26

COMPLAINT FOR DAMAGES

Exhibit _3_
Page 81

140. At all times herein mentioned, MEDTRONIC failed to perform adequate research, testing and analysis, where such testing would have revealed the propensity of the Infuse Bone Graft Product to cause serious and debilitating injury when used in an off-label manner.

141. Before Plaintiff was given the Infuse Bone Graft Product through a C4-C6 procedure, MEDTRONIC, based upon knowledge from sources including but not limited to the results from its market research and industry-sponsored trials, knew or should have known that such a use was dangerous and unsafe, and knew or should have known that such a use could result in migration, unwanted bone growth, inflammation, enhanced pain and other serious side effects.

142. Despite MEDTRONIC's actual knowledge, and despite sponsoring studies that showed that the Infuse Bone Graft Product caused serious and debilitating injuries when used in an off-label manner, MEDTRONIC negligently and carelessly engaged in the illegal off-label promotion of the Infuse Bone Graft Product by recommending to physicians, including Plaintiff's physicians, and instructing them to use it in procedures for which it had not been approved.

143. Despite MEDTRONIC's actual knowledge regarding the safety risks associated with off-label use of the Infuse Bone Graft Product, MEDTRONIC negligently, carelessly and recklessly represented that the off-label use of Infuse Bone Graft Product was safe when, in fact, it was unsafe.

144. At all times herein alleged, MEDTRONIC, in performing these acts and omissions, negligently, carelessly and recklessly failed to act as a reasonably prudent drug manufacturer would have under the same or similar circumstances.

145. These same acts and omissions, which violated MEDTRONIC's common law duty to Plaintiff, also violated applicable FDA regulations as alleged herein.

146. As a direct and proximate result of the acts and conduct of MEDTRONIC, Plaintiff has been injured in his health, strength and activity, and has suffered, continues to suffer, and, on information and belief, will suffer indefinitely into the future, severe, lasting and debilitating physical and mental pain and suffering, some of which injuries may be permanent, all in an amount in excess of the jurisdictional minimum of the Court.

COMPLAINT FOR DAMAGES

Exhibit 3
Page 82

147.    As a further direct and proximate result of the acts and conduct of the MEDTRONIC Defendants, Plaintiff has lost earnings and earning capacity, and will continue to incur such losses for an indefinite period of time in the future, and some of which losses may be permanent, all in an amount excess of the jurisdictional minimum of the Court.

148.    As a further direct and proximate result of the acts and conduct of the MEDTRONIC Defendants, and each of them, Plaintiff has incurred medical, hospital and related expenses and, on information and belief, will continue to incur such expenses in the future, all in an amount in excess of the jurisdictional minimum of the Court.

## EIGHTH CAUSE OF ACTION

## NEGLIGENCE – FAILURE TO RECALL/RETROFIT

### (Against the Medtronic Defendants)

149.    Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully set forth here and further alleges as follows:

150.    At all times herein mentioned, MEDTRONIC, as well as its agents, sales representatives, paid Key Opinion Leaders, servants and/or employees acting within the course and scope of their employment, negligently, carelessly and recklessly researched, manufactured, sold, advertised, promoted, labeled, analyzed, tested, distributed, and marketed the Infuse Bone Graft Product in the United States.

151.    Before Plaintiff was given the Infuse Bone Graft Product through a C4-C6 procedure, MEDTRONIC, based upon knowledge from sources including but not limited to the results from its market research and industry-sponsored trials, knew or should have known that such a use was dangerous and unsafe, and knew or should have known that such a use could result in migration, unwanted bone growth, inflammation, enhanced pain and other serious side effects.

152.    Despite MEDTRONIC's actual knowledge that the Infuse Bone Graft Product was being used for cervical spine procedures, and despite MEDTRONIC's actual knowledge that such uses were dangerous and unsafe, MEDTRONIC failed to recall, retrofit, or warn patients or physicians about the danger of the device when used in such a manner.

COMPLAINT FOR DAMAGES

Exhibit _3_
Page 83

153.    Based on the number and severity of complaints transmitted to MEDTRONIC, as well as the extensive safety data that it possessed, reasonable manufacturers and distributors under the same or similar circumstances would have recalled the Infuse Bone Graft Product well before the date of Plaintiff's surgery, thereby avoiding the harm that was caused to Plaintiff.

154.    MEDTRONIC's failures to recall and retrofit the Infuse Bone Graft Product, which violated MEDTRONIC's common law duty to Plaintiff, constituted the same acts and omissions that also violated applicable FDA regulations as alleged herein.

155.    As a direct and proximate result of the acts and conduct of MEDTRONIC, Plaintiff has been injured in his health, strength and activity, and has suffered, continues to suffer and, on information and belief, will suffer indefinitely into the future, severe, lasting and debilitating physical and mental pain and suffering, some of which injuries may be permanent, all in an amount in excess of the jurisdictional minimum of the Court.

156.    As a further direct and proximate result of the acts and conduct of the MEDTRONIC Defendants, Plaintiff has lost earnings and earning capacity, and will continue to incur such losses for an indefinite period of time in the future, and some of which losses may be permanent, all in an amount excess of the jurisdictional minimum of the Court.

157.    As a further direct and proximate result of the acts and conduct of the MEDTRONIC Defendants, and each of them, Plaintiff has incurred medical, hospital and related expenses and, on information and belief, will continue to incur such expenses in the future, all in an amount in excess of the jurisdictional minimum of the Court.

## NINTH CAUSE OF ACTION

### NEGLIGENCE -- FAILURE TO WARN

#### (Against the Medtronic Defendants)

158.    Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully set forth here and further alleges as follows:

159.    At all times herein mentioned, MEDTRONIC, as well as its agents, sales representatives, paid Key Opinion Leaders, servants and/or employees acting within the course and

29

COMPLAINT FOR DAMAGES

Exhibit 3
Page 84

Case 2:14-cv-08303-JLS-VBK    Document 8-1    Filed 11/14/14    Page 89 of 232  Page
Case 8:12-cv-01788-JLS-MLG   Document #:189  Filed 10/16/12   Page 40 of 121   Page ID #:40
ID #:89

1    scope of their employment, negligently, carelessly and recklessly researched, manufactured, sold,

2    advertised, promoted, labeled, analyzed, tested, distributed, and marketed the Infuse Bone Graft

3    Product in the United States.

4        160.    At all times herein alleged, and before Plaintiff was given the Infuse Bone Graft Product

5    through a C4-C6 procedure, MEDTRONIC, based upon the state of knowledge as it existed at the time,

6    knew or should have known that such a use was dangerous and unsafe, and knew or should have known

7    that such a use could result in migration, unwanted bone growth, inflammation, enhanced pain and

8    other serious side effects.

9        161.    At all times herein alleged, MEDTRONIC knew or reasonably should have known that

10   the users of the device, including Plaintiff and his physicians, would not realize the dangers presented

11   by the Infuse Bone Graft Product, particularly when used in an off-label manner in connection with

12   cervical spine procedures.

13       162.    Prior to, on, and after the date of Plaintiff's surgery, MEDTRONIC failed to adequately

14   warn of the dangers presented by the Infuse Bone Graft Product, and failed to provide users with

15   instructions regarding the safe use of the product.  Such failures to warn and instruct included, but were

16   not limited to:

17           a.      Negligently, carelessly and recklessly failing to disclose that usage of the Infuse

18                   Bone Graft Product in the C4-C6 procedures had not been approved by the FDA;

19           b.      Negligently, carelessly and recklessly failing to disclose to physicians that the

20                   promoted off-label use of the Infuse Bone Graft Product could result in serious

21                   side effects;

22           c.      Negligently, carelessly and recklessly failing to fully disclose the results of the

23                   testing and other information in its possession regarding the possible adverse

24                   reactions associated with the off-label use of the Infuse Bone Graft Product;

25           d.      Negligently, carelessly and recklessly failing to adequately warn the medical

26                   community, the general public, Plaintiff's surgeon and Plaintiff of the dangers,

27

28

COMPLAINT FOR DAMAGES

Exhibit _3_
Page 85

contra-indications, and side effects from the off-label use of the Infuse Bone Graft Product; and

    e.    Negligently, carelessly and recklessly failing to act as a reasonably prudent drug manufacturer would have under the same or similar circumstances.

163.    These same acts and omissions, which violated MEDTRONIC's common law duty to warn and instruct Plaintiff, also violated applicable FDA regulations as alleged herein.

164.    As a direct and proximate result of the acts and conduct of MEDTRONIC, Plaintiff has been injured in his health, strength and activity, and has suffered, continues to suffer and, on information and belief, will suffer indefinitely into the future, severe, lasting and debilitating physical and mental pain and suffering, some of which injuries may be permanent, all in an amount in excess of the jurisdictional minimum of the Court.

165.    As a further direct and proximate result of the acts and conduct of the MEDTRONIC Defendants, Plaintiff has lost earnings and earning capacity, and will continue to incur such losses for an indefinite period of time in the future, and some of which losses may be permanent, all in an amount excess of the jurisdictional minimum of the Court.

166.    As a further direct and proximate result of the acts and conduct of the MEDTRONIC Defendants, and each of them, Plaintiff has incurred medical, hospital and related expenses and, on information and belief, will continue to incur such expenses in the future, all in an amount in excess of the jurisdictional minimum of the Court.

## TENTH CAUSE OF ACTION

### NEGLIGENCE PER SE

#### (Against the Medtronic Defendants)

167.    Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully set forth here and further alleges as follows:

168.    MEDTRONIC violated applicable federal statutes and regulations relating to medical devices.

31

COMPLAINT FOR DAMAGES

Exhibit _3_
Page 86

169. MEDTRONIC'S violations of these federal statutes and regulations caused Plaintiff's injuries.

170. Plaintiff's injuries resulted from an occurrence the laws and regulations were designed to prevent.

171. Plaintiff was one of the class of persons whom these statutes and regulations were meant to protect.

172. MEDTRONIC'S violation of these statutes and regulations constitute negligence per se.

## ELEVENTH CAUSE OF ACTION

## NEGLIGENT CONCEALMENT

### (Against Does 41-60 – Physicians/Surgeons)

173. Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully set forth here and further alleges as follows:

174. At all times herein mentioned, Dr. Wang, as Plaintiff's surgeon, had a duty to Plaintiff to exercise reasonable care in transmitting to Plaintiff any and all relevant information concerning methods and materials to be utilized during Plaintiff's surgery and care.

175. At all times herein mentioned, Dr. Wang unreasonably failed to communicate to Plaintiff the information that Dr. Wang possessed concerning either his utilization of the Infuse Bone Graft Product during Plaintiff's surgery or the fact that such a use of the Infuse Bone Graft Product had not been approved by the FDA and thus was considered off-label and in violation of federal regulations.

176. Plaintiff discovered the above facts constituting this cause of action no earlier than September 29, 2010, when he constructively received his medical records from the May 11, 2009 surgery through his agent demonstrating the negligent acts and omissions of Dr. Wang and Does 41-60. Plaintiff did not, and could not in the exercise of reasonable diligence, have discovered the facts constituting this cause of action at any date earlier than September 29, 2010, due to Dr. Wang's concealment of details regarding the Infuse Bone Graft Product and its off-label use in Plaintiff's

32

COMPLAINT FOR DAMAGES

Exhibit _3_
Page 87

1   surgery. The statute of limitations applicable to this cause of action, as set forth in Code of Civil

2   Procedure section 340.5, should therefore be tolled. *See* Code Civ. Proc., § 340.5.

3        177.   As a direct and proximate result of the acts and omissions of Dr. Wang and Does 41-60,

4   Plaintiff has been injured in his health, strength and activity, and has suffered, continues to suffer and,

5   on information and belief, will suffer indefinitely into the future, severe, lasting and debilitating

6   physical and mental pain and suffering, some of which injuries may be permanent, all in an amount in

7   excess of the jurisdictional minimum of the Court.

8        178.   As a further direct and proximate result of the acts and omissions of Dr. Wang and Does

9   41-60, and each of them, Plaintiff has lost earnings and earning capacity, and will continue to incur

10  such losses for an indefinite period of time in the future, and some of which losses may be permanent,

11  all in an amount excess of the jurisdictional minimum of the Court.

12       179.   As a further direct and proximate result of the acts and omissions of Dr. Wang and Does

13  41-60, and each of them, Plaintiff has incurred medical, hospital and related expenses, and, on

14  information and belief, will continue to incur such expenses in the future, all in an amount in excess of

15  the jurisdictional minimum of the Court.

16                        **TWELTH CAUSE OF ACTION**

17                          **MEDICAL NEGLIGENCE**

18                  **(Against Does 41-60 – Physicians/Surgeons)**

19       180.   Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully

20  set forth here and further alleges as follows:

21       181.   At all times herein mentioned, defendants Does 41-60 were physicians and surgeons

22  licensed to practice medicine and perform surgery under the laws of the State of California, and were

23  engaged in the practice of medicine in California.

24       182.   At all times herein mentioned, Plaintiff visited defendants Does 41-60 in their offices

25  and employed them to diagnose and treat his "cervical stenosis and cervical myelopathy with herniated

26  disk at C4-C5 and C5-C6, and degenerative disk disease." Defendants Does 41-60 undertook to

27  diagnose Plaintiff's illness, handle and control the care and treatment of Plaintiff, monitor his health

28

                                33

Exhibit_3
Page 88

and condition and to seek whatever consultant advice was reasonably necessary for the treatment and monitoring of Plaintiff.

183.    In the aforementioned examinations, diagnoses, prescriptions of medicines and drugs, surgery and the handling and control of the care and treatment of Plaintiff by Defendants Does 41-60, and each of them, said Defendants, and each of them, negligently failed to posses or exercise that degree of knowledge of skill that would ordinarily be possessed and exercised by physicians and surgeons, hospitals, nurses, surgical technicians, attendants, medical clinics, physical therapists and the like, engaged in said professions in the same locality as Defendants, and each of them, in that said Defendants, and each of them, negligently and unlawfully failed to render proper care and treatment of Plaintiff.

184.    Plaintiff discovered the facts constituting this cause of action no earlier than September 29, 2010, when he constructively received his medical records from the May 11, 2009 surgery through an agent demonstrating the negligent acts and omissions of Dr. Wang and Does 41-60.  Plaintiff did not, and could not in the exercise of reasonable diligence, have discovered the facts constituting this cause of action at any date earlier than September 29, 2010, due to Dr. Wang's misrepresentations and falsification of medical records.  The statute of limitations applicable to this cause of action, as set forth in Code of Civil Procedure section 340.5, should therefore be tolled.  *See* Code Civ. Proc., § 340.5.

185.    As a direct and proximate result of the acts and omissions of defendants Does 41-60, and each of them, which includes, among other things, a negligently performed surgery on May 11, 2009, Plaintiff has been injured in his health, strength and activity, and has suffered, continues to suffer and, on information and belief, will suffer indefinitely into the future, severe, lasting and debilitating physical and mental pain and suffering, some of which injuries may be permanent, all in an amount in excess of the jurisdictional minimum of the Court.

186.    As a further direct and proximate result of the acts and omissions of defendants Does 41-60, and each of them, Plaintiff has lost earnings and earning capacity, and will continue to incur such losses for an indefinite period of time in the future, and some of which losses may be permanent, all in an amount excess of the jurisdictional minimum of the Court.

COMPLAINT FOR DAMAGES

Exhibit _3__
Page 89

187.   As a further direct and proximate result of the acts and omissions of defendants Does 41- 60, and each of them, Plaintiff has incurred medical, hospital and related expenses, and, on information and belief, will continue to incur such expenses in the future, all in an amount in excess of the jurisdictional minimum of the Court.

## THIRTEENTH CAUSE OF ACTION

## MEDICAL NEGLIGENCE

### (Against Does 61-80 – Hospital Staff)

188.   Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully set forth here and further alleges as follows:

189.   On or about May 2009, Plaintiff entered the hospital for the purpose of surgery on his neck.  At that time, defendant Does 61-80, and each of them, undertook to provide Plaintiff with such care and attendance as Plaintiff might require while he was a patient at the hospital.

190.   In the aforementioned examinations, diagnoses, prescriptions of medicines and drugs, surgery and the handling and control of the care and treatment of Plaintiff by Defendants Does 61-80, and each of them, said Defendants, and each of them, negligently failed to possess or exercise that degree of knowledge of skill that would ordinarily be possessed and exercised by physicians and surgeons, hospitals, nurses, surgical technicians, attendants, medical clinics, physical therapists and the like, engaged in said professions in the same locality as Defendants, and each of them, in that said Defendants, and each of them, negligently and unlawfully failed to render proper care and treatment of Plaintiff.

191.   Plaintiff discovered the facts constituting this cause of action no earlier than September 29, 2010, when he constructively received his medical records from the May 11, 2009 surgery through his agent demonstrating the negligent acts and omissions of Dr. Wang and Does 61-80.  Plaintiff did not, and could not in the exercise of reasonable diligence, have discovered the facts constituting this cause of action at any date earlier than September 29, 2010, due to Dr. Wang's misrepresentations and falsification of medical records.  The statute of limitations applicable to this cause of action, as set forth in Code of Civil Procedure section 340.5, should therefore be tolled.  *See* Code Civ. Proc., § 340.5.

COMPLAINT FOR DAMAGES

Exhibit_3
Page 90

Case 2:14-cv-08303-JLS-VBK    Document 8-1    Filed 11/14/14    Page 95 of 232    Page
Case 8:12-cv-01788-JLS-MLG   Document # 1-1  Filed 10/16/12   Page 46 of 121   Page ID #:46
ID #:46

192.   As a direct and proximate result of the acts and omissions of defendants Does 61-80, and each of them, which includes, among other things, a negligently performed surgery on May 11, 2009, Plaintiff has been injured in his health, strength and activity, and has suffered, continues to suffer and, on information and belief, will suffer indefinitely into the future, severe, lasting and debilitating physical and mental pain and suffering, some of which injuries may be permanent, all in an amount in excess of the jurisdictional minimum of the Court.

193.   As a further direct and proximate result of the acts and omissions of defendants Does 61-80, and each of them, Plaintiff has lost earnings and earning capacity, and will continue to incur such losses for an indefinite period of time in the future, and some of which losses may be permanent, all in an amount excess of the jurisdictional minimum of the Court.

194.   As a further direct and proximate result of the acts and omissions of defendant Does 61-80, and each of them, Plaintiff has incurred medical, hospital and related expenses, and, on information and belief, will continue to incur such expenses in the future, all in an amount in excess of the jurisdictional minimum of the Court.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against Defendants

1.   For general damages in a sum exceeding this Court's jurisdictional minimum;

2.   For specific damages according to proof;

3.   For economic and non-economic damages in a sum exceeding this Court's jurisdictional minimum;

4.   For punitive and exemplary damages according to proof;

5.   For prejudgment interest and post-judgment interest as allowed by law;

6.   For the costs of suit herein incurred; and

///
///
///

COMPLAINT FOR DAMAGES

Exhibit _3_
Page 91

7.    For such other and further relief as this Court may deem just and proper.

Dated: September 21, 2012          ROBINSON CALCAGNIE ROBINSON
                                   SHAPIRO DAVIS, INC.

                         By: _____

                                   MARK P. ROBINSON, JR.
                                   DANIEL S. ROBINSON
                                   WESLEY K. POLISCHUK
                                   Attorneys for Plaintiff


                         **DEMAND FOR JURY**

      Plaintiff hereby respectfully requests a jury trial as to all claims.


Dated: September 21, 2012          ROBINSON CALCAGNIE ROBINSON
                                   SHAPIRO DAVIS, INC.

                         By: _____

                                   MARK P. ROBINSON, JR.
                                   DANIEL S. ROBINSON
                                   WESLEY K. POLISCHUK
                                   Attorneys for Plaintiff

---

                              37

Exhibit _3_
Page 92

# EXHIBIT 4

Exhibit 4
Page 93

1    Michael K. Brown (SBN 104252)
     mkbrown@reedsmith.com
2    Lisa M. Baird (SBN 179958)
     lbaird@reedsmith.com
3    Mildred Segura (SBN 210850)
     msegura@reedsmith.com
4    REED SMITH LLP
     355 South Grand Avenue, Suite 2900
5    Los Angeles, CA 90071

6    Telephone: 213.457.8000
     Facsimile: 213.457.8080

7

8    Attorneys for Defendants
     Medtronic, Inc. and Medtronic Sofamor
     Danek USA, Inc.

9

10            UNITED STATES DISTRICT COURT

11            CENTRAL DISTRICT OF CALIFORNIA

12    JEROME LEW,            Case No. **SACV12 - 01788 JST (MLGx)**

13            Plaintiff,      [Removal from the Superior Court of
                              California, County of Orange, Case No.
14       vs.               30-2012-00599810-CU-PL-CXC]

15    MEDTRONIC, INC.; MEDTRONIC    **DEFENDANTS MEDTRONIC, INC.**
     SOFAMOR DANEK USA, INC.; and    **AND MEDTRONIC SOFAMOR**
16    DOES 1-100, inclusive,          **DANEK USA, INC.'S NOTICE OF**
                               **REMOVAL OF ACTION UNDER**
17            Defendants.    **28 U.S.C. §1441(B) (DIVERSITY)**

18                             [Filed concurrently with:
                            1. Civil Cover Sheet;
19                             2. Certification of Interested Parties;
                            3. Corporate Disclosure Statement;
20                             4. Demand for Jury Trial]

21

22

23

24

25

26

27

28

             Defendants Medtronic, Inc. and Medtronic Sofamor Danek USA, Inc.'s
                   Notice of Removal of Action Under 28 U.S.C. 1441(B)

Exhibit 4
Page 94

Case 2:14-cv-08303-JLS-VBK   Document 8-1   Filed 11/14/14   Page 99 of 232   Page
Case 8:12-cv-01788-JLS-MLG   Document 1  Filed 10/16/12   Page 2 of 121   Page ID #:2
ID #:148

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR**

**THE CENTRAL DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE THAT Defendants Medtronic Inc. ("Medtronic") and

Medtronic Sofamor Danek USA, Inc. ("MSD") (collectively, "Defendants") hereby

remove this action from the Superior Court of the State of California, County of

Orange, to the United States District Court for the Central District of California,

Southern Division.  Removal is based on 28 U.S.C. §§ 1332, 1441 and 1446.  In

support of this Notice of Removal, Defendants state as follows:

**I.     THE PROCEDURAL REQUIREMENTS FOR REMOVAL ARE**

**SATISFIED**

1.     On or about September 21, 2012, Plaintiff Jerome Lew commenced this

action in the Superior Court of the State of California for the County of Orange,

entitled *Lew v. Medtronic, Inc. et al.,* Case No. 30-2012-00599810-CU-PL-CXC.

2.     Plaintiff served a copy of the Complaint on Medtronic by having a

Sheriff hand deliver a copy to Medtronic in Minnesota on September 28, 2012.   CT

Corporation System was served for MSD on October 1, 2012.

3.     Under 28 U.S.C. § 1446(b), this Notice of Removal must be filed within

30 days of the service of the Complaint and summons.  Since Defendants are filing

this Notice on October 16, 2012, removal is timely.

4.     The time for Defendants to answer, move, or otherwise plead with

respect to the Complaint has not yet expired.

5.     No previous request has been made for the relief requested herein.

6.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 84(c)(3) and

1441(a), because the United States District Court for the Central District of California

is the federal judicial district embracing the Superior Court of California, County of

Orange where this action was originally filed.

7.     All properly joined and served Defendants (Medtronic and MSD) consent

to this removal as evidenced by the fact that they are the parties seeking removal.

- 1 -

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

8.      Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, orders, and all other papers served on Defendants (including Plaintiff's Complaint) are attached hereto as Exhibit A.

9.      Concurrent with the filing of this Notice, Defendants are serving this Notice on Plaintiff's counsel and filing a copy of the Notice with the Clerk of the Superior Court of California, County of Orange.

10.     By filing a Notice of Removal in this matter, Defendants do not waive their right to object to service of process, the sufficiency of process, jurisdiction over the person, or venue, and Defendants specifically reserve the right to assert any defenses and/or objections to which they may be entitled.

**II.     REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441**

11.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332. Diversity jurisdiction exists where (1) the suit is between citizens of different states, and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs. *Lee v. Am. Nat'l Ins. Co.*, 260, F.3d 997, 1004 (9th Cir. 2001). Thus, this action may be removed to this Court pursuant to 28 U.S.C. § 1441.

**A.      There Is Complete Diversity of Citizenship Between The Parties**

12.     There is complete diversity between Plaintiff and Defendants.

13.     Plaintiff Jerome Lew is a resident and citizen of the state of California. *Compl.* ¶ 50.

14.     As Plaintiff alleges (*Compl.* ¶ 51), Defendant Medtronic is a Minnesota corporation with its principal place of business at 710 Medtronic Parkway, Minneapolis, Minnesota 55432. Thus, Medtronic is a citizen of Minnesota. *See also Branson v. Medtronic, Inc.*, No. 5:06-cv-332-Oc-10GRJ, 2007 WL 170094, at *4 (M.D. Fla. Jan. 18, 2007) (denying plaintiff's motion to remand following removal by Medtronic on the ground that Medtronic's principal place of business is in Minnesota). *See* 28 U.S.C. § 1332(c)(1).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

15.    Plaintiff also alleges (*Compl.* ¶ 53) that Defendant MSD is a Tennessee corporation with its principal place of business at 1800 Pyramid Place, Memphis, Tennessee 38132. Thus, MSD is a citizen of Tennessee. *See* 28 U.S.C. § 1332(c)(1).

16.    Upon information and belief, none of the remaining DOE defendants have been substituted with any named defendants or been served with process in the state court action. For purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(a); *accord Soliman v. Phillip Morris Inc.*, 311 F.3d 966, 971 (9th Cir. 2002); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). Therefore, the citizenship of DOES 1 through 100 should be disregarded for purposes of diversity.[1]

**B.    The Amount In Controversy Requirement Is Satisfied**

17.    Defendants filed this Notice of Removal in good faith and on a reasonable basis in law and in fact that the requisite amount in controversy is being sought in this action. Where, as here, Plaintiff fails to allege a specific amount of damages in the complaint, the District Court must "examine the complaint to determine whether it is 'facially apparent' that the claims exceed the jurisdictional amount." *White v. FCI USA, Inc.*, 319 F.3d 672, 675 (5th Cir. 2003). When the plaintiff does not expressly seek damages in excess of the jurisdictional minimum, the defendant bears the burden of demonstrating that "it is more likely than not" that the

---

[1] While Plaintiff has alleged that he intends to later amend the Complaint to add Dr. Jeffrey C. Wang and various UCLA healthcare entities (*Compl.* ¶¶ 57, 58), they are not parties and are only identified in the Complaint as Doe defendants, which, as noted above, are not considered for purposes of diversity. *See Compl.* ¶¶ 128-137, 180-194. Further, even if Plaintiff does ultimately amend to add Dr. Wang and/or UCLA, all of Plaintiff's proposed claims against both defendants would be barred by the one-year statute of limitations for healthcare providers. Cal. Civ. Proc. Code § 340.5    Plaintiff affirmatively alleges in his Complaint that he became aware that his alleged injuries may have been caused by the use of the Infuse device on September 29, 2010, when he received his medical records from the May 11, 2009 surgery. *Compl.* ¶¶ 71, 176, 184, 191. He therefore admits he was on notice of his claims against Dr. Wang and UCLA in 2010, but did not file until September 2012, two years later. His claims are therefore time barred and otherwise subject to the fraudulent joinder doctrine.

- 3 -

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    plaintiffs' claims meet the federal amount-in-controversy requirement. *Matheson v.*
2    *Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003); *Gafford v. Gen.*
3    *Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993) (citation omitted), *overturned on other*
4    *grounds by Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010); *see also Williams v. Best*
5    *Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001) ("When the complaint does not claim a
6    specific amount of damages, removal from state court is proper if it is facially
7    apparent from the complaint that the amount in controversy exceeds the jurisdictional
8    requirement."). In determining whether the jurisdictional amount has been satisfied,
9    the amount in controversy "is not measured by the low end of an open-ended claim,
10   but rather by a reasonable reading of the value of the rights being litigated." *Kenneth*
11   *Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D.Cal.
12   2002) (citing *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir.1993)).

13       18.    Here, the allegations in Plaintiff's Complaint demonstrate that the
14   amount in controversy in this matter exceeds $75,000, exclusive of interest and costs.
15   The Complaint asserts that Plaintiff has "suffered grievous bodily injury" related to
16   the implantation of the Infuse Bone Graft device. *Compl.* ¶¶ 1, 4. The Complaint
17   further alleges that Plaintiff underwent an allegedly "off-label" cervical Infuse
18   surgery, which caused "the patient's throat to swell, difficulty swallowing, and can
19   potentially cause decreased oxygen to the brain, creating a life threatening condition."
20   *Id.* ¶ 2. Specifically, Plaintiff alleges that "shortly after his May 2009 surgery,
21   Plaintiff began to experience numbness and pain in both hands, dysphagia, neck pain,
22   fatigue and residual hoarseness [and that] Plaintiff presented to Dr. Wang and other
23   physicians for multiple post-surgical follow-ups." *Id.* ¶ 68. According to Plaintiff, a
24   series of imaging studies showed "evidence of bony fusion present around the
25   corpectomy cage" and "bone growth compressing the cord significantly, which along
26   with pressure from the posterior aspect was pinching the cord. This was deemed to be
27   causing a significant spinal cord compression." *Id.* ¶ 70. As a result, Plaintiff alleges
28   he "suffered injuries and harm, and economic loss, and Plaintiff will continue to suffer

- 4 -
Defendants Medtronic, Inc. and Medtronic Sofamor Danek USA, Inc.'s
Notice of Removal of Action Under 28 U.S.C. 1441(B)

Exhibit 4
Page 98

1  injuries, harm, damages and economic loss. Plaintiff's damages include, but are not

2  limited to, medical and hospital expenses, physical and mental pain and suffering, and

3  lost wages." *See, e.g., id.* ¶¶ 84, 106. The Complaint therefore seeks general and

4  special damages, economic and non –economic damages, and punitive damages. *See*

5  Prayer for Relief ¶¶ 1-4.

6      19.    Plaintiff's allegations of injury are similar to others that have been found

7  to satisfy the amount in controversy requirement. For example, in *Gebbia v. Wal-*

8  *Mart Stores,* 233 F.3d 880, 881 (5th Cir. 2000), the Fifth Circuit found that alleged

9  damages in a slip and fall case for "medical expenses, physical pain and suffering,

10  mental anguish and suffering, loss of enjoyment of life, loss of wages and earning

11  capacity, and permanent disability and disfigurement" satisfied the jurisdictional

12  amount. *See also Luckett v. Delta Airlines, Inc.,* 171 F.3d 295, 298 (5th Cir. 1999)

13  (finding that alleged damages to property, travel expenses, emergency ambulance trip,

14  6-day hospitalization, pain and suffering, humiliation, and an inability to do

15  housework satisfied the jurisdictional amount); *Mendoza v. American Airlines, Inc.,*

16  Case No. 10-7617 RSWL , 2010 WL 5376375, 3 (C.D. Cal. Dec. 22, 2010)

17  (allegations of loss of income, lost benefits and the ongoing emotional and mental

18  distress, punitive damages and attorney's fees sufficient to establish amount in

19  controversy). It is also well established that punitive damages are included in

20  determining the amount in controversy. *Gibson v. Chrysler Corp.,* 261 F.3d 927, 946

21  (9th Cir. 2001) (citation omitted); *Hayes v. Equitable Energy Resources Co.,* 266 F.3d

22  560, 572 (6th Cir. 2001) (citation omitted). Thus, the jurisdictional amount-in-

23  controversy requirement under § 1332(a) is satisfied.

24      20.    For the foregoing reasons, this Court has jurisdiction over this action

25  pursuant to 28 U.S.C. § 1332, and this action is properly removed pursuant to 28

26  U.S.C. §§ 1441 and 1446.

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1     21.   **WHEREFORE,** Defendants pray that this action be removed from the

2  Superior Court of the State of California for the County of Orange to the United States

3  District Court for the Central District of California, Southern Division.

4  Dated: October 16, 2012         REED SMITH LLP

5

6                          By

7                             Michael K. Brown

8                             Lisa M. Baird

                               Mildred Segura

                               Attorneys for Defendants

9                             Medtronic, Inc. and Medtronic Sofamor

                             Danek USA, Inc.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

- 6 -

# EXHIBIT 5

Exhibit _5_
Page 101

<u>TOLLING AGREEMENT</u>

<u>RECITALS</u>

1.      Jerome Lew ("Claimant"), date of birth [insert date of birth], social security number [insert], residing at [street address, city, state, zip code], contends that he/she sustained injuries and damages resulting from a [date] spinal fusion surgery performed by [surgeon's name] at the [hospital name] in [city, state], utilizing a Medtronic product known as Infuse®.

2.      Medtronic Sofamor Danek USA, Inc. ("Medtronic") is a corporation incorporated in the State of Tennessee.

3.      Claimant is represented by Daniel S. Robinson, Esq. of the law firm of Robinson Calcagnie Robinson Shapiro Davis, Inc. in Newport Beach, California.

4.      Medtronic is represented by Michael K. Brown, Esq. of the law firm of Reed Smith LLP located in Los Angeles, California.

5.      Claimant, by and through his/her attorney, has filed a product liability Complaint against Medtronic arising out of the above referenced surgery.  The Complaint was filed in the Superior Court of the State of California for the County of Orange, Case No. 30-2012-00599810-CU-PL-CXC, on September 21, 2012, and subsequently removed by Medtronic to the United States District Court for the Central District of California, Southern Division, on October 16, 2012.

<u>AGREEMENT</u>

6.      It is agreed that Claimant will voluntarily dismiss without prejudice the Complaint referenced in Paragraph 5 in exchange for Medtronic's agreement to toll or suspend the running of any and all statutes of limitations that may apply to the claims asserted in the Complaint as of September 21, 2012, the date the Complaint was originally filed (the "Tolling Period").

7.      Basic Medical Records Required – It is agreed that within ninety (90) days of the commencement of the Tolling Period, Claimant will provide complete medical records of the surgery in which Infuse® was first implanted into Claimant, complete medical records establishing and describing any injury alleged to have resulted from the surgery in which Infuse® was first implanted and medical records for all treatment up to the present.  All imaging studies should be provided as well.

8.      Upon receipt of Claimant's medical records, Medtronic's Counsel may notify Claimant's Counsel in writing that the documentation provided by the Claimant is incomplete. Thereupon, Claimant's Counsel shall have twenty (20) days to resubmit complete medical records, during which time the Agreement shall remain in effect as to the Claimant. Within twenty (20) days of the resubmission of the requested information, Medtronic's Counsel shall either 1) confirm in writing to Claimant's Counsel that the documentation is sufficient and the Agreement is still effective as to the Claimant, in which case the Effective date shall remain the September 21, 2012 filing date; 2) provide Claimant's counsel in writing with an additional

Exhibit _5_
Page 102

twenty (20) day extension to resubmit complete records, during which time the Agreement shall remain in effect as to the Claimant; or 3) notify Claimant's Counsel in writing that the Agreement is not effective as to the Claimant, at which time the Agreement shall terminate in twenty (20) days after the date of such notice, during which time Claimant may refile his Complaint in federal court.

9.    If Claimant files a lawsuit concerning a claim that was tolled by this Tolling Agreement, the Claimant shall file such lawsuit only in the federal district where he is domiciled or where he had Infuse® implanted during a surgery or directly into an MDL, if one has been formed.

10.    This Tolling Period shall run indefinitely, until either claimant or Medtronic end the agreement by notifying the other parties to this agreement on five (5) business days' notice of their desire to end the Tolling Agreement. Any party to this agreement may end the Tolling Agreement in this manner, and, if invoked, the Tolling Period shall end thirty (30) days after either party provides written notice of the same to the other parties to this agreement.

11.    This Tolling Agreement shall not revive existing claims, if any, that have expired under the applicable statutes of limitations prior to the commencement of the Tolling Period. As an example, if any applicable limitation period were to have expired prior to the effective date of this Tolling Agreement, then Medtronic's right and ability to assert the statute of limitations in defense of the claims is fully preserved.

12.    Entry into this Tolling Agreement shall not be construed as an admission or indication that Medtronic agrees that Claimant has a meritorious claim against Medtronic.

13.    The attorneys, by their execution of this agreement on behalf of their clients, do represent and verify that they are authorized to enter into this agreement on behalf of their respective clients.

10/26/12

Daniel S. Robinson
Robinson Calcagnie Robinson Shapiro Davis, Inc.
19 Corporate Plaza
Newport Beach, CA 92660
Tel: 949.720.1288
Fax: 949.720.1292
Email: drobinson@rcrlaw.net
Attorney for Claimant Jerome Lew

10/29/12

Michael K. Brown
Reed Smith LLP
355 South Grand Avenue, Suite 2900

Page 2 of 3

Exhibit 5
Page 103

Los Angeles, CA  90071
Tel: 213.457.8018
Fax: 213.457.8080
Email:  mkbrown@reedsmith.com
Attorney for Medtronic Sofamor Danek USA, Inc.

Effective Date of Tolling Agreement:
September 21, 2012

US_ACTIVE-110897668

Exhibit  5
Page 104

# EXHIBIT 6

Exhibit _6__
Page 105

JS-6

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEROME LEW, | Case No.: SACV12-01788 JST (MLGx) |
| Plaintiff, | **ORDER FOR DISMISSAL WITHOUT PREJUDICE** |
| vs. | |
| MEDTRONIC, INC.; MEDTRONIC SOFAMOR DANEK USA, INC.; and DOES 1 through 100, inclusive, | |
| Defendants. | |

Plaintiff Jerome Lew and Defendants Medtronic, Inc. and Medtronic Sofamor Danek USA, Inc., having jointly stipulated to the dismissal of the claims in this proceeding without prejudice, and the Court being duly advised thereof, it is hereby;

ORDERED AND ADJUDGED that all claims asserted in this action by Plaintiff in the above-entitled cause shall be dismissed without prejudice pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure, each party to bear their respective costs of litigation, attorneys' fees and expenses.

SO ORDERED THIS 6th day of November, 2012.

_Josephine Tucker_

Honorable Josephine Staton Tucker

1

**ORDER FOR DISMISSAL WITHOUT PREJUDICE**

Exhibit 6
Page 106

# EXHIBIT 7

Exhibit _7__
Page 107

1  MARK P. ROBINSON, JR. (SBN 054426)
   DANIEL S. ROBINSON (SBN 244245)
2  WESLEY K. POLISCHUK (SBN 254121)
   **ROBINSON CALCAGNIE ROBINSON**
3  **SHAPIRO DAVIS, INC.**
   19 Corporate Plaza Drive
4  Newport Beach, California 92660
   Telephone: (949) 720-1288
5  Facsimile: (949) 720-1292

6  Attorneys for Plaintiff,
   JEROME LEW

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9          COUNTY OF ORANGE – UNLIMITED JURISDICTION

10 JEROME LEW,                          Case No.:  30-2012-00619965-CU-PL-CJC

11         Plaintiff,                   **COMPLAINT FOR DAMAGES FOR:**

12     vs.                             1. **Fraud**
                                        2. **Negligent Concealment**
13 JEFFREY C. WANG, M.D.,               3. **Medical Malpractice**
   REGENTS OF THE UNIVERSITY OF
14 CALIFORNIA,                          Judge Kirk Nakamura
   UCLA DEPARTMENT OF ORTHOPAEDIC
15 SURGERY,                             **C-08**
   UCLA ORTHOPAEDIC SURGERY CLINIC,
16 UCLA HEALTH SYSTEM AUXILIARY,
   THE UCLA SPINE CENTER
17 and DOES 1 through 100, inclusive,

18         Defendants.

19

20         COMES NOW Plaintiff JEROME LEW, who alleges as follows:

21 I.    **INTRODUCTION**

22         1.    Plaintiff JEROME LEW, by and through his undersigned counsel, hereby institutes this

23 action against Defendants JEFFREY C. WANG, M.D. ("DR. WANG") and REGENTS OF THE

24 UNIVERSITY OF CALIFORNIA, UCLA DEPARTMENT OF ORTHOPAEDIC SURGERY, UCLA

25 ORTHOPAEDIC SURGERY CLINIC, UCLA HEALTH SYSTEM AUXILIARY, THE UCLA SPINE

26 CENTER (collectively referred to herein as "UCLA"), and DOES 1 through 100, inclusive,

27 (collectively referred to as the "Defendants") as a result of injuries suffered by Plaintiff JEROME

28

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**12/19/2012** at 01:05:24 PM

Clerk of the Superior Court
By Fidel Ibarra, Deputy Clerk

LEW.  This case involves the Defendants' care and treatment of Plaintiff JEROME LEW and their off-label use of the spinal stimulating bone graft known as the Infuse® Bone Graft.

2.      The medical device in question, the Infuse® Bone Graft, was promoted and sold to be used off-label to treat Plaintiff JEROME LEW.  Infuse® Bone Graft is approved and indicated for lumbar surgery that is performed through the abdomen.  It is not approved for use in cervical surgery.  When the medical device is used off-label, it often causes the patient's throat to swell and difficulty swallowing, and can potentially cause decreased oxygen to the brain, thereby creating a life-threatening condition, as it has in this case involving Plaintiff JEROME LEW.

3.      Because of Defendants' wrongful conduct, Plaintiff JEROME LEW underwent surgery without knowing the risks that he faced.

4.      As a result, Plaintiff JEROME LEW suffered grievous bodily injuries.

**A.    The Infuse® Bone Graft Device**

5.      The Infuse® Bone Graft device ("Infuse®") was designed and marketed for lumbar spine surgery by Medtronic, Inc.

6.      Infuse® is a bio bio-engineered bone filling material containing a bone morphogenetic protein ("BMP"), and is used as an alternative to grafting a patient's own bone, typically from the patient's hip.  The purpose of Infuse® is to accomplish the same clinical outcomes as grafting a patient's own bone into these locations but without the difficulties of grafting bone from the hip and other sites, since grafting sites typically have side effects such as pain and long recovery.

7.      It uses a genetically engineered protein – rhBMP – to help fuse vertebrae in the lower (lumbar) spine in order to treat degenerative disc disease.

8.      The device consists of three components split among two parts: (1) a metallic spinal fusion cage, and (2) the bone graft substitute, which consists of a genetically-engineered human protein (rhBMP-2) along with a sponge-like carrier or scaffold for the protein (manufactured from bovine collagen) that is placed inside the fusion cage.

Exhibit 7
Page 109

9.      The fusion cage component maintains the spacing and temporarily stabilizes the diseased region of the spine, while the Infuse® bone graft component is used to form bone which would permanently stabilize (fuse) this portion of the spine.

10.     During surgery, rhBMP-2 is soaked onto and binds with the absorbable collagen sponge that is designed to resorb, or disappear, over time.  As the sponge dissolves, the rhBMP-2 stimulates the cells to produce new bone.

**B.    Background on Bone Morphogenetic Proteins in the Infuse® Bone Graft**

11.     The active ingredient in the INFUSE® Bone Graft is rhBMP-2, a manufactured version of a protein already present in the body that promotes new bone growth.

12.     Certain BMPs have been studied for decades because of their ability to heal bone and eliminate the need for bone graft harvesting from other parts of the body.  Approximately 20 BMPs have been discovered, but only six appear capable of initiating bone growth.  Of these, rhBMP-2 has been studied more than any other BMP and is FDA approved for use only in the lower spine, tibia fractures, and dental surgeries.

13.     Naturally occurring BMP is found within the bone itself, but only in small amounts.  To provide clinically useful and reproducible amounts of isolated, human BMP, it must be manufactured in a special facility.

14.     Scientists isolated the gene for one protein (BMP-2) from bone tissue and used molecular biology techniques to create genetically engineered cells.  These cells then produce large quantities of rhBMP-2.  A similar process is used to manufacture other proteins, such as insulin.

**C.    The FDA Approval Process**

15.     Infuse® was approved by the Food and Drug Administration ("FDA") on July 2, 2002, for use only in the lower region of the spine (at levels L4 through S1) to treat degenerative disc disease, and was approved only for anterior surgeries at L4 through S1.  That meant that it was initially approved only to be used by surgeons, when the surgeons placed the cage within the vertebrae in the lumbar region of the back, and only by entrance through the abdomen.

3

16.    Infuse® is also used to fill space where bone is needed in order to place dental implants (for example, dental implants with an exposed head used to secure dental devices such as crowns, fixed bridges, or dentures.) In dental surgeries, Infuse® is used to make enough bone in the sinus area to place dental implants in the upper jaw.  Infuse® is also used to increase bone in extraction sites prior to implant placement.

17.    Infuse® was approved by the FDA on March 9, 2007, for dental use.

18.    In addition to use in lower spine fusion surgeries and dental surgeries, Infuse® has been approved for only one other use, that of repair of tibial fractures that have already been stabilized with intramedullary nail fixation after appropriate wound management.

19.    Infuse® has never been approved by the FDA for use in other parts of the body or for use in any other type of procedure, and any such uses are "off-label" uses.  The use of Infuse® for cervical spine fusion surgery has never been approved by the FDA, and the use of this product in the cervical spine is an off-label use.

**D.    Infuse® is a Very Profitable Part of Medtronic's Business**

20.    Infuse® has become a best seller for Medtronic.

21.    One market analyst has publicly estimated that the product's sales were approximately $815 million for the fiscal year ended in April, 2008.  Medtronic has been depending heavily on Infuse® since sales of many of its other products, such as cardiac defibrillators, have slowed because of the historic recalls.

**E.    The Off-Label Use of Infuse® in the Cervical Spine is Not Safe or Effective**

22.    Christopher B. Shields, chairman of neurological surgery at the University of Louisville, says it was apparent by late 2004 that using Infuse® in the neck area could cause serious problems.

23.    Susan Levine, a vice president at Hayes, Inc., which evaluates medical technologies for insurers, has reported that she has reviewed the research work on Infuse®, and finds it "really distressing to see something like this used in a potentially harmful way and without adequate evidence."  According to Ms. Levine, Infuse® can be "good for a patient" when used properly.

24.    Questions about off-label use cropped up before the product was approved. For example, in early 2002, one member of an FDA advisory committee reviewing Infuse® asked agency staff for recommendations on "guarding against off-label use of this product."

25.    A number of patients say they have been harmed in off-label uses of Infuse®, which is approved by the FDA only for use in a small section in the lower, or lumbar, region of the spine. At least 280 reports of adverse events involving Infuse® have been made to the FDA. Approximately 75% of those reports involve off-label use.

26.    On July 1, 2008, the FDA issued a Public Health Notification about complications from the off-label use of Infuse® in the neck, or cervical, area of the spine. The FDA reported that it had received 38 reports over a four year period through July 1, 2008, of complications from cervical uses of Infuse®; and, that some reports were of life-threatening and fatal events. Some of the complications were associated with swelling of the neck and throat tissue, which resulted in compression of the airway and/or neurological structures in the neck, and patients reported difficulty swallowing, breathing and speaking. Several patients required emergency treatment, including tracheotomies and the insertion of feeding tubes.

27.    The FDA noted that the anatomical proximity of the cervical spine to airway structures in the body has contributed to the seriousness of the events reported and the need for emergency medical intervention with the off-label use of Infuse® in the cervical spine.

28.    The July 1, 2008 FDA Safety Alert regarding Medtronic's Infuse product was intended to alert physicians to:

> "...reports of life-threatening complications associated with recombinant human Bone Morphogenetic Protein (rhBMP) when used in the cervical spine. **Note that the safety and effectiveness of rhBMP in the cervical spine have not been demonstrated and these products are not approved by FDA for this use.**"

1  *FDA Public Health Notification: Life-threatening Complications Associated with Recombinant Human*

2  *Bone Morphogenetic Protein in Cervical Spine Fusion*, issued July 1, 2008

3  (http://www.fda.gov/cdrh/safety/070108-rhbmp.html) (emphasis in original).

4        29.     Spine surgeons have also expressed concern about the use of rhBMP in the cervical

5  spine.  For example, at a recent spine conference in 2008, a group of North Carolina surgeons reported

6  on a study that found a complication rate of 59% in cervical spine surgeries with Infuse®, as compared

7  to a 21% complication rate using conventional fusion surgery, which involves bone grafts or collagen.

8  The study, conducted between July 2005 and December 2007, examined 76 patients.

9  **II.**    **THE PARTIES**

10        30.     Plaintiff JEROME LEW ("Plaintiff") is a 53-year-old male who is, and at all times

11  relevant hereto was, a resident of Orange County, California.

12        31.     Plaintiff is informed and believes and thereon alleges that at all times herein mentioned,

13  Defendants JEFFREY C. WANG, M.D. ("WANG") REGENTS OF THE UNIVERSITY OF

14  CALIFORNIA, UCLA DEPARTMENT OF ORTHOPAEDIC SURGERY, UCLA ORTHOPAEDIC

15  SURGERY CLINIC, UCLA HEALTH SYSTEM AUXILIARY, THE UCLA SPINE CENTER and

16  DOES 1 through 100, inclusive, and each of them, were and now are health maintenance organizations,

17  physicians, medical corporations, surgeons, nurses and technicians, office personnel, physical therapists

18  and paramedical professionals, licensed by the State of California to practice their specialty in said

19  state, with offices located within the County of Los Angeles, State of California, and each of them has

20  held him or herself out to the public, including Plaintiff JEROME LEW, to possess that degree of skill,

21  ability and learning common to practitioners in said community.

22        32.     Plaintiff is informed and believes and thereon alleges that at all time herein mentioned,

23  Defendants Does 41 through 60, inclusive, were and now are physicians and surgeons licensed to

24  practice medicine and perform surgery under the laws of the State of California, and were engaged in

25  the practice of medicine in California.

26        33.     Plaintiff is informed and believes and thereon alleges that at all time herein mentioned,

27  Defendants Does 61 through 80, inclusive, were and now are medical hospitals, medical clinics,

28

emergency and industrial medical facilities, licensed to provide hospital and medical facilities and services in the State of California, to which members of the public were and are invited, including Plaintiffs JEROME LEW.

34.    is informed and believes and thereon alleges that at all time herein mentioned, Defendants Does 81 through 100, inclusive, were and now are the staff, nurses, physicians, technicians, IRB members, agents, contractors and employees of a Hospital operating in the State of California, and who were acting within the course and scope of their authority as such agents and employees.

35.    At all times herein mentioned, defendants, and each of them, and their aggregates, corporates, associates, and partners, and each of them, were the agent, servant, employee, assignee, permissive user, successor in interest or joint venture of each other, and were acting within the time, purpose or scope of such agency or employment or permission; and all acts or omissions alleged herein of each such defendant were authorized, adopted, approved, or ratified by each of the other defendants.

III.    **PLAINTIFF JEROME LEW'S ALLEGATIONS**

36.    On or about March 31, 2009, Plaintiff consulted Dr. Jeffrey C. Wang and Does 1 through 100 of the UCLA Department of Orthopaedic Surgery and co-director of the UCLA Spine Center regarding a numbness and pain in both of his hands.  DR. WANG and Does 1 through 100 diagnosed Plaintiff with "cervical stenosis and cervical myelopathy with herniated disk at C4-C5 and C5-C6, and degenerative disk disease."

37.    On May 11, 2009, DR. WANG and Does 1 through 100 performed a surgical procedure known as an "anterior C5 vertebrectomy and corpectomy, and C4-C6 anterior interbody fusion." During this procedure, DR. WANG and Does 1 through 100 utilized the placement of an interbody cage device to the C5 corpectomy defect and used Infuse with local autogenous bone graft.  The bone growth material was inserted with the intention that it would stimulate bone growth over time in order to "fuse".

38.    The use of the Infuse Bone Graft Product in the procedure performed by DR. WANG and Does 1 through 100 had never been approved by the FDA and therefore was considered to be an off-label use.

39.    DR. WANG and Does 1 through 100 was well aware of the data and associated safety concerns surrounding the use of the Infuse Bone Graft Product for off-label procedures, particularly those involving the cervical spine.[1] Despite this knowledge, however, DR. WANG and Does 1 through 100 never informed Plaintiff that they would be using the Infuse Bone Graft product. They never informed Plaintiff that he would be engaging in an off-label procedure using the Infuse Bone Graft Product. They never informed Plaintiff that this product had only received limited FDA approval for certain specific procedures. They never informed Plaintiff that use of the Infuse Bone Graft Product could result in unwanted bone growth and migration of the bone to sensitive nerve areas exacerbating Plaintiff's pain. They never informed Plaintiff that use of the Infuse Bone Graft Product could cause severe, debilitating, permanent neck and back pain. They never informed Plaintiff of available alternative methods of surgery.

40.    Having failed to inform Plaintiff of these facts and risks, DR. WANG and Does 1 through 100 never actually obtained his informed consent to perform the procedures that they performed. Had Plaintiff known the facts regarding the Infuse Bone Graft Product available to DR. WANG at the time of the surgery, Plaintiff would have elected to not proceed in that manner.

41.    To cover up his own negligent actions, DR. WANG and Does 1 through 100 falsified Plaintiff's medical records, which was first discovered by Plaintiff in May 2012. In fact, DR. WANG and Does 1 through 100 did not submit billing codes to Plaintiff's insurance provider indicating the use of the Medtronic Infuse product – rather, DR. WANG and Does 1 through 100 submitted billing codes that a standard anterior cervical discectomy and fusion was performed using an autograft (whereby Plaintiff's own bone would have been harvested from the same area of incision). The negligent actions and fraud of DR. WANG and Does 1 through 100 prevented Plaintiff from discovering the facts in this Complaint that give rise to Plaintiff's causes of action.

---

[1] DR. WANG is on the Editorial Board for the Journal of Spinal Disorders & Techniques, whose Editor-in-Chief is Thomas A. Zdeblick, M.D. Over the past decade, Dr. Zdeblick has received millions of dollars in royalties from Medtronic for his involvement in the development of the Infuse device. DR. WANG has also submitted a patent application to the United States Patent and Trademark Office related to the binding and retention of bone morphogenic proteins ("BMPs").

Exhibit 7
Page 115

42.    After his May 2009 surgery, Plaintiff began to experience numbness and pain in both hands, dysphagia, neck pain, fatigue and residual hoarseness.  Plaintiff presented to DR. WANG and Does 1 through 100 for multiple post-surgical follow-ups.  Plaintiff was assured by DR. WANG and Does 1 through 100 that it was normal for him to have these symptoms following the surgery and that the surgery and fusion were successful.  Although DR. WANG knew that he used the Infuse Bone Graft Product on Plaintiff in an off-label manner, he continued to withhold this information and only prescribed additional physical therapy, thereby causing the bony fusion around the corpectomy cage to worsen.

43.    Despite his knowledge of the root cause of Plaintiff's continuing problems, DR. WANG and Does 1 through 100 never took any corrective steps, nor did they contact Medtronic to obtain updated warnings and indications of product usage regarding the Infuse Bone Graft Product.

44.    A subsequent CT scan in March 2011 showed evidence of bony fusion present around the corpectomy cage.  An X-ray in July 2012 revealed evidence of bone growth posteriorly from the cage entering into the canal.  A CT myelogram performed at the same time showed bone growth compressing the cord significantly, which along with pressure from the posterior aspect was pinching the cord.  This was deemed to be causing a significant spinal cord compression.

45.    As a result of the significant bony overgrowth caused by Defendants' actions, Plaintiff underwent a cervical laminectomy and bilateral neural foraminotomies on September 5, 2012.  Plaintiff has been informed that he will likely have to undergo additional procedures in the future.

46.    The first time Plaintiff discovered that his pain, dysphagia, fatigues and hoarseness may have been caused and exacerbated by Defendants' actions was in May 2012.  Prior to this point, Plaintiff had always been led to reasonably believe – by, among others, DR. WANG and Does 1 through 100 – that his ongoing and escalating symptoms were caused by his underlying medical condition and not by the off-label use of the Infuse Bone Graft Product.  As a result of such assurances, Plaintiff delayed seeking proper treatment, causing more damage from bone growth and a general worsening of Plaintiff's condition.

COMPLAINT FOR DAMAGES

Exhibit 7
Page 116

IV.    **PLAINTIFF'S CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**FRAUD**

**(Against All Defendants)**

47.    Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully set forth here and further alleges as follows.

48.    DR. WANG never informed Plaintiff that:

    a.    He would be using the Infuse Bone Graft Product;

    b.    The Infuse Bone Graft Product had received only limited FDA approval for certain specific procedures, and its use in Plaintiff's procedure was off-label.

    c.    Such an off-label use of the Infuse Bone Graft Product could result in unwanted bone growth and migration of the bone to sensitive nerve areas exacerbating Plaintiff's pain;

    d.    Use of the Infuse Bone Graft Product could cause severe, debilitating, permanent neck and back pain; and

    e.    Alternative methods of surgery were available.

49.    Having failed to inform Plaintiff of these facts and risks, DR. WANG never actually obtained Plaintiff's informed consent to perform the procedures that he performed.  Had Plaintiff known the facts regarding the Infuse Bone Graft Product available to DR. WANG at the time of the surgery, Plaintiff would not have elected to proceed in that manner.

50.    To cover up his own negligent actions, DR. WANG fraudulently falsified Plaintiff's medical records, which was discovered in May 2012.  DR. WANG'S negligent actions and fraud prevented Plaintiff from discovering the facts in this Complaint that give rise to Plaintiff's causes of action.

51.    The information DR. WANG provided to Plaintiff was false, in that he failed to disclose to Plaintiff that he was using the Infuse Bone Graft Product and that he would be engaging in an off-label procedure using the Infuse Bone Graft Product.  To cover up this fact, DR. WANG knowingly

1    falsified Plaintiff's medical records.  Plaintiff is informed and believes and on that basis alleges that

2    Defendants deliberately withheld the fact of his use of the Infuse Bone Graft Product and his

3    knowledge of the off-label manner in which he was using it.

4         52.     Plaintiff is informed and believes and on that basis alleges that Defendants intended to

5    induce Plaintiff's reliance on his misrepresentations.  Plaintiff did rely on those misrepresentations in

6    that but for the misrepresentations Defendants, Plaintiff would not have undergone the treatment, nor

7    the continued treatment as recommended by Defendants.  Plaintiff's reliance on the misrepresentations

8    of Defendants was justifiable because Plaintiff was entitled to rely on the healthcare providers'

9    representations.

10        53.     Plaintiff discovered the facts constituting this cause of action in May 2012.  Plaintiff did

11   not, and could not in the exercise of reasonable diligence, have discovered the facts constituting this

12   cause of action at any date earlier than May 2012 due to Defendants' misrepresentations and

13   falsification of medical records.  The statute of limitations applicable to this cause of action, as set forth

14   in Code of Civil Procedure section 340.5, should therefore be tolled as a consequence of Dr. Wang's

15   fraud.  *See* Code Civ. Proc., § 340.5.

16        54.     As a direct and proximate result of the fraudulent misrepresentations of Defendants,

17   Plaintiff has been injured in his health, strength and activity, and has suffered, continues to suffer and,

18   on information and belief, will suffer indefinitely into the future, severe, lasting and debilitating

19   physical and mental pain and suffering, some of which injuries may be permanent, all in an amount in

20   excess of the jurisdictional minimum of the Court.

21        55.     As a further direct and proximate result of the fraudulent misrepresentations of

22   Defendants, Plaintiff has lost earnings and earning capacity, and will continue to incur such losses for

23   an indefinite period of time in the future, and some of which losses may be permanent, all in an amount

24   excess of the jurisdictional minimum of the Court.

25        56.     As a further direct and proximate result of the fraudulent misrepresentations of

26   Defendants, and each of them, Plaintiff has incurred medical, hospital and related expenses and, on

27

28

1   information and belief, will continue to incur such expenses in the future, all in an amount in excess of

2   the jurisdictional minimum of the Court.

3                     **SECOND CAUSE OF ACTION**

4                     **NEGLIGENT CONCEALMENT**

5                     **(Against All Defendants)**

6       57.    Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully

7   set forth here and further alleges as follows.

8       58.    At all times herein mentioned, DR. WANG, as Plaintiff's surgeon, had a duty to Plaintiff

9   to exercise reasonable care in transmitting to Plaintiff any and all relevant information concerning

10   methods and materials to be utilized during Plaintiff's surgery and care.

11       59.    At all times herein mentioned, DR. WANG unreasonably failed to communicate to

12   Plaintiff the information that DR. WANG possessed concerning either his utilization of the Infuse Bone

13   Graft Product during Plaintiff's surgery or the fact that such a use of the Infuse Bone Graft Product had

14   not been approved by the FDA and thus was considered off-label and in violation of federal

15   regulations.

16       60.    Plaintiff discovered the above facts constituting this cause of action no earlier than May

17   2012. Plaintiff did not, and could not in the exercise of reasonable diligence, have discovered the facts

18   constituting this cause of action at any date earlier than May 2012 due to DR. WANG'S concealment of

19   details regarding the Infuse Bone Graft Product and its off-label use in Plaintiff's surgery. The statute

20   of limitations applicable to this cause of action, as set forth in Code of Civil Procedure section 340.5,

21   should therefore be tolled. *See* Code Civ. Proc., § 340.5.

22       61.    As a direct and proximate result of the acts and omissions of Defendants, Plaintiff has

23   been injured in his health, strength and activity, and has suffered, continues to suffer and, on

24   information and belief, will suffer indefinitely into the future, severe, lasting and debilitating physical

25   and mental pain and suffering, some of which injuries may be permanent, all in an amount in excess of

26   the jurisdictional minimum of the Court.

27

28

62.     As a further direct and proximate result of the acts and omissions of Defendants, and each of them, Plaintiff has lost earnings and earning capacity, and will continue to incur such losses for an indefinite period of time in the future, and some of which losses may be permanent, all in an amount excess of the jurisdictional minimum of the Court.

63.     As a further direct and proximate result of the acts and omissions of Defendants, and each of them, Plaintiff has incurred medical, hospital and related expenses, and, on information and belief, will continue to incur such expenses in the future, all in an amount in excess of the jurisdictional minimum of the Court.

## THIRD CAUSE OF ACTION

### MEDICAL NEGLIGENCE

### (Against DR. WANG and Does 41-60)

64.     Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully set forth here and further alleges as follows.

65.     At all times herein mentioned, DR. WANG and Does 41-60 were physicians and surgeons licensed to practice medicine and perform surgery under the laws of the State of California, and were engaged in the practice of medicine in California.

66.     At all times herein mentioned, Plaintiff visited DR. WANG and Does 41-60 in their offices and employed them to diagnose and treat his "cervical stenosis and cervical myelopathy with herniated disk at C4-C5 and C5-C6, and degenerative disk disease." DR. WANG and Does 41-60 undertook to diagnose Plaintiff's illness, handle and control the care and treatment of Plaintiff, monitor his health and condition and to seek whatever consultant advice was reasonably necessary for the treatment and monitoring of Plaintiff.

67.     In the aforementioned examinations, diagnoses, prescriptions of medicines and drugs, surgery and the handling and control of the care and treatment of Plaintiff by DR. WANG and Does 41-60, said Defendants negligently failed to posses or exercise that degree of knowledge of skill that would ordinarily be possessed and exercised by physicians and surgeons, hospitals, nurses, surgical technicians, attendants, medical clinics, physical therapists and the like, engaged in said professions in

1   the same locality as DR. WANG and Does 41-60, and each of them, in that said Defendants negligently

2   and unlawfully failed to render proper care and treatment of Plaintiff.

3         68.    Plaintiff discovered the facts constituting this cause of action no earlier than May 2012.

4   Plaintiff did not, and could not in the exercise of reasonable diligence, have discovered the facts

5   constituting this cause of action at any date earlier than May 2012 due to the misrepresentations and

6   falsification of medical records by DR. WANG and Does 41-60. The statute of limitations applicable

7   to this cause of action, as set forth in Code of Civil Procedure section 340.5, should therefore be tolled.

8   *See* Code Civ. Proc., § 340.5.

9         69.    As a direct and proximate result of the acts and omissions of DR. WANG and Does 41-

10   60, which includes, among other things, a negligently performed surgery on May 11, 2009, Plaintiff has

11   been injured in his health, strength and activity, and has suffered, continues to suffer and, on

12   information and belief, will suffer indefinitely into the future, severe, lasting and debilitating physical

13   and mental pain and suffering, some of which injuries may be permanent, all in an amount in excess of

14   the jurisdictional minimum of the Court.

15         70.    As a further direct and proximate result of the acts and omissions of DR. WANG and

16   Does 41-60, Plaintiff has lost earnings and earning capacity, and will continue to incur such losses for

17   an indefinite period of time in the future, and some of which losses may be permanent, all in an amount

18   excess of the jurisdictional minimum of the Court.

19         71.    As a further direct and proximate result of the acts and omissions of Dr. WANG Does

20   41-60, Plaintiff has incurred medical, hospital and related expenses, and, on information and belief, will

21   continue to incur such expenses in the future, all in an amount in excess of the jurisdictional minimum

22   of the Court.

23                          **FOURTH CAUSE OF ACTION**

24                           **MEDICAL NEGLIGENCE**

25                           **(Against UCLA)**

26         72.    Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully

27   set forth here and further alleges as follows.

28

14

73.    On or about May 2009, Plaintiff entered the hospital for the purpose of surgery on his neck. At that time, UCLA, and each of them, undertook to provide Plaintiff with such care and attendance as Plaintiff might require while he was a patient at the hospital.

74.    In the aforementioned examinations, diagnoses, prescriptions of medicines and drugs, surgery and the handling and control of the care and treatment of Plaintiff by UCLA, and each of them, said Defendants, and each of them, negligently failed to possess or exercise that degree of knowledge of skill that would ordinarily be possessed and exercised by physicians and surgeons, hospitals, nurses, surgical technicians, attendants, medical clinics, physical therapists and the like, engaged in said professions in the same locality as UCLA, and each of them, in that said Defendants, and each of them, negligently and unlawfully failed to render proper care and treatment of Plaintiff.

75.    Plaintiff discovered the facts constituting this cause of action no earlier than May 2012. Plaintiff did not, and could not in the exercise of reasonable diligence, have discovered the facts constituting this cause of action at any date earlier than May 2012 due to Dr. WANG'S misrepresentations and falsification of medical records. The statute of limitations applicable to this cause of action, as set forth in Code of Civil Procedure section 340.5, should therefore be tolled. *See* Code Civ. Proc., § 340.5.

76.    As a direct and proximate result of the acts and omissions of UCLA, and each of them, which includes, among other things, a negligently performed surgery on May 11, 2009, Plaintiff has been injured in his health, strength and activity, and has suffered, continues to suffer and, on information and belief, will suffer indefinitely into the future, severe, lasting and debilitating physical and mental pain and suffering, some of which injuries may be permanent, all in an amount in excess of the jurisdictional minimum of the Court.

77.    As a further direct and proximate result of the acts and omissions of UCLA, and each of them, Plaintiff has lost earnings and earning capacity, and will continue to incur such losses for an indefinite period of time in the future, and some of which losses may be permanent, all in an amount excess of the jurisdictional minimum of the Court.

COMPLAINT FOR DAMAGES

Exhibit 7
Page 122

78.    As a further direct and proximate result of the acts and omissions of defendant UCLA, and each of them, Plaintiff has incurred medical, hospital and related expenses, and, on information and belief, will continue to incur such expenses in the future, all in an amount in excess of the jurisdictional minimum of the Court.

**FIFTH CAUSE OF ACTION**

**MEDICAL NEGLIGENCE**

**(Against Does 61-100 – Healthcare Facilities and Staff)**

79.    Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully set forth here and further alleges as follows.

80.    At all times herein mentioned, Defendant Does 61-100 were the medical hospitals, medical clinics, emergency and industrial medical facilities, licensed to provide hospital and medical facilities and services in the State of California, the staff, nurses, physicians, technicians, IRB members, agents, contractors and employees of a Hospital operating in the State of California, and who were acting within the course and scope of their authority as such agents and employees.

81.    At all times herein mentioned, Plaintiff visited Does 61-100 in their offices and employed them to diagnose and treat his "cervical stenosis and cervical myelopathy with herniated disk at C4-C5 and C5-C6, and degenerative disk disease." Does 61-100 undertook to diagnose Plaintiff's illness, handle and control the care and treatment of Plaintiff, monitor his health and condition and to seek whatever consultant advice was reasonably necessary for the treatment and monitoring of Plaintiff.

82.    In the aforementioned examinations, diagnoses, prescriptions of medicines and drugs, surgery and the handling and control of the care and treatment of Plaintiff by Does 61-100, said Defendants negligently failed to posses or exercise that degree of knowledge of skill that would ordinarily be possessed and exercised by physicians and surgeons, hospitals, nurses, surgical technicians, attendants, medical clinics, physical therapists and the like, engaged in said professions in the same locality as Does 61-100, and each of them, in that said Defendants negligently and unlawfully failed to render proper care and treatment of Plaintiff.

83.    Plaintiff discovered the facts constituting this cause of action no earlier than May 2012. Plaintiff did not, and could not in the exercise of reasonable diligence, have discovered the facts constituting this cause of action at any date earlier than May 2012 due to the misrepresentations and falsification of medical records by the Defendants. The statute of limitations applicable to this cause of action, as set forth in Code of Civil Procedure section 340.5, should therefore be tolled. *See* Code Civ. Proc., § 340.5.

84.    As a direct and proximate result of the acts and omissions of Does 61-100, which includes, among other things, a negligently performed surgery on May 11, 2009, Plaintiff has been injured in his health, strength and activity, and has suffered, continues to suffer and, on information and belief, will suffer indefinitely into the future, severe, lasting and debilitating physical and mental pain and suffering, some of which injuries may be permanent, all in an amount in excess of the jurisdictional minimum of the Court.

85.    As a further direct and proximate result of the acts and omissions of Does 61-100, Plaintiff has lost earnings and earning capacity, and will continue to incur such losses for an indefinite period of time in the future, and some of which losses may be permanent, all in an amount excess of the jurisdictional minimum of the Court.

86.    As a further direct and proximate result of the acts and omissions of Does 61-100, Plaintiff has incurred medical, hospital and related expenses, and, on information and belief, will continue to incur such expenses in the future, all in an amount in excess of the jurisdictional minimum of the Court.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for judgment against Defendants

1.    For general damages in a sum exceeding this Court's jurisdictional minimum;

1.    For specific damages according to proof;

2.    For economic and non-economic damages in a sum exceeding this Court's jurisdictional minimum;

3.    For punitive and exemplary damages according to proof;

COMPLAINT FOR DAMAGES

Exhibit 7
Page 124

1      4.      For prejudgment interest and post-judgment interest as allowed by law;

2      5.      For the costs of suit herein incurred; and

3      6.      For such other and further relief as this Court may deem just and proper.

4

5   Dated: December 18, 2012        **ROBINSON CALCAGNIE ROBINSON SHAPIRO DAVIS, INC.**

6

7          By:     _____

8                 MARK P. ROBINSON, JR.
                DANIEL S. ROBINSON

9                 WESLEY K. POLISCHUK
                Attorneys for Plaintiff

10

11                    **<u>DEMAND FOR JURY</u>**

12     Plaintiff hereby respectfully requests a jury trial as to all claims.

13

14   Dated: December 18, 2012        **ROBINSON CALCAGNIE ROBINSON SHAPIRO DAVIS, INC.**

15

16          By:     _____

17                 MARK P. ROBINSON, JR.
                DANIEL S. ROBINSON

18                 WESLEY K. POLISCHUK
                Attorneys for Plaintiff

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES

Exhibit 7
Page 125

# EXHIBIT 8

Exhibit _8__
Page 126

1 | Brian L. Hoffman
Bar No.: 150824
2 | BONNE, BRIDGES, MUELLER, O'KEEFE & NICHOLS
3699 Wilshire Boulevard, 10th Floor
3 | Los Angeles, California 90010
(213) 480-1900
4 |
Attorneys for Defendants THE REGENTS
5 | OF THE UNIVERSITY OF CALIFORNIA,
and UCLA DEPARTMENT OF
6 | ORTHOPAEDIC SURGERY, a subsumed
entity of The Regents of the University of
7 | California

RECEIVED

MAR 18 2013

Robinson Calcagnie Robinson
Shapiro Davis, Inc.

8 |

9 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

10 | COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

11 |

12 | JEROME LEW,

CASE NO. 30-2012-00619965-CU-PL-CJC
[Hon. Kirk Nakamura, Dept. C-08]

13 |      Plaintiff,

14 |     vs.

**NOTICE OF ORDER OF TRANSFER OF VENUE**

15 | JEFFREY C. WANG, M.D., REGENTS OF THE UNIVERSITY OF
16 | CALIFORNIA, UCLA DEPARTMENT OF ORTHOPAEDIC SURGERY, UCLA
17 | ORTHOPAEDIC SURGERY CLINIC, UCLA HEALTH SYSTEM AUXILIARY,
18 | THE UCLA SPINE CENTER and DOES 1 through 100, inclusive,

Action Filed:    December 19, 2012
Trial Date:    None Set

19 |
20 |      Defendants.

21 |

22 | TO ALL PARTIES HEREIN AND THEIR RESPECTIVE COUNSEL OF RECORD:

23 |     PLEASE TAKE NOTICE that on March 8, 2013, Judge Kirk H. Nakamura ordered

24 | the above-captioned matter formally transferred from the Superior Court of the County of

25 | Orange to Los Angeles Superior Court, West District, Santa Monica Courthouse, at 7125

26 | Main Street, Santa Monica, CA 90401.

27 | ///

28 | ///

UCLAR-0522/838736.1

1

Exhibit 8
Page 127

1    A specific department has not been assigned.  The Stipulation and Order to Transfer

2  is attached hereto as Exhibit "A."

3  DATED:  March 15, 2013                    BONNE, BRIDGES, MUELLER,
                                             O'KEEFE & NICHOLS
4                                            Professional Corporation

5

6                                      By _____

7                                         Brian L. Hoffman
                                          Attorneys for Defendants THE REGENTS OF
8                                         THE UNIVERSITY OF CALIFORNIA, and
                                          UCLA DEPARTMENT OF ORTHOPAEDIC
9                                         SURGERY, a subsumed entity of The Regents
                                          of the University of California

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UCLAR-0522/838736.1

2

NOTICE OF TRANSFER OF VENUE

Exhibit 8
Page 128

# EXHIBIT A

Exhibit _8_
Page 129

1 | Brian L. Hoffman
Bar No.: 150824
2 | Amber L. Roller
Bar No.: 273354
3 | BONNE, BRIDGES, MUELLER, O'KEEFE & NICHOLS
3699 Wilshire Boulevard, 10th Floor
4 | Los Angeles, California 90010
(213) 480-1900
5 |
6 | Attorneys for Defendants THE REGENTS
OF THE UNIVERSITY OF CALIFORNIA,
7 | and UCLA DEPARTMENT OF
ORTHOPAEDIC SURGERY, a subsumed
8 | entity of The Regents of the University of
California
9 |

**ELECTRONICALLY RECEIVED**
Superior Court of California,
County of Orange
**02/22/2013** at 12:09:12 PM
Clerk of the Superior Court
By Sonya Wilson, Deputy Clerk

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER
MAR - 8 2013
ALAN CARLSON, Clerk of the Court
BY M. CORREA

10 |            SUPERIOR COURT OF THE STATE OF CALIFORNIA

11 |            COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

13 | JEROME LEW,
14 |              Plaintiff,
15 |       vs.
16 | JEFFREY C. WANG, M.D., REGENTS
OF THE UNIVERSITY OF
17 | CALIFORNIA, UCLA DEPARTMENT
OF ORTHOPAEDIC SURGERY, UCLA
18 | ORTHOPAEDIC SURGERY CLINIC,
UCLA HEALTH SYSTEM AUXILIARY,
19 | THE UCLA SPINE CENTER and DOES 1
through 100, inclusive,
20 |              Defendants.

CASE NO. 30-2012-00619965-CU-PL-CJC
[Hon. Kirk Nakamura, Dept. C-08]

STIPULATION AND [PROPOSED] ORDER TO TRANSFER VENUE

Action Filed:   December 19, 2012
Trial Date:     None Set

23 |       TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

24 |       PLEASE TAKE NOTICE OF THE FOLLOWING:

25 |       1.     On December 19, 2012, plaintiff, JEROME LEW, filed a Complaint in the

26 | Orange County Superior Court alleging Fraud, Negligent Concealment, and Medical

27 | Malpractice against defendants, JEFFREY C. WANG, M.D., REGENTS OF THE

28 | UNIVERSITY OF CALIFORNIA, UCLA DEPARTMENT OF ORTHOPAEDIC

UCLAR-0522/823994.1                      1
STIPULATION AND [PROPOSED] ORDER TO TRANSFER VENUE

Exhibit 8
Page 130

1   SURGERY, UCLA ORTHOPAEDIC SURGERY CLINIC, UCLA HEALTH SYSTEM

2   AUXILIARY, and THE UCLA SPINE CENTERS, based upon the care and treatment

3   provided to plaintiff while he was a patient at UCLA-Santa Monica Medical Center on or

4   about May 11, 2009.

5       2.      All alleged injurious conduct took place in Santa Monica, California, in the

6   County of Los Angeles.

7       3.      Plaintiff hereby stipulates and agrees, in accordance with Code of Civil

8   Procedure 395, subdivision (a), which states that the proper venue for personal injury

9   actions is the county in which the alleged injury occurred, that this matter should be

10  venued in the Los Angeles Superior Court.

11      4.      As such, plaintiff hereby stipulates to the transfer of this matter from the

12  Orange County Superior Court to the Los Angeles Superior Court.

13

14  DATED: ∂/²⁰/ , 2013          ROBINSON CALCAGNIE ROBINSON
                                    SHAPIRO DAVIS, INC.
15

16

17  By _____

18                                  Mark P. Robinson, Jr.
                                    Daniel S. Robinson
                                    Wesley K. Polischuk
19                                  Attorneys for Plaintiff JEROME LEW

20

21

22

23

24

25

26

27

28

1   DATED: February 21, 2013              BONNE, BRIDGES, MUELLER,
                                          O'KEEFE & NICHOLS
2                                         Professional Corporation

3

4                                  By  _____
5                                          Brian L. Hoffman
                                          Amber L. Roller
6                                          Attorneys for Defendants THE REGENTS OF
                                          THE UNIVERSITY OF CALIFORNIA, and
7                                          UCLA DEPARTMENT OF ORTHOPAEDIC
                                          SURGERY, a subsumed entity of The Regents
8                                          of the University of California

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## ORDER

2      IT IS HEREBY SO ORDERED, in accordance with Code of Civil Procedure

3 Section 395, subdivision (a), which states that the proper venue for personal injury actions

4 is the county in which the alleged injury occurred, that this matter is TRANSFERRED to

5 Los Angeles Superior Court, as plaintiff's alleged injury occurred in Los Angeles County,

6 in the State of California.  *WEST DISTRICT, SANTA MONICA COURT HOUSE 1725 MAIN STREET, SANTA MONICA, CA 90401*

7      As such, defendants' Motion to Transfer Venue, scheduled to be heard on

8 March 14, 2013 is hereby off calendar.

9

10 DATED: February ___ *3/8*, 2013

11

12

13                              Judge of the Superior Court

14                              **KIRK H. NAKAMURA**

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UCLAR-0522/823994.1

4

STIPULATION AND [PROPOSED] ORDER TO TRANSFER VENUE

Exhibit 8
Page 133

1

# PROOF OF SERVICE

2 STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3    At the time of service, I was over 18 years of age and **not a party to this action.** I
am employed in the County of Los Angeles, State of California. My business address is
4 3699 Wilshire Boulevard, 10th Floor, Los Angeles, CA 90010.

5    On February 22, 2013, I served true copies of the following document(s) described
as **STIPULATION AND [PROPOSED] ORDER TO TRANSFER VENUE** on the
6 interested parties in this action as follows:

7    Mark P. Robinson, Jr.
     Daniel S. Robinson
8    Wesley K. Polischuk
     Robinson Calcagnie Robinson Shapiro
9    Davis, Inc.
     19 Corporate Plaza Drive
10   Newport Beach, CA 92660
     (949) 720-1288
11   Fax (949) 720-1292

12   Attorneys for Plaintiff

13    **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed
to the persons at the addresses listed in the Service List and placed the envelope for
14 collection and mailing, following our ordinary business practices. I am readily familiar
with Bonne, Bridges, Mueller, O'Keefe & Nichols's practice for collecting and processing
15 correspondence for mailing. On the same day that the correspondence is placed for
collection and mailing, it is deposited in the ordinary course of business with the United
16 States Postal Service, in a sealed envelope with postage fully prepaid.

17    I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.
18

19    Executed on February 22, 2013, at Los Angeles, California.

20

21                                        Michelle Choe

22

23

24

25

26

27

28

UCLAR-0522/823994.1

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action.** I am employed in the County of Los Angeles, State of California. My business address is 3699 Wilshire Boulevard, 10th Floor, Los Angeles, CA 90010.

On March 15, 2013, I served true copies of the following document(s) described as **NOTICE OF ORDER OF TRANSFER OF VENUE** on the interested parties in this action as follows:

Mark P. Robinson, Jr.
Daniel S. Robinson
Wesley K. Polischuk
Robinson Calcagnie Robinson Shapiro
Davis, Inc.
19 Corporate Plaza Drive
Newport Beach, CA 92660
(949) 720-1288
Fax (949) 720-1292

Attorneys for Plaintiff

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Bonne, Bridges, Mueller, O'Keefe & Nichols's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 15, 2013, at Los Angeles, California.

Martha B. Hernandez

UCLAR-0522/838736.1

# EXHIBIT 9

Exhibit _9__
Page 136

MC–050

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| ROBERT F. VAAGE (SBN 106437)<br>LAW OFFICES OF ROBERT VAAGE<br>110 West C St., Suite 2300<br>San Diego, CA 92101<br>TELEPHONE NO.: (619) 338-0505      FAX NO. *(Optional):* (619) 338-0588<br>E-MAIL ADDRESS *(Optional):* rfvaage@vaagelaw.com<br>ATTORNEY FOR *(Name):* Plaintiff, JEROME LEW | **CONFORMED COPY**<br>**ORIGINAL FILED**<br>Superior Court of California<br>County of Los Angeles<br>**AUG 11 2014**<br>Sherri R. Carter, Executive Officer/Clerk<br>By **Darnetta Smith**, Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 1725 Main St.
MAILING ADDRESS: 1725 Main St.
CITY AND ZIP CODE: Santa Monica, CA 90401
BRANCH NAME: WEST DISTRICT

CASE NAME:
JEROME LEW v. JEFFREY C. WANG, M.D., et al.

| SUBSTITUTION OF ATTORNEY—CIVIL<br>(Without Court Order) | CASE NUMBER:<br>SC120518 |
|---|---|

THE COURT AND ALL PARTIES ARE NOTIFIED THAT *(name):* JEROME LEW      makes the following substitution:

1. Former legal representative  ☐ Party represented self  ☑ Attorney *(name):* DANIEL S. ROBINSON, et al.
2. New legal representative  ☐ Party is representing self*  ☑ Attorney
   a. Name: ROBERT F. VAAGE      b. State Bar No. *(if applicable):* 106437
   c. Address *(number, street, city, ZIP, and law firm name, if applicable):*
   LAW OFFICES OF ROBERT VAAGE, 110 West C St., Suite 2300, San Diego, CA 92101

   d. Telephone No. *(include area code):* (619) 338-0505
3. The party making this substitution is a  ☑ plaintiff  ☐ defendant  ☐ petitioner  ☐ respondent  ☐ other *(specify):*
   JEROME LEW

---

**\*NOTICE TO PARTIES APPLYING TO REPRESENT THEMSELVES**

- Guardian
- Conservator
- Trustee

- Personal Representative
- Probate fiduciary
- Corporation

- Guardian ad litem
- Unincorporated association

If you are applying as one of the parties on this list, you may NOT act as your own attorney in most cases. Use this form to substitute one attorney for another attorney. SEEK LEGAL ADVICE BEFORE APPLYING TO REPRESENT YOURSELF.

---

**NOTICE TO PARTIES WITHOUT ATTORNEYS**
A party representing himself or herself may wish to seek legal assistance. Failure to take timely and appropriate action in this case may result in serious legal consequences.

---

4. I consent to this substitution.
   Date: July 30, 2014
   JEROME LEW
   _____
   (TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY)

5. ☑ I consent to this substitution.
   Date: 8-1-14
   DANIEL S. ROBINSON
   _____
   (TYPE OR PRINT NAME)                    (SIGNATURE OF FORMER ATTORNEY)

6. ☑ I consent to this substitution.
   Date: July 30, 2014
   ROBERT F. VAAGE
   _____
   (TYPE OR PRINT NAME)                    (SIGNATURE OF NEW ATTORNEY)

(See reverse for proof of service by mail)                    Page 1 of 2

Form Adopted For Mandatory Use
Judicial Council of California
MC-050 [Rev. January 1, 2009]

**SUBSTITUTION OF ATTORNEY—CIVIL**
(Without Court Order)

Code of Civil Procedure, §§ 284(1), 285;
Cal. Rules of Court, rule 3.1362
www.courtinfo.ca.gov

Exhibit 9
Page 137

MC-050

| CASE NAME: | CASE NUMBER: |
|---|---|
| JEROME LEW v JEFFREY C. WANG, M.D., et al. | SC120518 |

### PROOF OF SERVICE BY MAIL
### Substitution of Attorney—Civil

**Instructions:** *After having all parties served by mail with the Substitution of Attorney—Civil, have the person who mailed the document complete this Proof of Service by Mail. An underlined copy of the Proof of Service by Mail should be completed and served with the document. Give the Substitution of Attorney—Civil and the completed Proof of Service by Mail to the clerk for filing. If you are representing yourself, someone else must mail these papers and sign the Proof of Service by Mail.*

1. I am over the age of 18 and **not a party to this cause.** I am a resident of or employed in the county where the mailing occurred. My residence or business address is *(specify):*

    110 West C Street, Suite 2300, San Diego, California, 92101

2. I served the Substitution of Attorney—Civil by enclosing a true copy in a sealed envelope addressed to each person whose name and address is shown below and depositing the envelope in the United States mail with the postage fully prepaid.

    (1) Date of mailing: 8/11/14        (2) Place of mailing *(city and state):*  San Diego, California

3. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

| Sheri L. Herring | /S/ |
|---|---|
| (TYPE OR PRINT NAME) | (SIGNATURE) |

### NAME AND ADDRESS OF EACH PERSON TO WHOM NOTICE WAS MAILED

4. a. Name of person served: David J. O'Keefe, Esq., Bonne, Bridges, Mueller, O'Keefe & Nichols
   b. Address *(number, street, city, and ZIP):*

    3699 Wilshire Blvd., 10th Floor, Los Angeles, California, 90010

   c. Name of person served:
   d. Address *(number, street, city, and ZIP):*

   e. Name of person served:
   f. Address *(number, street, city, and ZIP):*

   g. Name of person served:
   h. Address *(number, street, city, and ZIP):*

   i. Name of person served:
   j. Address *(number, street, city, and ZIP):*

   ☐ List of names and addresses continued in attachment.

| MC-050 [Rev. January 1, 2009] | SUBSTITUTION OF ATTORNEY—CIVIL (Without Court Order) | Page 2 of 2 |
|---|---|---|

Exhibit  9
Page 138

# EXHIBIT 10

Exhibit _10
Page 139

# ReedSmith

Reed Smith LLP
355 South Grand Avenue
Suite 2900
Los Angeles, CA 90071-1514
Tel +1 213 457 8000
Fax +1 213 457 8080
reedsmith.com

Michael K. Brown
Direct Phone: +1 213 457 8018
Email: mkbrown@reedsmith.com

September 19, 2014

**VIA E-MAIL AND U.S. MAIL**

Elizabeth Texeira, Esq.
Law Offices of Robert Vaage
110 West C Street, Suite 2300
San Diego, CA 92101

**Re: Lew v. Medtronic**

Dear Elizabeth:

We are in receipt of your letter dated September 17, 2014 advising of your intent to re-file an action against Medtronic on behalf of Jerome Lew and requesting that we stipulate to the filing of such action in Los Angeles Superior Court. We cannot stipulate to your request for the reasons outlined below.

As you are aware, there is a binding and enforceable Tolling Agreement that was entered into by Mr. Lew and Medtronic on or about October 26, 2012. A copy of the Tolling Agreement is attached. Pursuant to the Tolling Agreement, the statute of limitations would be tolled on Mr. Lew's claims and he would dismiss his action against Medtronic, which was pending in the United States District Court for the Central District of California, without prejudice. The action was subsequently dismissed without prejudice on November 6, 2012.

Paragraph 9 of the Tolling Agreement also explicitly states:

> If Claimant files a lawsuit concerning a claim that was tolled by this Tolling Agreement, the Claimant shall file such lawsuit only in the federal district where he is domiciled or where he had Infuse® implanted during a surgery or directly into an MDL, if one has been formed.

Given this express language and the allegations in Mr. Lew's prior action against Medtronic that his Infuse surgery took place at UCLA, it is clear that any complaint you anticipate on filing must be filed in the Central District of California and pursued there.

Thus, should you seek to remand the case to state court as stated in your letter, you would be violating Rule 11 of the Federal Rules of Civil Procedure given Mr. Lew's express agreement to refile and maintain his action arising out of his Infuse surgery in federal court. In doing so, you also would be stripping Mr. Lew of any tolling of the statute of limitations on his claims, as provided for by the Tolling Agreement.

NEW YORK ♦ LONDON ♦ HONG KONG ♦ CHICAGO ♦ WASHINGTON, D.C. ♦ BEIJING ♦ PARIS ♦ LOS ANGELES ♦ SAN FRANCISCO ♦ PHILADELPHIA ♦ SHANGHAI ♦ PITTSBURGH ♦ HOUSTON
SINGAPORE ♦ MUNICH ♦ ABU DHABI ♦ PRINCETON ♦ NORTHERN VIRGINIA ♦ WILMINGTON ♦ SILICON VALLEY ♦ DUBAI ♦ CENTURY CITY ♦ RICHMOND ♦ ATHENS ♦ KAZAKHSTAN

Exhibit  10
Page 140

Elizabeth Texeira, Esq.
September 19, 2014
Page 2

**ReedSmith**

For the foregoing reasons, we cannot agree to your request and admonish you to carefully consider any attempt to violate the Tolling Agreement. If you wish to further discuss this issue, please contact me.

Sincerely,

Michael K. Brown

MKB:vb

Enclosures

US_ACTIVE-119233660

Exhibit  10
Page 141

# EXHIBIT 11

Exhibit 11
Page 142



September 22, 2014

*Via facsimile*
(213) 457-8080
and U.S. Mail

Michael K. Brown, Esq.
Reed Smith, LLP
355 S. Grand Ave., Suite 2900
Los Angeles, CA 90071-1514

    Re:    *Lew v. Medtronic*

Dear Michael,

My associate, Beth Teixeira, has directed your letter of September 19, 2014, to my
attention. After reading your letter, I have re-reviewed the Tolling Agreement. I
disagree with your interpretation of this Agreement.

Your letter suggests that in the Tolling Agreement, Mr. Lew gave his express agreement
to refile **and maintain** his action in federal court. In fact, the Tolling Agreement, at
Paragraph 9, says **only** that Mr. Lew shall file the lawsuit in federal district court. It says
nothing about agreeing to maintain the action in federal court, or waiving any right to
remand on jurisdictional grounds. Therefore, I see no violation of Rule 11 of the Federal
Rules of Civil Procedure by making a motion to remand.

Please consider this letter our notice of our desire to end the Tolling Agreement.

If you would like to discuss this further, please call. I would be happy to speak to you.

                    Sincerely yours,
                    LAW OFFICES OF ROBERT VAAGE

RFV:slh                    Robert F. Vaage

Robert F. Vaage, Attorney at Law
Elizabeth Teixeira, Attorney at Law
110 West C Street, Suite 2300, San Diego, California 92101-3910, Telephone 619-338-0505, Fax 619-338-0588
E-mail: rfvaage@vaagelaw.com  www.vaagelaw.com

Exhibit _11_
Page 143

MEMORY TRANSMISSION REPORT

|  |  |
|---|---|
| TIME | : 09-22-'14 12:37 |
| FAX NO.1 | : |
| NAME | : |

|  |  |  |
|---|---|---|
| FILE NO. | : | 919 |
| DATE | : | 09.22 12:35 |
| TO | : ☎12134578080 |
| DOCUMENT PAGES | : | 1 |
| START TIME | : | 09.22 12:35 |
| END TIME | : | 09.22 12:37 |
| PAGES SENT | : | 1 |
| STATUS | : | OK |

\*\*\*    SUCCESSFUL TX NOTICE    \*\*\*

ROBERT
VAAGE

September 22, 2014

*Via facsimile*
(213) 457-8080
and U.S. Mail

Michael K. Brown, Esq.
Reed Smith, LLP
355 S. Grand Ave., Suite 2900
Los Angeles, CA 90071-1514

Re:    *Lew v. Medtronic*

Dear Michael,

My associate, Beth Teixeira, has directed your letter of September 19, 2014, to my attention. After reading your letter, I have re-reviewed the Tolling Agreement. I disagree with your interpretation of this Agreement.

Your letter suggests that in the Tolling Agreement, Mr. Lew gave his express agreement to refile **and maintain** his action in federal court. In fact, the Tolling Agreement, at Paragraph 9, says only that Mr. Lew shall file the lawsuit in federal district court. It says nothing about agreeing to maintain the action in federal court, or waiving any right to remand on jurisdictional grounds. Therefore, I see no violation of Rule 11 of the Federal Rules of Civil Procedure by making a motion to remand.

Please consider this letter our notice of our desire to end the Tolling Agreement.

If you would like to discuss this further, please call. I would be happy to speak to you.

Sincerely yours,
LAW OFFICES OF ROBERT VAAGE

Robert F. Vaage

RFV:slh

Robert F. Vaage, Attorney at Law
Elizabeth Teixeira, Attorney at Law
110 West C Street, Suite 2300, San Diego, California 92101-3910, Telephone 619-338-0505, Fax 619-338-0588
E-mail: rfvaage@vaagelaw.com  www.vaagelaw.com

Exhibit _11_
Page 144

# EXHIBIT 12

Exhibit 12
Page 145

COPY

Robert F. Vaage, Esq. (SBN 106437)
Elizabeth H. Teixeira, Esq. (SBN 259788)
LAW OFFICES OF ROBERT VAAGE
110 West C Street, Suite 2300
San Diego, CA 92101-3910
Telephone:  (619) 338-0505
Facsimile:   (619) 338-0588
E-mail:  rfvaage@vaagelaw.com

Attorneys for Plaintiff JEROME LEW

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

OCT 0 1 2014

Sherri R. Carter, Executive Officer/Clerk
By: Ani Dastaryan, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF LOS ANGELES, WEST DISTRICT

| | |
|---|---|
| JEROME LEW,<br><br>Plaintiff,<br><br>v.<br><br>JEFFREY C. WANG, M.D., REGENTS OF THE UNIVERSITY OF CALIFORNIA, UCLA DEPARTMENT ORTHOPAEDIC SURGERY, UCLA ORTHOPAEDIC SURGERY CLINIC, UCLA HEALTH SYSTEM AUXILIARY, THE UCLA SPINE CENTER and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No: SC120518<br><br>STIPULATION AND ORDER ALLOWING PLAINTIFF TO FILE SECOND AMENDED COMPLAINT<br><br>BY FAX<br><br>Hon. Craig D. Karlan<br>Department N |

///
///
///
///
///
///
///
///
///

- 1 -
STIPULATION AND ORDER TO FILE THE SECOND AMENDED COMPLAINT

Exhibit 12
Page 146

1        IT IS HEREBY STIPULATED by and between the parties hereto, through their

2   respective counsel of record, that Plaintiff JEROME LEW may file the attached Second

3   Amended Complaint (Exhibit 1) in the above action.

4

5   DATED: Sept 23, 2014       LAW OFFICES OF ROBERT VAAGE

6

7                       By:

8                         ROBERT F. VAAGE
                            ELIZABETH H. TEIXEIRA

9                         Attorneys for Plaintiff Jerome Lew

10   DATED:_____     BONNE, BRIDGES, MUELER, O'KEEFE
                         & NICHOLS

11

12

13                       By:_____
                         DAVID J. O'KEEFE

14                         MITZIE L. DOBSON
                         JANNINE KRANZ

15                         Attorneys for Defendants
                         JEFFREY WANG, M.D. and THE

16                         REGENTS OF THE UNIVERSITY OF
                         CALIFORNIA

17

18

19

20

21                       **ORDER**

22       IT IS SO ORDERED.

23                       CRAIG D. KARLAN

24     DATED:___10-1-14___
                       Hon. Craig D. Karlan
                       Judge Presiding, Superior Court of California

25

26

27

28

STIPULATION AND ORDER TO FILE THE SECOND AMENDED COMPLAINT

Exhibit _12
Page 147

1    IT IS HEREBY STIPULATED by and between the parties hereto, through their

2    respective counsel of record, that Plaintiff JEROME LEW may file the attached Second

3    Amended Complaint (Exhibit 1) in the above action.

4

5    DATED: Sept 23, 2014          LAW OFFICES OF ROBERT VAAGE

6

7    By _____

8    ROBERT F. VAAGE
     ELIZABETH H. TEIXEIRA
     Attorneys for Plaintiff Jerome Lew

9

10   DATED: Sept 25, 2014          BONNE, BRIDGES, MUELER, O'KEEFE

11                                 & NICHOLS

12

13   By _____

14   DAVID J. O'KEEFE
     MITZIE L. DOBSON
     JANNINE KRANZ

15   Attorneys for Defendants
     JEFFREY WANG, M.D. and THE

16   REGENTS OF THE UNIVERSITY OF
     CALIFORNIA

17

18

19

20

21                               **ORDER**

22   IT IS SO ORDERED.

23

24   DATED: _____

     Hon. Craig D. Karlan
25   Judge Presiding, Superior Court of California

26

27

28

-2-

STIPULATION AND ORDER TO FILE THE SECOND AMENDED COMPLAINT

Exhibit_12
Page 148

# EXHIBIT 1

Exhibit  12
Page 149

Robert F. Vaage, Esq.  (SBN 106437)
LAW OFFICES OF ROBERT VAAGE
110 West C Street, Suite 2105
San Diego, CA  92101-3910
Telephone:  (619) 338-0505
Facsimile:  (619) 338-0588
E-mail:   rfvaage@vaagelaw.com

Attorneys for Plaintiff,
JEROME LEW

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES, WEST DISTRCIT

| JEROME LEW, | Case No.: SC120518 |
|---|---|
| Plaintiff, | [Hon. Craig D. Karlan, Dept. N] |
| vs. | **SECOND AMENDED COMPLAINT FOR DAMAGES FOR:** |
| JEFFREY C. WANG, M.D., REGENTS OF THE UNIVERSITY OF CALIFORNIA, and DOES 1 through 100, inclusive, | 1. **Medical Negligence** 2. **Lack of Informed Consent** 3. **Breach of Fiduciary Duty** 4. **Battery** |
| Defendants. | 5. **Negligence Per Se** 6. **Fraud by Concealment** 7. **Constructive Fraud** |

COMES NOW Plaintiff JEROME LEW, who alleges as follows:

## GENERAL ALLEGATIONS

1.      The damages upon which this action is based occurred in the City of Santa Monica, County of Los Angeles, State of California.

2.      At all times relevant herein, Plaintiff JEROME LEW ("MR. LEW") is and was a resident of Orange County, California.

3.      Plaintiff is informed and believes and thereon alleges that Defendant JEFFREY C. WANG, M.D. ("DR. WANG") is a resident of the County of Los Angeles, State of California, and is a physician duly licensed by the State of California to practice medicine and/or surgery in

1

Exhibit _12
Page 150

1  said state, under License No. 76303, and at all relevant times herein was rendering healthcare
2  services to Plaintiff MR. LEW.

3     4.    Plaintiff is informed and believes and thereon alleges that at all times herein
4  mentioned, Defendant REGENTS OF THE UNIVERSITY OF CALIFORNIA (hereinafter "THE
5  REGENTS"), is a corporation, incorporated in the State of California and licensed and doing
6  business in the County of Los Angeles, State of California, as UCLA Medical Center in Santa
7  Monica, California.

8     5.    Plaintiff is informed and believes and thereon alleges that at all relevant times
9  herein, DR. WANG was a managing agent, servant, and employee of THE REGENTS, and that
10 at the time of plaintiff's surgery, DR. WANG was the Co-Director of the UCLA Spine Center.

11    6.    Plaintiff is ignorant of the true names and capacities of defendants sued herein as
12 DOES 1 through 100, inclusive, and therefore sues these defendants by such fictitious names.
13 Plaintiff will amend his Complaint to allege their true names and capacities and causes of action
14 against said fictitiously named defendants when same have been ascertained. Plaintiff is informed
15 and believes and thereon alleges that each of the defendants designated herein as a "DOE" is
16 responsible in some manner and liable herein to Plaintiff JEROME LEW for his injuries.

17    7.    Plaintiff is informed and believes and thereon alleges that at all times herein
18 mentioned, Defendants, and each of them, and their aggregates, corporates, associates, and
19 partners, and each of them, were the agent, managing agent, officer, partner, servant, employee,
20 assignee, permissive user, successor in interest or joint venture of their co-defendants, and were
21 acting within the time, purpose or scope of such agency or employment or permission.

22    8.    Plaintiff is informed and believes and thereon alleges that and all acts or omissions
23 alleged herein of each Defendant were authorized, adopted, approved, consented to, and ratified
24 by each of the other Defendants, except where stated otherwise below.

25    9.    Each of these acts and failures to act is alleged against each defendant whether
26 acting individually, jointly, or severally.  Each of the defendants or their alter egos agreed and
27 conspired with others in the commission of these acts or failures to act.

28 ///

SECOND AMENDED COMPLAINT FOR DAMAGES

Exhibit_12
Page 151

## FACTUAL ALLEGATIONS

### A.   The Infuse® Bone Graft Device

10.   The Infuse® Bone Graft device ("Infuse®") was designed by Medtronic, Inc., for anterior approach lumbar spine surgery. Infuse® uses a genetically engineered protein, rhBMP-2, a manufactured version of a protein already present in the body that promotes bone growth, to help fuse vertebrae in the lower (lumbar) spine in order to treat degenerative disc disease.

11.   Plaintiff is informed and believes that bone morphogenic protein ("BMP"), the key component of Infuse® was first isolated at UCLA in the early 1960s and that defendants, and each of them, are and were very familiar with this product, its risks and limitations.

12.   Plaintiff is informed and believes that Infuse® was approved through the premarket approval process by the United States Food and Drug Administration ("FDA") on July 2, 2002, for use at a single level only in the lower region of the spine (at levels L2 through S1) to treat degenerative disc disease. It was not approved for use in the cervical spine.

13.   Plaintiff is informed and believes that the approved Infuse® device for the lumbar spine consists of the following components: (1) a metallic spinal fusion containment cage, (2) the bone graft substitute, which consists of a genetically-engineered human protein (rhBMP-2) and (3) a sponge-like carrier or scaffold for the protein that is placed inside the fusion cage.

14.   The FDA approved only the Medtronic LT (lumbar tapered) and InterFix cages as the spinal fusion containment cage components of the Infuse® device because these cages feature a closed end wall or barrier design that functions to prevent posterior migration of the Infuse® when placed into the fusion cage in order to protect the spinal cord from bony overgrowth and migration.

15.   Plaintiff is informed and believes that the Medtronic LT and InterFix cages are only FDA approved for use in the lumbar spine.

16.   Plaintiff is informed and believes that RhBMP-2 is FDA-approved for use only in the lower spine, for tibia fractures, and for dental surgeries.

///

///

3

17.     Plaintiff is informed and believes that the use of Infuse® in the cervical spine has never been approved by the FDA.

18.     Plaintiff is informed and believes that Infuse® has become a best seller for Medtronic and that one market analyst has publicly estimated that the product's sales were approximately $815 million for the fiscal year ended in April 2008.

19.     Plaintiff is informed and believes that on July 1, 2008, the FDA issued a Public Health Notification about complications from the use of Infuse® in the neck or cervical area of the spine. The FDA reported that it had received 38 reports over a four-year period through July 1, 2008, of complications from cervical uses of Infuse®; and, that some reports were of life-threatening and fatal events. Some of the complications were associated with swelling of the neck and throat tissue, which resulted in compression of the airway and/or neurological structures in the neck, and patients reported difficulty swallowing, breathing and speaking. Several patients required emergency treatment, including tracheotomies and the insertion of feeding tubes.

20.     The FDA noted that the anatomical proximity of the cervical spine to airway structures in the body has contributed to the seriousness of the events reported and the need for emergency medical intervention with the use of Infuse® in the cervical spine.

21.     The July 1, 2008, an FDA Safety Alert regarding Medtronic's Infuse product was intended to alert physicians to:

> "...reports of life-threatening complications associated with recombinant human Bone Morphogenetic Protein (rhBMP) when used in the cervical spine. Note that the safety and effectiveness of **rhBMP in the cervical spine have not been demonstrated and these products are not approved by FDA for this use.**"
>
> *FDA Public Health Notification: Life-threatening Complications Associated with Recombinant Human Bone Morphogenetic Protein in Cervical Spine Fusion,* issued July 1, 2008 (http://www.fda.gov/cdrh/safety/070108-rhbmp.html) (emphasis in original).

///

///

4

Exhibit_12
Page 153

22.     Plaintiff is informed and believes that Defendants DR. WANG, THE REGENTS, and DOES 1 through 100, have conducted clinical research on Medtronic products, including Infuse®, and were aware of the research studies, data, and associated risks surrounding use of Infuse® in the cervical spine, including the warning issued by the FDA in July of 2008 of life-threatening complications related to the use of Infuse® in the cervical spine.

**B.     Defendant DR. WANG's Consulting Relationships**

23.     Plaintiff is informed and believes that DR. WANG was an employee and managing agent of THE REGENTS and was working as a clinical instructor and orthopedic surgeon at UCLA Medical Center.

24.     Plaintiff is informed and believes that DR. WANG was the Co-Director of the UCLA Spine Center at the time of plaintiff's consultation and surgery with DR. WANG.

25.     At the time of plaintiff's consultation with DR. WANG in March 2009 and surgery on May 11, 2009, plaintiff is informed and believes that DR. WANG was a consultant for Medtronic and Biomet, two medical device manufacturers.

26.     Plaintiff is informed and believes that as part of his consulting relationships with Medtronic and Biomet, DR. WANG received royalties for products these companies manufactured, including products used in cervical spine surgery.

27.     Plaintiff is informed and believes that DR. WANG was paid by Medtronic and Biomet to consult on development of products, including attending product design meetings for these manufacturers. Both companies have surgical technique guides based on surgical techniques used by DR. WANG.

28.     Plaintiff is informed and believes that as part of his consulting relationship with Medtronic, DR. WANG has received compensation from Medtronic to lecture on their products, he has been flown to Medtronic headquarters for research, and he has had his travel and other expenses paid for by Medtronic. Plaintiff is informed and believes that some of the compensation from Medtronic has been related to the use of Infuse®.

///

SECOND AMENDED COMPLAINT FOR DAMAGES

Exhibit _12
Page 154

29. Plaintiff is informed and believes that DR. WANG has extensive research interests in BMP, including the Infuse® product.

30. Plaintiff is informed and believes that THE REGENTS hosted clinical investigations on BMP at UCLA that were ongoing at the time of plaintiff's surgery.

31. Plaintiff is informed and believes that DR. WANG was the original principal investigator of the BMP clinical investigations at UCLA.

32. Plaintiff is informed and believes that DR. WANG failed to disclose and misrepresented his financial relationship with Medtronic on forms signed under penalty of perjury required by the California Fair Political Practices Commission for principal investigators in clinical studies/trials.

33. Plaintiff is informed and believes that DR. WANG was fined by the California Fair Political Practices Commission ("FPPC") in 2010 for failing to disclose his financial interest in Medtronic in relation to his clinical studies. THE REGENTS and DOES 1 through 100 were aware that DR. WANG was fined.

34. Plaintiff is informed and believes that DR. WANG was also investigated by the U.S. Senate and THE REGENTS (UCLA) for failing to disclose his financial relationship with medical device manufacturers as far back as 2007.

35. Plaintiff is informed and believes that DR. WANG failed to report to THE REGENTS his outside income from medical device manufacturers, including Medtronic.

36. Plaintiff is informed and believes that THE REGENTS were aware that DR. WANG failed to disclose his financial relationships with manufacturers and had been fined by the FPPC for failing to report these financial relationships.

37. Plaintiff is informed and believes that in 2008, after THE REGENTS became aware of DR. WANG's failure to disclose his financial relationship with medical device manufacturers, THE REGENTS promoted DR. WANG from a Professor Step 1 (associate professor) to Professor Step 2 (full professor) which included a salary increase.

///

///

6

SECOND AMENDED COMPLAINT FOR DAMAGES

Exhibit _12
Page 155

38.    Plaintiff is informed and believes that in 2012, after the FPPC fined DR. WANG, THE REGENTS promoted him to Vice Chair of UCLA Department of Orthopedic Surgery.

39.    Plaintiff is informed and believes that THE REGENTS requires that its managing agents and employees report outside income. Any reported outside income by DR. WANG that was above a certain threshold is supposed to be paid back to the UCLA Health Sciences Compensation Plan. Plaintiff is informed and believes that DR. WANG's outside income was above the threshold.

40.    Plaintiff is informed and believes that THE REGENTS never required DR. WANG to repay the UCLA Health Sciences Compensation Plan for his undisclosed outside income which totaled hundreds of thousands of dollars.

C.    **Surgery of Plaintiff Jerome Lew**

41.    On or about March 31, 2009, Plaintiff consulted Defendants DR. WANG, THE REGENTS and DOES 1 through 50 regarding numbness and pain in both of his hands. DR. WANG diagnosed Plaintiff with "cervical stenosis and cervical myelopathy with herniated disk at C4-C5 and C5-C6, and degenerative disk disease."

42.    DR. WANG, THE REGENTS, and DOES 1 through 50 did not disclose to Plaintiff during consultation or at any time prior to surgery that DR. WANG was a consultant for Medtronic or Biomet, or that he intended to use these companies' spine implant products during the surgery he planned for the Plaintiff.

43.    In the visits prior to surgery, DR. WANG, THE REGENTS, and DOES 1 through 50 told Plaintiff that a standard anterior cervical discectomy and fusion would be performed using an autograft, whereby Plaintiff's own bone would be harvested from the same area of incision.

44.    DR. WANG, THE REGENTS, and DOES 1 through 50 did not offer alternative treatment options to Plaintiff MR. LEW.

45.    Prior to Plaintiff's surgery, there was no conversation with DR. WANG, THE REGNTS and DOES 1 through 50 regarding use of the Infuse® Bone Graft Product.

46.    On May 11, 2009, DR. WANG, THE REGENTS, and DOES 1 through 50 performed a surgical procedure known as an "anterior C5 vertebrectomy and corpectomy, and C4-

7

Exhibit_12
Page 156

1  |  C6 anterior interbody fusion." Defendants had the Plaintiff sign the surgical consent form while

2  |  he was on the gurney waiting to enter the operating room.

3  |      47.    None of the Defendants discussed the risks, benefits, or alternative treatments with

4  |  Plaintiff.

5  |      48.    During this procedure, DR. WANG, THE REGENTS, and DOES 1 through 50

6  |  utilized the placement of an interbody cage device to fill the C5 corpectomy defect and used

7  |  Infuse® rhBMP-2 soaked into the absorbable collagen sponge. Defendants also used local

8  |  autogenous bone graft. The bone growth material was inserted into the corpectomy device with

9  |  the intention that it would stimulate bone growth over time in order to "fuse." The corpectomy

10 |  device, as well as the Infuse®, were manufactured by Medtronic.

11 |      49.    During this procedure, DR. WANG, THE REGENTS, and DOES 1 through 50

12 |  screwed a cervical plate onto the Plaintiff's anterior spine. This cervical plate was manufactured

13 |  by Biomet.

14 |      50.    Sales representatives from Medtronic and Biomet were in the operating room

15 |  throughout the Plaintiff's surgery.

16 |      51.    The use of the Infuse® Bone Graft Product in Plaintiff's cervical procedure

17 |  performed by DR. WANG, THE REGENTS, and DOES 1 through 50 had never been approved

18 |  by the FDA.

19 |      52.    According to THE REGENTS and Medtronic documentation, a Medtronic Verte-

20 |  Stack corpectomy cage was implanted in Plaintiff. Plaintiff is informed and believes that the

21 |  Verte-Stack device only had FDA 510(k) clearance for use in the thoracolumbar spine in 2009

22 |  and was noted to be contraindicated for cervical spine surgery.

23 |      53.    Plaintiff is informed and believes that there was no legally approved, manufactured,

24 |  and distributed Verte-Stack corpectomy cage for use in the cervical spine at the time of his

25 |  surgery.

26 |      54.    Plaintiff is further informed and believes that Medtronic did not manufacture or

27 |  distribute a corpectomy cage that was cleared and/or approved by the FDA in 2009 for use in the

28 |  cervical spine.

8

SECOND AMENDED COMPLAINT FOR DAMAGES

Exhibit _12
Page 157

55.   Plaintiff is informed and believes that the corpectomy cage implanted by DR. WANG during surgery was not cleared and/or approved by the FDA at the time of plaintiff's surgery.

56.   Plaintiff is informed and believes that DR. WANG, THE REGENTS and DOES 1 through 50 did not disclose to Plaintiff that an unapproved or uncleared corpectomy cage would be implanted during his surgery.

57.   Plaintiff is informed and believes that DR. WANG, THE REGENTS and DOES 1 through 50 knew that an unapproved or uncleared corpectomy cage was made available at the hospital and implanted during plaintiff's surgery.

58.   Plaintiff is informed and believes that DR. WANG, THE REGENTS, and DOES 51 through 100 submitted billing codes to Plaintiff's insurance provider for a standard anterior cervical discectomy and fusion using an autograft. No billing codes were submitted for the use of the Infuse® Bone Graft Product.

59.   Plaintiff is informed and believes that Defendants and each of them had knowledge that Plaintiff's medical and billing codes were falsified by DR. WANG, THE REGENTS, and DOES 51 through 100 and nevertheless ratified, adopted and approved said conduct.

60.   After his May 2009 surgery, Plaintiff's symptoms initially improved. However, he later began to experience numbness and pain in both hands, dysphagia, neck pain, fatigue and residual hoarseness. Plaintiff presented to Defendants DR. WANG, THE REGENTS, and DOES 1 through 50 for multiple post-surgical follow-up visits. Plaintiff was assured by Defendants DR. WANG, THE REGENTS and DOES 1 through 50 that it was normal for him to have these symptoms following the surgery and that the surgery and fusion were successful.

61.   Plaintiff is informed and believes that although Defendants DR. WANG, THE REGENTS, and DOES 1 through 50 knew that they used the Infuse® Bone Graft Product in Plaintiff, they continued to withhold this information and only prescribed additional physical therapy, thereby causing the bony overgrowth to continue to grow outside the confines of the corpectomy cage.

///

9

SECOND AMENDED COMPLAINT FOR DAMAGES

Exhibit_12
Page 158

1      62.    Plaintiff is informed and believes that THE REGENTS and DOES 51 through 100

2 knew that the Infuse® Bone Graft Product was used on Plaintiff, and nevertheless ratified, adopted

3 and approved the action and conduct of Defendants DR. WANG, THE REGENTS, and DOES 1

4 through 50 inclusive.

5      63.    Plaintiff is informed and believes that despite their knowledge of the root cause of

6 Plaintiff's continuing problems, Defendants DR. WANG, THE REGENTS, and DOES 1 through

7 50 never took any corrective steps.

8      64.    As a result of such assurances by Defendants DR. WANG, THE REGENTS, and

9 DOES 1 through 50, Plaintiff delayed seeking proper treatment, causing more damage from bone

10 overgrowth and a general worsening of Plaintiff's condition.

11      65.    A subsequent CT scan in March 2011 ordered by DR. WANG and done at UCLA

12 showed evidence of bony overgrowth present around and outside the corpectomy cage. Despite

13 these findings, DR. WANG, THE REGENTS, and DOES 1 through 50 failed to disclose to the

14 plaintiff the evidence of bony overgrowth seen on the CT scan.

15      66.    Radiology studies done in May through July 2012, including cervical MRI and CT

16 scans, revealed evidence of bony overgrowth posteriorly from the cage entering into the canal and

17 showed bony overgrowth compressing the cord significantly. This was deemed to be causing a

18 significant spinal cord compression.

19      67.    As a result of the significant bony overgrowth caused by Defendants' actions,

20 Plaintiff underwent a cervical laminectomy and bilateral neural foraminotomies on September 5,

21 2012. Despite the corrective surgery, plaintiff continues to suffer from debilitating, chronic nerve

22 damage as a result of the surgery defendants performed on him.

23      68.    Excessive bony overgrowth is one of the known, inherent dangers associated with

24 the improper use of the Infuse Bone Graft Product.

25      69.    On September 18, 2012, Plaintiff served his Notice of Intention to Commence

26 Action pursuant to *California Code of Civil Procedure* §364 on Defendant JEFFREY WANG,

27 M.D. and THE REGENTS OF THE UNIVERSITY OF CALIFORNIA.

28 ///

10

Exhibit __12
Page 159

# I.

## **FIRST CAUSE OF ACTION**

### (Medical Negligence against Defendants

### DR. WANG, THE REGENTS and DOES 1-50 )

70.    Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully set forth here and further alleges as follows:

71.    Plaintiff MR. LEW employed defendants, and each of them, to care for and treat him and do all things necessary in connection therewith. Defendants, and each of them, undertook said employment and undertook and agreed to care for and treat plaintiff MR. LEW and to do all things necessary in connection therewith, and said defendants, and each of them, entered into such employment, individually and by and on behalf of one another.

72.    Defendants, and each of them, so negligently and carelessly examined, diagnosed, treated, failed to treat, and managed plaintiff's care so as to allow and cause the damages more fully set forth above.

73.    The negligence and carelessness of defendants, and each of them, consisted of their failure to use that degree of skill and care ordinarily used by healthcare professionals engaged in the practice of their profession in the same or similar locality and under the same or similar circumstances.

74.    At all times herein mentioned, Plaintiff visited DR. WANG and DOES 1 through 50 in their offices and employed them to diagnose and treat his "cervical stenosis and cervical myelopathy with herniated disk at C4-C5 and C5-C6, and degenerative disk disease." DR. WANG and DOES 1 through 100 undertook to diagnose Plaintiff's illness, handle and control the care and treatment of Plaintiff, monitor his health and condition and to seek whatever consultant advice was reasonably necessary for the treatment and monitoring of Plaintiff.

75.    In the aforementioned examinations, diagnoses, prescriptions of medicines and drugs, surgery and the handling and control of the care and treatment of Plaintiff by DR. WANG and DOES 1 through 50, said Defendants negligently failed to possess or exercise that degree of knowledge of skill that would ordinarily be possessed and exercised by physicians and surgeons,

11

Exhibit_12
Page 160

1   hospitals, nurses, surgical technicians, attendants, medical clinics, physical therapists and the like,

2   engaged in said professions in the same locality as DR. WANG and DOES 1 through 50, and each

3   of them, in that said Defendants negligently and unlawfully failed to render proper care and

4   treatment of Plaintiff.

5       76.    On or about May 2009, Plaintiff entered the hospital for the purpose of surgery on

6   his neck.   At that time, THE REGENTS, DR. WANG and DOES 1 through 50 undertook to

7   provide Plaintiff with such care and attendance as Plaintiff might require while he was a patient

8   at the hospital.

9       77.    In the aforementioned examinations, diagnoses, prescriptions of medicines and

10  drugs, surgery and the handling and control of the care and treatment of Plaintiff by THE

11  REGENTS, DR. WANG and DOES 1 through 50, said Defendants, and each of them, negligently

12  failed to possess or exercise that degree of knowledge of skill that would ordinarily be possessed

13  and exercised by physicians and surgeons, hospitals, nurses, surgical technicians, attendants,

14  medical clinics, physical therapists and the like, engaged in said professions in the same locality

15  as THE REGENTS, and each of them, in that said Defendants, and each of them, negligently and

16  unlawfully failed to render proper care and treatment of Plaintiff.

17      78.    Plaintiff is informed and believes and thereon alleges that Defendant THE

18  REGENTS and DOES 1 through 50, allowed non-FDA cleared or approved devices into its

19  medical center, and knew or should have known that the internal fixation cage implanted in

20  MR. LEW was not cleared and/or approved for use by the FDA at the time of his surgery.

21      79.    At all times herein mentioned, Plaintiff visited Defendants, and each of them, and

22  employed them to diagnose and treat his "cervical stenosis and cervical myelopathy with herniated

23  disk at C4-C5 and C5-C6, and degenerative disk disease." Said defendants, and each of them,

24  undertook to diagnose Plaintiff's illness, handle and control the care and treatment of Plaintiff,

25  monitor his health and condition and to seek whatever consultant advice was reasonably necessary

26  for the treatment and monitoring of Plaintiff.

27      80.    In the aforementioned examinations, diagnoses, prescriptions of medicines and

28  drugs, surgery and the handling and control of the care and treatment of Plaintiff, Defendants and

12

SECOND AMENDED COMPLAINT FOR DAMAGES

Exhibit _12
Page 161

1  each of them negligently failed to possess or exercise that degree of knowledge of skill that would

2  ordinarily be possessed and exercised by physicians and surgeons, hospitals, nurses, surgical

3  technicians, attendants, medical clinics, physical therapists and the like, engaged in said

4  professions in the same locality as Defendants, and each of them, in that said Defendants

5  negligently and unlawfully failed to render proper care and treatment of Plaintiff.

6         81.    Defendants, and each of them, failed to use reasonable care to select and periodically

7  evaluate its medical staff so that their patients are provided with adequate medical care.

8         82.    As a result of the negligence and carelessness of Defendants, and each of them,

9  Plaintiff MR. LEW was hurt and injured in his health, strength and activity, sustaining injury to

10  his body, and shock and injury to his nervous system and person, all of which have caused and

11  continue to cause said Plaintiff permanent injury in his health and physical ability, and will cause

12  plaintiff physical, mental and nervous pain and suffering, fright, grief, anxiety and apprehension,

13  all to his general damage in an amount in excess of the jurisdictional limits of this court.

14         83.    As a further result of the negligence and carelessness of defendants, and each of

15  them, Plaintiff MR. LEW was required to and did employ physicians and other healthcare

16  providers to examine, treat and care for him and did incur medical, nursing and incidental

17  expenses, and was further required to employ the services of friends and family members to

18  provide nursing and related services. The exact amount of such expense is unknown to Plaintiff

19  at this time, and inasmuch as the same is continuing and ongoing, Plaintiff will seek leave of the

20  court to prove said amount at the time of trial.

21         84.    As a further result of the negligence and carelessness of defendants, and each of

22  them, Plaintiff has been permanently hurt and injured in his health and physical ability, thereby

23  causing loss of past and future earnings and future earning capacity, all to his damage in an amount

24  to be proven at the time of trial.

25  ///

26  ///

27  ///

28  ///

13

SECOND AMENDED COMPLAINT FOR DAMAGES

Exhibit _12
Page 162

## II.

### SECOND CAUSE OF ACTION

(Lack of Informed Consent against Defendants
DR. WANG and DOES 1 through 50)

85.    Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully set forth here and further alleges as follows.

86.    Defendants DR. WANG and DOES 1 through 50 failed to obtain Plaintiff MR. LEW's informed consent regarding the May 11, 2009, procedure by failing to inform the plaintiff that they intended to use Infuse® during the procedure, and that Infuse® was not approved by the FDA for use in the cervical spine and could cause unwanted bony overgrowth and migration of the bone to sensitive nerve areas exacerbating Plaintiff's pain.

87.    Defendants DR. WANG and DOES 1 through 50 failed to obtain Plaintiff MR. LEW's informed consent regarding the May 11, 2009, procedure by failing to inform MR. LEW that the procedure would use a corpectomy cage that was not approved or cleared by the FDA for use in the cervical spine or with Infuse®.

88.    Defendants DR. WANG and DOES 1 through 50 failed to obtain Plaintiff MR. LEW's informed consent regarding the May 11, 2009, surgery by failing to disclose that DR. WANG had a financial and clinical research relationship with Medtronic and Biomet, two of the medical device manufacturers who distribute medical devices intended to be used in MR. LEW's surgery.

89.    Defendants DR. WANG and DOES 1 through 50 failed to obtain Plaintiff MR. LEW's informed consent regarding the May 11, 2009, surgery by failing to disclose that there were alternative methods of treatment for MR. LEW's symptoms.

90.    Had plaintiff known that the defendants intended to use Infuse® during the procedure, and that Infuse® was not approved by the FDA for use in the cervical spine and could cause unwanted bony overgrowth and migration of the bone to sensitive nerve areas exacerbating Plaintiff's pain, he would not have consented to the surgery.

91.    Had plaintiff known that Defendants DR. WANG and DOES 1 through 50 were

14

SECOND AMENDED COMPLAINT FOR DAMAGES

Exhibit  12
Page 163

1  going to use a corpectomy cage that was not approved or cleared by the FDA for use in the cervical

2  spine or with Infuse®, he would not have consented to the surgery.

3      92.    Had plaintiff known that Defendant DR. WANG had a financial and clinical

4  research relationship with Medtronic and Biomet, the manufacturers of the medical devices

5  intended to be used in his surgery, he would not have consented to the surgery.

6      93.    Had plaintiff known that there were other alternatives to the proposed May 11, 2009,

7  surgery, he would not have consented to the surgery.

8      94.    As a result of the failure of Defendants DR. WANG and DOES 1 through 50 to

9  obtain an informed consent, Plaintiff MR. LEW was hurt and injured in his health, strength and

10  activity and sustained injury to his body, and shock and injury to his nervous system and person,

11  all of which have caused and continue to cause said plaintiff great physical, mental and nervous

12  pain and suffering, and fright, grief, anxiety, worry and apprehension, all to his general damage

13  in an amount in excess of the jurisdictional limits of this court.

14      95.    As a further result of the failure of Defendants DR. WANG and DOES 1 through

15  50 to obtain an informed consent, Plaintiff MR. LEW was required to and did employ physicians,

16  surgeons, and other healthcare providers to examine, treat and care for him and did incur medical

17  and incidental expenses.  The exact amount of such expense is unknown to plaintiff inasmuch as

18  the same is continuing and plaintiff will seek leave of court to prove said amount at the time of

19  trial.

20      96.    As a further result of the failure of Defendants DR. WANG and DOES 1 through

21  50 to obtain an informed consent, MR. LEW has been permanently hurt and injured in his health

22  and physical ability, thereby causing loss of past and future earning and future earning capacity,

23  all to his damage in an amount to be proven at the time of trial.

24  III.

25  **THIRD CAUSE OF ACTION**

26  **(Breach of Fiduciary Duty against Defendants**

27  **DR. WANG and DOES 1-50)**

28      97.    Plaintiff incorporates by reference all previous paragraphs of this Complaint as if

15

Exhibit _12
Page 164

1 | fully set forth here and further alleges as follows.

2     98.   Plaintiff is informed and believes and thereon alleges that Defendant DR. WANG
3 | and DOES 1 through 50 were involved with clinical research, and had a financial relationship
4 | with Medtronic, the device manufacturer that created and markets the Infuse® and corpectomy
5 | cage used during Plaintiff's surgery.

6     99.   Plaintiff is informed and believes and thereon alleges that Defendant DR. WANG
7 | and DOES 1 through 50 were involved with clinical research, and had a financial relationship
8 | with Biomet, the device manufacturer that created and markets the surgical plate that was used in
9 | Plaintiff's surgery.

10     100.   Plaintiff is informed and believes and thereon alleges that DR. WANG and DOES
11 | 1 through 50 had research and economic interests in performing procedures on patients like MR.
12 | LEW based on his connection with Medtronic and Biomet.

13     101.   Plaintiff is informed and believes and thereon alleges that Defendant DR. WANG
14 | and DOES 1 through 50 intentionally recommended and performed a procedure that was not
15 | approved or cleared by the FDA in order to further their own research and financial interests.

16     102.   Plaintiff is informed and believes and thereon alleges that the procedure
17 | recommended and performed by DR. WANG and DOES 1 through 50 was considered
18 | experimental and investigational.

19     103.   Plaintiff is informed and believes and thereon alleges that the corpectomy cage used
20 | in plaintiff's cervical spine was not approved or cleared by the FDA for use in the cervical spine
21 | or with the Infuse® product, and that DR. WANG and DOES 1 through 50 implanted the
22 | corpectomy cage with Infuse® inside of it.  This use would be considered experimental and
23 | investigational.

24     104.   Plaintiff is informed and believes and thereon alleges that DR. WANG and DOES
25 | 1 through 50 were trying to expand the indications for use of Infuse® for research and economic
26 | gain.

27     105.   Plaintiff is informed and believes and thereon alleges that DR. WANG and DOES
28 | 1 through 50 had research and economic incentives to perform the procedure on MR. LEW and

16

SECOND AMENDED COMPLAINT FOR DAMAGES

Exhibit_12
Page 165

1   failed to disclose these incentives to MR. LEW and failed to disclose the experimental nature of

2   this procedure to MR. LEW.

3       106.   Plaintiff is informed and believes and thereon alleges that Defendants DR. WANG

4   and DOES 1 through 50 had research and economic incentives unrelated to the health of their

5   patients, including MR. LEW, that affected their professional judgment.

6       107.   By failing to disclose this information to MR. LEW, Defendants DR. WANG, and

7   DOES 1 through 50 have breached their fiduciary duty to plaintiff.

8       108.   Despite the fact that the procedure was experimental and used medical devices in

9   ways the FDA had not approved or cleared, DR. WANG and DOES 1 through 50 recommended

10  that MR. LEW undergo the May 11, 2009, procedure.

11      109.   As a result of the breach of the fiduciary duty of Defendants DR. WANG and DOES

12  1 through 50, Plaintiff MR. LEW was hurt and injured in his health, strength and activity and

13  sustained injury to his body, and shock and injury to his nervous system and person, all of which

14  have caused and continue to cause said plaintiff great physical, mental and nervous pain and

15  suffering, and fright, grief, anxiety, worry and apprehension, all to his general damage in an

16  amount in excess of the jurisdictional limits of this court.

17      110.   As a further result of the breach of the fiduciary duty of Defendants DR. WANG

18  and DOES 1 through 50, Plaintiff MR. LEW was required to and did employ physicians, surgeons,

19  and other healthcare providers to examine, treat and care for him and did incur medical and

20  incidental expenses.   The exact amount of such expense is unknown to plaintiff inasmuch as the

21  same is continuing and plaintiff will seek leave of court to prove said amount at the time of trial.

22      111.   As a further result of the breach of the fiduciary duty of Defendants DR. WANG

23  and DOES 1 through 50, MR. LEW has been permanently hurt and injured in his health and

24  physical ability, thereby causing loss of past and future earning and future earning capacity, all to

25  his damage in an amount to be proven at the time of trial.

26  ///

27  ///

28  ///

17

SECOND AMENDED COMPLAINT FOR DAMAGES

Exhibit _12
Page 166

## IV.

## FOURTH CAUSE OF ACTION

### (Battery against Defendants DR. WANG and DOES 1-50)

112.    Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully set forth here and further alleges as follows.

113.    Defendants DR. WANG and DOES 1 through 50 committed battery by performing an operation and procedures to which the patient had not consented.

114.    Plaintiff MR. LEW consented to an anterior fusion surgery to his cervical spine.

115.    Plaintiff did not consent to an experimental procedure with significant risk, involving use of a corpectomy cage that was uncleared or unapproved by the FDA for use in the cervical spine or with Infuse® (BMP), another product that was uncleared or unapproved by the FDA for use in the cervical spine.

116.    Plaintiff is informed and believes and thereon alleges that the use of the unapproved or uncleared corpectomy device with the Infuse® product was a substantially different procedure than what the plaintiff consented to.

117.    Defendants DR. WANG and DOES 1 through 50 did intentionally touch the plaintiff by performing a fusion with an uncleared or unapproved corpectomy cage using the Infuse® products.

118.    The touching performed by the Defendants DR. WANG and DOES 1 through 50 resulted in harmful or offensive contact with the plaintiff's person.

119.    As a result of the battery committed by Defendants DR. WANG and DOES 1 through 50, Plaintiff MR. LEW was hurt and injured in his health, strength, and activity and sustained injury to his body and shock and injury to his nervous system and person, all of which have caused and continue to cause said plaintiff great mental, physical, and nervous pain and suffering, and fright, grief, anxiety, worry, and apprehension, all to his general damage in an amount in excess of the jurisdictional limits of this court.

120.    As a further result of the battery committed by Defendants DR. WANG and DOES 1 through 50, Plaintiff MR. LEW was required to and did employ physicians, surgeons and other

18

Exhibit _12
Page 167

1    healthcare providers to examine, treat and care for him and did incur medical, nursing and

2    incidental expenses, and was further required to employ the services of friends and family

3    members to provide nursing and related services. The exact amount of such expense is unknown

4    to plaintiff at this time, and inasmuch as the same is continuing and ongoing, plaintiff will seek

5    leave of the court to prove said amount at the time of trial.

6        121.    As a further result of the battery committed by Defendants DR. WANG and DOES

7    1 through 50, MR. LEW has been permanently hurt and injured in his health and physical ability,

8    thereby causing loss of past and future earning and future earning capacity, all to his damage in

9    an amount to be proven at the time of trial.

10                                  **V.**

11                 **FIFTH CAUSE OF ACTION**

12           **(Negligence Per Se against all Defendants)**

13        122.    Plaintiff incorporates by reference all previous paragraphs of this Complaint as if

14    fully set forth here and further alleges as follows.

15        123.    According to THE REGENTS and Medtronic documentation, a Medtronic Verte-

16    Stack corpectomy cage was implanted in Plaintiff. Plaintiff is informed and believes and thereon

17    alleges that the Verte-Stack device only had FDA 510(k) clearance for use in the thoracolumbar

18    spine in 2009. Plaintiff is informed and believes and thereon alleges that there was no legally

19    approved manufactured and distributed Verte-Stack corpectomy cage for use in the cervical spine

20    at the time of plaintiff's surgery.

21        124.    Plaintiff is further informed and believes and thereon alleges that Medtronic did not

22    manufacture or distribute a corpectomy cage that was cleared and/or approved by the FDA in

23    2009 for use in the cervical spine.

24        125.    Plaintiff is informed and believes and thereon alleges that the corpectomy cage

25    implanted by DR. WANG during surgery was not cleared and/or approved by the FDA at the time

26    of plaintiff's surgery.

27        126.    Plaintiff is informed and believes and thereon alleges that defendants, and each of

28    them, did not disclose to plaintiff that an unapproved or uncleared corpectomy cage would be

19

Exhibit _12
Page 168

1 | implanted during his surgery.

2 |     127.  Plaintiff is informed and believes and thereon alleges that defendants violated
3 | various laws, statutes, and regulations, including but not limited to the following:

4 |     128.  Plaintiff is informed and believes and thereon alleges that defendants violated
5 | Health and Safety Code §111550: "No person shall sell, deliver, or give away any new drug or
6 | new device" unless it satisfies one of the specific delineated exceptions of Health and Safety Code
7 | §111550. Plaintiff is informed and believes and thereon alleges that none of the exceptions of
8 | Health and Safety Code §111550 are met. Under Health and Safety Code §109975 "New device"
9 | means "any device the composition, construction, or properties of which are such that the device
10 | is not generally recognized, among experts qualified by scientific training and experience to
11 | evaluate the safety and effectiveness of devices, as having been adequately shown, through
12 | scientific investigations to be safe and effective for use under the conditions prescribed,
13 | recommended, or suggested in the labeling or advertising thereof" or "any device the composition,
14 | construction, or properties of which are such that the device, as a result of such investigation to
15 | determine its safety and effectiveness for use under these conditions, has become so recognized,
16 | but which has not, otherwise than in the investigations, been used to a material extent or for a
17 | material time under the condition."

18 |     129.  Plaintiff is informed and believes and thereon alleges that the corpectomy cage used
19 | during Plaintiff's surgery with the Infuse® bone graft substitute along with a sponge-like carrier
20 | for the protein created a "new device" as defined by California Health & Safety Code §109975.

21 |     130.  Plaintiff is informed and believes and thereon alleges that defendants, and each of
22 | them, sold or delivered an unsafe "new device" to be used during plaintiff's surgery.

23 |     131.  Plaintiff is informed and believes and thereon alleges that the violation of these laws
24 | and statutes was a substantial factor in causing injury to the plaintiff.

25 |     132.  Plaintiff is informed and believes and thereon alleges that the injury resulted from
26 | an occurrence of the nature which the above statutes were designed to prevent.

27 |     133.  Plaintiff is informed and believes and thereon alleges that he was of the class of
28 | persons for whose protection the statutes were adopted.

SECOND AMENDED COMPLAINT FOR DAMAGES

Exhibit 12
Page 169

1    134.    Plaintiff relied on the fact that defendants would not sell, deliver or give away a new

2    device as defined by the Health and Safety Code.

3    135.    As a result of the actions and representations by Defendants, and each of them,

4    Plaintiff consented to and underwent the May 11, 2009, surgery unaware that the surgery involved

5    a new device.

6    136.    Plaintiff is informed and believes and thereon alleges that as a result of the use of a

7    new device, the Infuse® was not contained within the corpectomy cage, and that the Infuse®

8    caused unwanted bony overgrowth and migration of the bone that injured plaintiff's nerves and

9    caused permanent damage.

10    137.    Plaintiff is informed and believes and thereon alleges that defendants were aware

11    that the use of the corpectomy cage with Infuse® could cause unwanted bony overgrowth and

12    migration that could damage plaintiff's nerves.

13    138.    The acts and omissions alleged herein against defendants, and each of them, were

14    actually committed, ratified, and/or authorized by managing agents of THE REGENTS and DOES

15    51 through 100, including but not limited to defendants' officers, administrators and directors.

16    139.    Plaintiff is informed and believes and thereon alleges that defendants engaged in

17    human experimentation in that the safety and efficacy of using the Infuse® in the cervical spine

18    with the uncleared or unapproved corpectomy cage was unknown and therefore investigational.

19    140.    Plaintiff is informed and believes and thereon alleges that defendants engaged in

20    human experimentation without plaintiff's informed consent in violation of Health and Safety

21    Code §24173 which requires the following: (a) "The subject… is provided with a copy of the

22    experimental subject's bill of rights, prior to consenting to participate in any medical experiment,

23    containing all the information required by Section 24172, and the copy is signed and dated by the

24    subject;" (b) "A written consent form is signed and dated by the subject…" (c) "The subject… is

25    informed both verbally and within the written consent form, in nontechnical terms and in a

26    language in which the subject …is fluent, of the [following] facts of the proposed medical

27    experiment, which might influence the decision to undergo the experiment;" (d) The written

28    consent form is signed and dated by any person other than the subject or the conservator or

21

SECOND AMENDED COMPLAINT FOR DAMAGES

Exhibit _12
Page 170

1 | guardian, or other representative of the subject, as specified in Section 24175, who can attest that
2 | the requirements for informed consent to the medical experiment have been satisfied;" and (e)
3 | "Consent is voluntary and freely given by the human subject or the conservator or guardian, or
4 | other representative, as specified by Section 24175, without the intervention of any element of
5 | force, fraud, deceit, duress, coercion, or undue influence."

6 |     141.   Plaintiff was not provided a copy of the experimental subjects' bill of right, and he
7 | was not informed verbally and within the written consent form in nontechnical terms the facts
8 | related to the proposed medical experiment.

9 |     142.   Plaintiff is informed and believes and thereon alleges that had he been provided with
10 | all the information about the proposed May 11, 2009, surgery required by Health and Safety Code
11 | §24173 to consent to human experimentation, Plaintiff MR. LEW would not have consented to
12 | undergo the proposed surgery.

13 |     143.   Plaintiff is informed and believes and thereon alleges that the violation of these laws
14 | and statutes on human experimentation was a substantial factor in causing injury to the plaintiff.

15 |     144.   Plaintiff is informed and believes and thereon alleges that the injury resulted from
16 | an occurrence of the nature which the above human experimentation statutes were designed to
17 | prevent.

18 |     145.   Plaintiff is informed and believes and thereon alleges that he was of the class of
19 | persons for whose protection the statutes were adopted.

20 |     146.   Plaintiff relied on the fact that defendants would not conduct human
21 | experimentation on him without his proper, legal, informed consent.

22 |     147.   Plaintiff is informed and believes and thereon alleges that as a result of not being
23 | informed about the experimental nature of the proposed surgery as required under the California
24 | Health and Safety Code, plaintiff consented to surgery resulting in the Infuse® not being
25 | contained within the corpectomy cage leading to unwanted bony overgrowth and migration of the
26 | bone outside the cage, injuring plaintiff's nerves.

27 |     148.   Plaintiff is informed and believes and thereon alleges that Defendants were aware
28 | that the proposed surgery was experimental and concealed the experimental and investigational

22

SECOND AMENDED COMPLAINT FOR DAMAGES

Exhibit 12
Page 171

1  nature of the surgery from the plaintiff.

2      149.   The acts and omissions alleged herein against defendants and each of them were

3  actually committed, ratified, and/or authorized by managing agents of THE REGENTS and DOES

4  51 through 100, including but not limited to defendants' officers, administrators and directors.

5      150.   As a direct and proximate result of the acts and omissions of Defendants, and each

6  of them, plaintiff was hurt and injured in his health, strength, and activity and sustained injury to

7  his body and shock and injury to his nervous system and person, all of which have caused and

8  continue to cause said plaintiff great mental, physical, and nervous pain and suffering, and fright,

9  grief, anxiety, worry, and apprehension, all to his general damage in an amount in excess of the

10  jurisdictional limits of this court.

11      151.   As a further direct and proximate result of the acts and omissions of Defendants,

12  and each of them, Plaintiff MR. LEW was required to and did employ physicians, surgeons and

13  other healthcare providers to examine, treat and care for him and did incur medical, nursing and

14  incidental expenses, and was further required to employ the services of friends and family

15  members to provide nursing and related services.  The exact amount of such expense is unknown

16  to plaintiff at this time, and inasmuch as the same is continuing and ongoing, plaintiff will seek

17  leave of the court to prove said amount at the time of trial.

18      152.   As a further direct and proximate result of the acts and omissions of Defendants,

19  and each of them, Plaintiff MR. LEW has been permanently hurt and injured in his health and

20  physical ability, thereby causing loss of past and future earning and future earning capacity, all to

21  his damage in an amount to be proven at the time of trial.

22                              V.

23                    **FIFTH CAUSE OF ACTION**

24              **(Fraud by Concealment against All Defendants)**

25      153.   Plaintiff incorporates by reference all previous paragraphs of this Complaint as if

26  fully set forth here and further alleges as follows.

27      154.   Plaintiff is informed and believes and thereon alleges that Defendants DR. WANG

28  and DOES 1 through 50 were healthcare providers and rendered healthcare to Plaintiff MR. LEW.

---

23

SECOND AMENDED COMPLAINT FOR DAMAGES

Exhibit 12
Page 172

1     A duty to disclose arises in a relationship between a healthcare provider and his or her patient.

2         155.    Plaintiff is informed and believes and thereon alleges that Defendants DR. WANG

3     and DOES 1 through 50 were the managing agents, servants and/or employees of Defendant THE

4     REGENTS and DOES 51 through 100.

5         156.    Plaintiff is informed and believes and thereon alleges that Defendants, and each of

6     them, intentionally concealed or suppressed material facts from Plaintiff MR. LEW, including but

7     not limited to the following:

8         a.    That DR. WANG would be using the Infuse® Bone Graft Product during the

9               surgery he performed on the Plaintiff on May 11, 2009;

10        b.    That the Infuse® Bone Graft Product had received only limited FDA approval

11              for certain specific procedures, and was not approved for use in the cervical

12              spine;

13        c.    That there were additional risks involved in using the Infuse® Bone Graft

14              Product in the cervical spine, including unwanted bony overgrowth and

15              migration of the bone to sensitive nerve areas which could exacerbate Plaintiff's

16              pain;

17        d.    That the FDA had warned physicians, including DR. WANG and DOES 1

18              through 50, about the risks of using Infuse® in the cervical spine and

19              recommended that practitioners either use approved alternative treatments or

20              consider enrolling as investigators in approved clinical studies;

21        e.    That use of the Infuse® Bone Graft Product could cause severe, debilitating,

22              permanent neck and back pain;

23        f.    That at the time of plaintiff's proposed surgery, THE REGENTS were hosting

24              an ongoing clinical trial on the safety and efficacy of the use of BMP, such as

25              Infuse®, in the spine;

26        g.    That DR. WANG was a paid consultant of Medtronic, the medical device

27              manufacturer of the Infuse® Bone Graft Product and corpectomy cage

28              DR. WANG used during the procedure;

SECOND AMENDED COMPLAINT FOR DAMAGES

Exhibit _12
Page 173

h.  That DR. WANG was a paid consultant of Biomet, the medical device manufacturer of the surgical plate DR. WANG intended to use during the procedure;

i.  That DR. WANG intended to use a corpectomy cage that was not approved or cleared by the FDA for use in the cervical spine during the procedure;

j.  That DR. WANG intended to use a corpectomy cage that was not approved or cleared by the FDA for use with the Infuse Bone Graft Product;

k.  That THE REGENTS allowed an unapproved, uncleared medical device, such as the corpectomy cage used in plaintiff's surgery, to be delivered to UCLA and implanted in and sold to plaintiff;

l.  That the use of an unapproved or uncleared corpectomy cage meant that it had never been determined as safe and effective for use in the manner in which DR. WANG intended to use the cage during Plaintiff's surgery, and that it carried additional risks of unwanted bony overgrowth and migration and danger to plaintiff's nerves;

m.  That alternative methods of surgery were available;

n.  That plaintiff had evidence of ectopic bony overgrowth in a March 2011 CT of the cervical spine ordered by DR. WANG and completed at UCLA;

o.  That plaintiff's post-operative symptoms were not normal and were signs indicative of bony overgrowth and migration causing nerve damage from the use of Infuse.

157.  Plaintiff was unaware of these material facts.

158.  Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, were aware of these material facts and that said facts were known or accessible only to defendants, and each of them, and defendants knew these material facts were not known to or reasonably discoverable by the plaintiff.

159.  Plaintiff is informed and believes and thereon alleges Defendant DR. WANG and DOES 1 through 50 were paid consultants for Medtronic, and based on their clinical research,

25

SECOND AMENDED COMPLAINT FOR DAMAGES

Exhibit 12
Page 174

1    were aware of the fact they were using the Infuse® Bone Graft Product in an unsafe and potentially

2    dangerous manner and intentionally concealed the above-stated facts from the plaintiff in order to

3    induce plaintiff to undergo surgery.

4         160.    Plaintiff is informed and believes and thereon alleges that as a paid consultant for

5    Medtronic and based on clinical research, DR. WANG and DOES 1 through 50 were aware of the

6    fact they were using an uncleared or unapproved corpectomy cage in the cervical spine in an

7    unsafe and potentially dangerous manner and intentionally concealed the above stated facts from

8    the plaintiff in order to induce plaintiff to undergo surgery.

9         161.    Plaintiff is informed and believes and thereon alleges that as a paid consultant for

10   Medtronic and based on clinical research, DR. WANG and DOES 1 through 50 were aware that

11   the plaintiff's post-operative symptoms were not normal and were signs indicative of bony

12   overgrowth and migration outside the cage causing nerve damage from the use of Infuse®.

13        162.    Plaintiff is informed and believes and thereon alleges that THE REGENTS and

14   DOES 51 through 100 are responsible for overseeing the medical devices which enter UCLA

15   Medical Center and ensuring all implantable medical devices entering the facility for use on or in

16   patients are approved or cleared by the FDA.

17        163.    Plaintiff is informed and believes and thereon alleges that THE REGENTS and

18   DOES 51 through 100 were aware that an uncleared or unapproved corpectomy cage intended to

19   be used in the cervical spine in an unsafe and potentially dangerous manner entered their hospital

20   for use in plaintiff's surgery, and intentionally concealed the above-stated facts from the plaintiff

21   in order to induce plaintiff to undergo surgery.

22        164.    Plaintiff is informed and believes and thereon alleges that Defendant, and each of

23   them, had knowledge that Plaintiff never consented to the experimental procedures that

24   Defendants DR. WANG and DOES 1 through 50 performed, and Defendants THE REGENTS

25   and DOES 51 through 100 ratified, adopted and approved the above-mentioned actions and

26   conduct.

27        165.    Had Plaintiff known the facts regarding DR. WANG's relationship with Medtronic

28   and Biomet, and the facts regarding the Infuse® Bone Graft Product and corpectomy cage that

26

SECOND AMENDED COMPLAINT FOR DAMAGES

Exhibit   12
Page 175

1 | were available to Defendants at the time of the surgery, Plaintiff would not have consented to
2 | proceed with surgery.

3 | 166. To cover up their own negligent and fraudulent actions, Defendants and each of
4 | them, fraudulently falsified Plaintiff's medical and billing records.

5 | 167. Plaintiff is informed and believes and thereon alleges that Defendants, and each of
6 | them, prevented Plaintiff from discovering certain material facts by knowingly falsifying the
7 | medical and billing records.

8 | 168. Plaintiff is informed and believes and thereon alleges that Defendants, and each of
9 | them, ratified, adopted and approved the fraudulent concealment of material facts from plaintiff
10 | by knowingly falsifying the medical records and billing records.

11 | 169. Plaintiff is informed and believes and thereon alleges that Defendants, and each of
12 | them, deliberately withheld facts related to the use of the Infuse® Bone Graft Product and
13 | uncleared, unapproved corpectomy cage in plaintiff and their knowledge of the unsafe manner in
14 | which they were using them.

15 | 170. Plaintiff is informed and believes and thereon alleges that Defendants, and each of
16 | them, knew that DR. WANG had a financial and clinical research relationship with Medtronic
17 | and Biomet at the time of recommending and performing the procedure on Plaintiff, and,
18 | nevertheless, permitted that fact to be concealed from Plaintiff.

19 | 171. Plaintiff is informed and believes and thereon alleges that had the omitted
20 | information been disclosed, plaintiff reasonably would have behaved differently. Plaintiff would
21 | not have undergone the treatment or the continued treatment as recommended by Defendants.

22 | 172. Plaintiff's reliance on the representations of Defendants was reasonable and
23 | justifiable because Plaintiff was entitled to rely on the healthcare providers' representations and
24 | believe those representations were complete.

25 | 173. Plaintiff is informed and believes and thereon alleges that the intent of Defendants,
26 | and each of them, was to induce Plaintiff to consent to the treatment and continued treatment
27 | recommended by Defendants, all to their benefit.

28 | 174. Plaintiff is informed and believes and thereon alleges that plaintiff's reliance on the

27

SECOND AMENDED COMPLAINT FOR DAMAGES

Exhibit 12
Page 176

representations of defendants, and each of them, was a substantial factor in causing his harm.

175. As a direct and proximate result of the fraudulent concealments of Defendants, and each of them, Plaintiff has been injured in his health, strength and activity, and has suffered, continues to suffer and, on information and belief, will suffer indefinitely into the future, severe, lasting and debilitating physical and mental pain and suffering, some of which injuries may be permanent, all in an amount in excess of the jurisdictional minimum of the Court.

176. As a further direct and proximate result of the fraudulent concealments of Defendants, and each of them, Plaintiff has lost earnings and earning capacity, and will continue to incur such losses for an indefinite period of time in the future, and some of which losses may be permanent, all in an amount excess of the jurisdictional minimum of the Court.

177. As a further direct and proximate result of the fraudulent concealments of Defendants, and each of them, Plaintiff has incurred medical, hospital and related expenses and, on information and belief, will continue to incur such expenses in the future, all in an amount in excess of the jurisdictional minimum of the Court.

## VI.

### SIXTH CAUSE OF ACTION

### (Negligent Concealment against All Defendants)

178. Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully set forth here and further alleges as follows.

179. At all times herein mentioned, Defendants, and each of them, had a duty to Plaintiff to exercise reasonable care in transmitting to Plaintiff any and all relevant information concerning methods and materials to be utilized during Plaintiff's surgery and care.

180. Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, had a fiduciary and/or confidential relationship with Plaintiff and a duty to disclose what procedure would be performed on him and which, if any, products would be implanted in his body. A duty to disclose arises in a relationship between a healthcare provider and his or her patient.

///

SECOND AMENDED COMPLAINT FOR DAMAGES

Exhibit _12
Page 177

181.    Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, Defendants, and each of them, unreasonably failed to communicate to Plaintiff the information that Defendants possessed concerning their utilization of the Infuse® Bone Graft Product during Plaintiff's surgery, the fact that such a use of the Infuse® Bone Graft Product had not been approved by the FDA for use in the cervical spine, and that use of the Infuse Bone Graft could result in unwanted bony overgrowth and migration of the bone to sensitive nerve areas exacerbating Plaintiff's pain. Defendants, and each of them, were aware that they unreasonably failed to communicate to Plaintiff about the use of Infuse® in his surgery, and nevertheless ratified, approved and adopted said actions and conduct.

182.    176.    Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, Defendants, and each of them, unreasonably failed to communicate to Plaintiff that a corpectomy cage that was uncleared or unapproved by the FDA and not intended for use in the cervical spine or with Infuse® would be used during his surgery. Defendants, and each of them, were aware that they unreasonably failed to communicate to Plaintiff about the use of the corpectomy cage in his surgery, and nevertheless ratified, approved and adopted said actions and conduct.

183.    Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, Defendants, and each of them, unreasonably failed to communicate to Plaintiff the information that Defendants possessed concerning DR. WANG's financial and clinical research relationship with Medtronic and Biomet, the manufacturers of the products intended to be used in his surgery.  Defendants, and each of them, were aware that they unreasonably failed to communicate to Plaintiff about the financial and clinical research relationship with Medtronic and Biomet, and nevertheless ratified, approved and adopted said actions and conduct.

184.    Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, Defendants, and each of them, unreasonably failed to communicate to Plaintiff that his post-operative symptoms were not normal and were signs indicative of bony overgrowth and migration causing nerve damage from the use of Infuse®. Defendants, and each of them, were aware that they unreasonably failed to communicate to Plaintiff about post-operative symptoms,

29

SECOND AMENDED COMPLAINT FOR DAMAGES

Exhibit_12
Page 178

1 │ and nevertheless ratified, approved and adopted said actions and conduct.

2 │ .     185.    At all times herein mentioned, Defendants, and each of them, unreasonably failed

3 │ to communicate to Plaintiff that alternative methods of surgery were available. Defendants, and

4 │ each of them, were aware that they unreasonably failed to communicate to Plaintiff that alternative

5 │ methods of surgery were available, and nevertheless ratified, approved and adopted said actions

6 │ and conduct.

7 │ 186.    Had Plaintiff been adequately informed by Defendants, and each of them, about the

8 │ above-stated facts, including either that the Infuse® Bone Graft Product would be used in a

9 │ manner unapproved by the FDA in a way that could cause nerve damage, the fact that a non-

10 │ cleared or unapproved corpectomy cage was going to be used in the surgery, or that DR. WANG

11 │ was a consultant for Medtronic and Biomet, as well as, informed about available alternative

12 │ methods, Plaintiff would have never consented to his spine surgery on May 11, 2009.

13 │ 187.    Had Plaintiff been adequately informed by Defendants, and each of them, that

14 │ plaintiff's post-operative symptoms were not normal and were signs indicative of bony

15 │ overgrowth and migration causing nerve damage from the use of Infuse®, Plaintiff would not

16 │ have continued to treat with the defendants.

17 │ 188.    As a direct and proximate result of the negligent concealment of Defendants, and

18 │ each of them, Plaintiff has been injured in his health, strength and activity, and has suffered,

19 │ continues to suffer and, on information and belief, will suffer indefinitely into the future, severe,

20 │ lasting and debilitating physical and mental pain and suffering, some of which injuries may be

21 │ permanent, all in an amount in excess of the jurisdictional minimum of the Court.

22 │ 189.    As a further direct and proximate result of the negligent concealment of Defendants,

23 │ and each of them, Plaintiff has lost earnings and earning capacity, and will continue to incur such

24 │ losses for an indefinite period of time in the future, and some of which losses may be permanent,

25 │ all in an amount excess of the jurisdictional minimum of the Court.

26 │ 190.    As a further direct and proximate result of the negligent concealment of Defendants,

27 │ and each of them, Plaintiff has incurred medical, hospital and related expenses, and, on

28 │ information and belief, will continue to incur such expenses in the future, all in an amount in

SECOND AMENDED COMPLAINT FOR DAMAGES

Exhibit 12
Page 179

1  | excess of the jurisdictional minimum of the Court.

2  | **VII.**

3  | **SEVENTH CAUSE OF ACTION**

4  | **(Constructive Fraud against DR. WANG and DOES 1 through 50)**

5  |     191.   Plaintiff incorporates by reference all previous paragraphs of this Complaint as if

6  | fully set forth here and further alleges as follows.

7  |     192.   Defendants, DR. WANG and DOES 1 through 50, were healthcare providers and

8  | rendered healthcare to Plaintiff MR. LEW, and as a result, were in a fiduciary relationship with

9  | plaintiff relating to the care, comfort, safety, and health of Plaintiff MR. LEW.

10 |     193.   Pursuant to said fiduciary duty, defendants DR. WANG and DOES 1 through 50,

11 | owed Plaintiff MR. LEW the utmost good faith and fairness in all matters pertaining to Plaintiff's

12 | care, treatment, comfort, safety, and health.

13 |     194.   Defendants' conduct breached this duty, and by their conduct, defendants DR.

14 | WANG and DOES 1 through 50, gained an advantage over plaintiff in matters relating to his care,

15 | comfort, safety, and health.

16 |     195.   Plaintiff is informed and believes and thereon alleges that Defendants DR. WANG

17 | and DOES 1 through 50 were aware of the fact that the Infuse® was not FDA approved for use in

18 | the cervical spine and that it could cause unwanted bony overgrowth and migration of the bone to

19 | sensitive nerve areas exacerbating Plaintiff's pain.

20 |     196.   Plaintiff is informed and believes and thereon alleges that Defendants DR. WANG

21 | and DOES 1 through 50 were aware of the fact that a corpectomy cage that was not FDA approved

22 | or cleared for use in the cervical spine or with the Infuse® product would be used in plaintiff's

23 | surgery.

24 |     197.   Plaintiff is informed and believes and thereon alleges that Defendants DR. WANG

25 | and DOES 1 through 50 were aware that there were alterative options to treat plaintiff's

26 | symptoms.

27 |     198.   Plaintiff is informed and believes and thereon alleges that Defendants DR. WANG

28 | and DOES 1 through 50 were aware of the fact that the postoperative symptoms plaintiff was

31

Exhibit _12
Page 180

1  system and person, all of which have cause and continue to cause said Plaintiff permanent injury

2  in his health and physical ability, and will cause plaintiff physical, mental, and nervous pain and

3  suffering, fright, grief, anxiety, and apprehension, all to his general damage in an amount in excess

4  of the jurisdictional limits of this court.

5         208.   As a further result of the defendants' constructive fraud, Plaintiff was required to

6  and did employ physicians and other healthcare providers to examine, treat, and care for him and

7  did incur medical, nursing, and incidental expenses, and was further required to employ the

8  services of friends and family members to provide nursing and related services. The exact number

9  of such expense is unknown to Plaintiff at this time, and inasmuch as the same is continuing and

10  ongoing, Plaintiff will seek leave of the court to prove said amount at the time of trial.

11         209.   As a further result of the defendants' constructive fraud, Plaintiff has been

12  permanently hurt and injured in his health and physical ability, thereby causing loss of past and

13  future earning and future earning capacity, all to his damage in an amount to be proven at the time

14  of trial.

15                              **PRAYER FOR RELIEF**

16         **WHEREFORE,** Plaintiff prays for judgment against Defendants as follows:

17         1.     For general damages in an amount according to proof at the time of trial;

18         2.     For medical and incidental expenses and the reasonable value of nursing and therapy

19  services, past and future, according to proof;

20         3.     For loss of earnings, past and future, and loss of earning capacity;

21         4.     For loss of past and future household services, according to proof;

22         5.     For pre-judgment interest and post-judgment interest as allowed by law;

23         6.     For costs of suit incurred herein; and

24         7.     For such other and further relief as the court may deem just and proper.

25  ///

26  ///

27  ///

28  ///

33

SECOND AMENDED COMPLAINT FOR DAMAGES

Exhibit_12
Page 181

1    experiencing were not normal and were signs indicative of bony overgrowth and migration

2    causing nerve damage from the use of Infuse.

3        199.    Plaintiff was unaware of the fact that Infuse® would be used in his surgery and that

4    it was not FDA approved for use in the cervical spine and could cause unwanted bony overgrowth

5    and migration of the bone to sensitive nerve areas.

6        200.    Plaintiff was unaware that the corpectomy cage intended to be used in his surgery

7    was not FDA approved or cleared for use in the cervical spine or with the Infuse® product.

8        201.    Plaintiff was unaware that there were alternative treatments available to treat

9    plaintiff's symptoms.

10        202.    Plaintiff was unaware that his postoperative recovery and symptoms were not

11    normal, nor that he was having complications from the surgery that were indicative of bony

12    overgrowth and migration causing nerve damage from the use of Infuse®.

13        203.    Plaintiff MR. LEW reasonably relied on Defendants DR. WANG and DOES 1

14    through 50 to disclose all information relevant to his care, and said defendants' concealments were

15    a substantial factor in causing harm to plaintiff MR. LEW.

16        204.    Plaintiff MR. LEW reasonably relied on this deception by consenting to the May

17    11, 2009, surgery by defendants, and each of them, and continuing to treat with them and not seek

18    immediate care for his concealed postoperative complications. Had he known the concealed

19    material facts, he would not have consented to the May 11, 2009, surgery by defendants, would

20    have requested alternative treatment, and would have sought immediate care for his post-operative

21    complications.

22        205.    Plaintiff reasonably relied on the deception by Defendants DR. WANG and DOES

23    1 through 50 to his detriment, injury, damage, and prejudice, and to the advantage of defendants

24    and each of them.

25        206.    Plaintiff is informed and believes and thereon alleges that Defendants DR. WANG

26    and DOES 1 through 50 billed for and received payment for their care and treatment of plaintiff.

27        207.    As a result of the defendants' constructive fraud, Plaintiff was hurt and injured in

28    his health, strength and activity, sustaining injury to his body, and shock and injury to his nervous

32

SECOND AMENDED COMPLAINT FOR DAMAGES

Exhibit_12
Page 182

DATED: September 23, 2014                    LAW OFFICES OF ROBERT VAAGE

                                             By:_____
                                                 ROBERT F. VAAGE
                                                 Attorney for Plaintiff

## DEMAND FOR JURY

Plaintiff hereby respectfully requests a jury trial as to all claims.

DATED: September 23, 2014                    LAW OFFICES OF ROBERT VAAGE

                                             By:_____
                                                 ROBERT F. VAAGE
                                                 Attorney for Plaintiff

34

SECOND AMENDED COMPLAINT FOR DAMAGES

Exhibit _12
Page 183

# EXHIBIT 13

Exhibit 13
Page 184

CM-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Robert F. Vaage, Esq. (SBN 106437)<br>Law Offices of Robert Vaage<br>110 West C Street, Suite 2300<br>San Diego, Ca. 92101<br>TELEPHONE NO.: (619) 338-0505    FAX NO. *(Optional):* (619) 338-0588<br>E-MAIL ADDRESS *(Optional):* rfvaage@vaagelaw.com<br>ATTORNEY FOR *(Name):* Plaintiff Jerome Lew | **FILED**<br>Superior Court of California<br>County of Los Angeles<br><br>OCT 16 2014<br><br>Sherri R. Carter, Executive Officer/Clerk<br>By _____ Deputy<br>Dametta Smith |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 1725 Main St.
MAILING ADDRESS: 1725 Main St.
CITY AND ZIP CODE: Santa Monica 90401
BRANCH NAME: West District

| PLAINTIFF/PETITIONER: Jerome Lew | CASE NUMBER:<br>SC123264 |
|---|---|
| DEFENDANT/RESPONDENT: Medtronic Inc. et al. | JUDICIAL OFFICER:<br>LISA HART COLE |
| **NOTICE OF RELATED CASE** | DEPT.:<br>O |

*Identify, in chronological order according to date of filing, all cases related to the case referenced above.*

1.  a.  Title: Lew v. Wang et al.
    b.  Case number: SC120518
    c.  Court: [✓] same as above
        [ ] other state or federal court *(name and address):*
    d.  Department: N
    e.  Case type: [ ] limited civil [✓] unlimited civil [ ] probate [ ] family law [ ] other *(specify):*
    f.  Filing date: December 18, 2012
    g.  Has this case been designated or determined as "complex?" [ ] Yes [✓] No
    h.  Relationship of this case to the case referenced above *(check all that apply):*
        [✓] involves the same parties and is based on the same or similar claims.
        [✓] arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.
        [ ] involves claims against, title to, possession of, or damages to the same property.
        [✓] is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.
        [ ] Additional explanation is attached in attachment 1h
    i.  Status of case:
        [✓] pending
        [ ] dismissed [ ] with [ ] without prejudice
        [ ] disposed of by judgment

2.  a.  Title:
    b.  Case number:
    c.  Court: [ ] same as above
        [ ] other state or federal court *(name and address):*
    d.  Department:

---

| Form Approved for Optional Use<br>Judicial Council of California<br>CM-015 [Rev. July 1, 2007] | **NOTICE OF RELATED CASE** | Page 1 of 3<br>Cal. Rules of Court, rule 3.300<br>www.courtinfo.ca.gov |

Exhibit 13<br>Page 185

CM-015

| PLAINTIFF/PETITIONER: Jerome Lew | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Medtronic Inc. et al. | |

2. *(continued)*

  e. Case type: ☐ limited civil   ☐ unlimited civil   ☐ probate   ☐ family law   ☐ other *(specify):*

  f. Filing date:

  g. Has this case been designated or determined as "complex?" ☐ Yes   ☐ No

  h. Relationship of this case to the case referenced above *(check all that apply):*

    ☐ involves the same parties and is based on the same or similar claims.

    ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

    ☐ involves claims against, title to, possession of, or damages to the same property.

    ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

        ☐ Additional explanation is attached in attachment 2h

  i. Status of case:

    ☐ pending

    ☐ dismissed   ☐ with   ☐ without prejudice

    ☐ disposed of by judgment

3. a. Title:

  b. Case number:

  c. Court: ☐ same as above

    ☐ other state or federal court *(name and address):*

  d. Department:

  e. Case type: ☐ limited civil   ☐ unlimited civil   ☐ probate   ☐ family law   ☐ other *(specify):*

  f. Filing date:

  g. Has this case been designated or determined as "complex?" ☐ Yes   ☐ No

  h. Relationship of this case to the case referenced above *(check all that apply):*

    ☐ involves the same parties and is based on the same or similar claims.

    ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

    ☐ involves claims against, title to, possession of, or damages to the same property.

    ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

        ☐ Additional explanation is attached in attachment 3h

  i. Status of case:

    ☐ pending

    ☐ dismissed   ☐ with   ☐ without prejudice

    ☐ disposed of by judgment

4. ☐ Additional related cases are described in Attachment 4. Number of pages attached: _____

Date: October 16, 2014

Robert F. Vaage, Esq.
_____
(TYPE OR PRINT NAME OF PARTY OR ATTORNEY)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

CM-015 [Rev. July 1, 2007]    **NOTICE OF RELATED CASE**    Page 2 of 3

Exhibit 13
Page 186

CM-015

| PLAINTIFF/PETITIONER: Jerome Lew | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Medtronic Inc. et al. | |

## PROOF OF SERVICE BY FIRST-CLASS MAIL
### NOTICE OF RELATED CASE

*(NOTE: You cannot serve the Notice of Related Case if you are a party in the action. The person who served the notice must complete this proof of service. The notice must be served on all known parties in each related action or proceeding.)*

1. I am at least 18 years old and **not a party to this action.** I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify):*

   110 West C Street, Suite 2300, San Diego, California, 92101

2. I served a copy of the *Notice of Related Case* by enclosing it in a sealed envelope with first-class postage fully prepaid and *(check one):*
   a. ☐ deposited the sealed envelope with the United States Postal Service.
   b. ☑ placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. The *Notice of Related Case* was mailed:
   a. on *(date):*  October 16, 2014
   b. from *(city and state):*    San Diego, California

4. The envelope was addressed and mailed as follows:

   a. Name of person served:
      Jannine Kranz, Esq.
      Street address: 3699 Wilshire Blvd., 10th Fl.
      City: Los Angeles
      State and zip code: California  90010

   c. Name of person served:

      Street address:
      City:
      State and zip code:

   b. Name of person served:

      Street address:
      City:
      State and zip code:

   d. Name of person served:

      Street address:
      City:
      State and zip code:

☐ Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:  October 16, 2014

Sheri L. Herring
_____
(TYPE OR PRINT NAME OF DECLARANT)

▶ _____
(SIGNATURE OF DECLARANT)

CM-015 [Rev. July 1, 2007]                **NOTICE OF RELATED CASE**

Page 3 of 3
Exhibit 13
Page 187

# EXHIBIT 14

Exhibit 14
Page 188

Michael K. Brown (SBN 104252)
mkbrown@reedsmith.com
Lisa M. Baird (SBN 179958)
lbaird@reedsmith.com
Michelle L. Cheng (SBN 239711)
mcheng@reedsmith.com
Elizabeth G. Minerd (SBN 260971)
eminerd@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071

Telephone: 213.457.8000
Facsimile:  213.457.8080

Attorneys for Defendants
Medtronic, Inc. and Medtronic Sofamor
Danek USA, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEROME LEW | Case No. 2:14-CV-8303 |
| Plaintiff, | [Removal from the Superior Court of California, County of Los Angeles, Case No. SC123264] |
| vs. | |
| MEDTRONIC, INC.; MEDTRONIC SOFAMOR DANEK USA, INC.; and DOES 1 through 100, inclusive, | **DEFENDANTS MEDTRONIC, INC. AND MEDTRONIC SOFAMOR DANEK USA, INC.'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §1441(b) (DIVERSITY)** |
| Defendants. | |
| | Complaint Filed:    October 16, 2014 |
| | [Filed concurrently with: 1. Civil Cover Sheet; 2. Demand for Jury Trial; 3. Corporate Disclosure Statement; and 4. Certification of Interested Parties] |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANTS MEDTRONIC, INC. AND MEDTRONIC SOFAMOR DANEK USA, INC.'S NOTICE OF
REMOVAL OF ACTION UNDER 28 U.S.C. §1441(b) (DIVERSITY)

Exhibit 14
Page 189

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE THAT Defendants Medtronic, Inc. and Medtronic Sofamor Danek USA, Inc. (collectively, "Medtronic") hereby remove this action from the Superior Court of California, County of Los Angeles, to the United States District Court for the Central District of California.  Removal is based on 28 U.S.C. §§ 1332, 1441 and 1446.  In support of this Notice of Removal, Medtronic states as follows:

## I.   THE PROCEDURAL REQUIREMENTS FOR REMOVAL ARE SATISFIED

1.   On or about October 16, 2014, Plaintiff Jerome Lew ("Plaintiff") commenced this action in the Superior Court of California, County of Los Angeles, entitled *Jerome Lew  v. Medtronic, Inc., et al.*, Case No. SC123264.

2.   Medtronic, Inc. and Medtronic Sofamor Danek USA, Inc. have not yet been served with process.  Nevertheless, in keeping with 28 U.S.C. § 1446(a), a copy of all process, pleadings, orders, and other papers obtained to date are attached hereto as Exhibit 1.

3.   Under 28 U.S.C. § 1446(b), this Notice of Removal must be filed within 30 days of service of the Summons and the Complaint.  Since Medtronic is filing this Notice on October 27, 2014, removal is timely.

4.   No previous request has been made for the relief requested herein.

5.   Venue is proper in this Court pursuant to 28 U.S.C. §§ 84(c)(2) and 1441(a), because the United States District Court for the Central District of California is the federal judicial district embracing the Superior Court of California, County of Los Angeles, where this action was originally filed.

6.   Concurrent with the filing of this Notice, Medtronic is serving this Notice on Plaintiff's counsel and filing a copy of the Notice with the Clerk of the Superior Court of California, County of Los Angeles.

7.   By filing a Notice of Removal in this matter, Medtronic does not waive

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

- 1 -

DEFENDANTS MEDTRONIC, INC. AND MEDTRONIC SOFAMOR DANEK USA, INC.'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §1441(b) (DIVERSITY)

Exhibit  14
Page 190

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1 | its right to object to service of process, the sufficiency of process, jurisdiction over the
2 | person, or venue, and it specifically reserves the right to assert any defenses and/or
3 | objections to which it may be entitled under state or federal law.

4 | **II.    REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT**
5 | **MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441**

6 |       8.    This Court has original jurisdiction over this action pursuant to 28 U.S.C.
7 | § 1332.  Diversity jurisdiction exists where (1) the suit is between citizens of different
8 | states, and (2) the amount in controversy exceeds $75,000, exclusive of interest and
9 | costs. *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1004 (9th Cir. 2001).  Thus, this action
10 | may be removed to this Court pursuant to 28 U.S.C. § 1441.

11 | **A.    There Is Complete Diversity of Citizenship**

12 |       9.    The Complaint alleges that Plaintiff Jerome Lew is a resident of Orange
13 | County, California. *Complaint, ¶ 2.*

14 |       10.   As Plaintiff alleges, Defendant Medtronic, Inc. is a Minnesota
15 | corporation which has its principal place of business in Minneapolis, Minnesota.
16 | *Complaint, ¶ 3.*  Defendant Medtronic, Inc. also has its principal place of business in
17 | Minneapolis, Minnesota. *See Branson v. Medtronic, Inc.*, 2007 WL 170094, at *4
18 | (M.D. Fla. Jan. 18, 2007) (denying plaintiff's motion to remand following removal by
19 | Medtronic on the ground that Medtronic's principal place of business is in
20 | Minnesota).  Thus, Medtronic is a citizen of Minnesota. *See* 28 U.S.C. § 1332(c)(1).

21 |       11.   As Plaintiff also alleges, Defendant Medtronic Sofamor Danek USA, Inc.
22 | is a Tennessee corporation. *Complaint, ¶ 4.*  Likewise, Defendant Medtronic Sofamor
23 | Danek USA, Inc. has its principal place of business in Tennessee. *See Ogden v.*
24 | *Medtronic Sofamor Danek USA, Inc.*, 2006 WL 2171140, *1 (D.S.C. July 31, 2006)
25 | ("Without question, diversity of citizenship is present in this case as the plaintiff is a
26 | citizen and resident of the state of South Carolina and the defendant [Medtronic
27 | Sofamor Danek USA, Inc.] is a business entity organized under the laws of the state of
28 | Tennessee with its principal place of business in the state of Tennessee.").  Thus,

1    Medtronic Sofamor Danek USA, Inc. is a citizen of Tennessee. *See* 28 U.S.C. §

2    1332(c)(1).

3        12.    Upon information and belief, none of the DOE defendants have been

4    substituted with any named defendants or been served with process in the state court

5    action. For purposes of removal, "the citizenship of defendants sued under fictitious

6    names shall be disregarded." 28 U.S.C. § 1441(a); *accord Soliman v. Phillip Morris*

7    *Inc.,* 311 F.3d 966, 971 (9th Cir. 2002); *McCabe v. General Foods Corp.*, 811 F.2d

8    1336, 1339 (9th Cir. 1987). Therefore, the citizenship of DOES 1 through 100 should

9    be disregarded for purposes of diversity.

10        13.    Therefore, there exists complete diversity among the parties and removal

11    based on the diversity of citizenship is proper.

12    **B.**   **The Amount In Controversy Requirement Is Satisfied**

13        14.    Medtronic filed this Notice of Removal in good faith and on a reasonable

14    basis in law and in fact that the requisite amount in controversy is being sought in this

15    action. Where, as here, Plaintiff fails to allege a specific amount of damages in the

16    Complaint, the District Court must "examine the complaint to determine whether it is

17    'facially apparent' that the claims exceed the jurisdictional amount." *White v. FCI*

18    *USA, Inc.*, 319 F.3d 672, 675 (5th Cir. 2003). When the plaintiff does not expressly

19    seek damages in excess of the jurisdictional minimum, the defendant bears the burden

20    of demonstrating that "it is more likely than not" that the plaintiff's claims meet the

21    federal amount-in-controversy requirement. *Matheson v. Progressive Specialty Ins.*

22    *Co.,* 319 F.3d 1089, 1090 (9th Cir. 2003); *Gafford v. Gen. Elec. Co.,* 997 F.2d 150,

23    158 (6th Cir. 1993) (citation omitted), *overturned on other grounds by Hertz Corp. v.*

24    *Friend*, 130 S. Ct. 1181 (2010); *see also Williams v. Best Buy Co.*, 269 F.3d 1316,

25    1319 (11th Cir. 2001) ("When the complaint does not claim a specific amount of

26    damages, removal from state court is proper if it is facially apparent from the

27    complaint that the amount in controversy exceeds the jurisdictional requirement."). In

28    determining whether the jurisdictional amount has been satisfied, the amount in

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

- 3 -

DEFENDANTS MEDTRONIC, INC. AND MEDTRONIC SOFAMOR DANEK USA, INC.'S NOTICE OF
REMOVAL OF ACTION UNDER 28 U.S.C. §1441(b) (DIVERSITY)

Exhibit   14
Page 192

controversy "is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (citing *Angus v. Shiley Inc.,* 989 F.2d 142, 146 (3d Cir.1993)).

15.   Here, the allegations in Plaintiff's Complaint demonstrate that the amount in controversy in this matter exceeds $75,000, exclusive of interest and costs. The Complaint alleges that Plaintiff Jerome Lew "has been injured in his health, strength, and activity" and has suffered "and will suffer indefinitely into the future, severe, lasting, and debilitating physical and mental pain and suffering, some of which injuries may be permanent." *Complaint, ¶ 89.* Plaintiff further alleges that he "has lost earnings and earning capacity, and will continue to incur such losses for an indefinite period of time in the future." *Id. at ¶ 90.* Finally, Plaintiff seeks punitive damages. *Id., Prayer for Relief, at ¶ 4.*

16.   Plaintiff's allegations of injury are similar to others that have been found to satisfy the amount in controversy requirement. For example, in *Gebbia v. Wal-Mart Stores,* 233 F.3d 880, 881 (5th Cir. 2000), the Fifth Circuit found that alleged damages in a slip and fall case for "medical expenses, physical pain and suffering, mental anguish and suffering, loss of enjoyment of life, loss of wages and earning capacity, and permanent disability and disfigurement" satisfied the jurisdictional amount. *See also Luckett v. Delta Airlines, Inc.,* 171 F.3d 295, 298 (5th Cir. 1999) (finding that alleged damages to property, travel expenses, emergency ambulance trip, 6-day hospitalization, pain and suffering, humiliation, and an inability to do housework satisfied the jurisdictional amount); *Mendoza v. American Airlines, Inc.,* 2010 WL 5376375, 3 (C.D. Cal. Dec. 22, 2010) (allegations of loss of income, lost benefits and the ongoing emotional and mental distress, punitive damages and attorney's fees sufficient to establish amount in controversy). It is also well established that punitive damages are included in determining the amount in controversy. *Gibson v. Chrysler Corp.*, 261 F.3d 927, 946 (9th Cir. 2001); *Hayes v.*

1 | *Equitable Energy Resources Co.*, 266 F.3d 560, 572 (6th Cir. 2001). Thus, the

2 | jurisdictional amount in controversy requirement under § 1332(a) is satisfied.

3 |       17.    For the foregoing reasons, this Court has jurisdiction over this action

4 | pursuant to 28 U.S.C. § 1332, and this action is properly removed pursuant to 28

5 | U.S.C. §§ 1441 and 1446.

6 | ### III.   CONCLUSION

7 |       18.    **WHEREFORE**, Medtronic prays that this action be removed from the

8 | Superior Court of California, County of Los Angeles, to the United States District

9 | Court for the Central District of California.

11 | Dated: October 27, 2014             REED SMITH LLP

13 | By   */s/ Michael K. Brown*
Michael K. Brown
Lisa M. Baird
Michelle L. Cheng
Elizabeth G. Minerd
*Attorneys for Defendants
Medtronic, Inc. and Medtronic Sofamor
Danek USA, Inc.*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANTS MEDTRONIC, INC. AND MEDTRONIC SOFAMOR DANEK USA, INC.'S NOTICE OF
REMOVAL OF ACTION UNDER 28 U.S.C. §1441(b) (DIVERSITY)

Exhibit 14
Page 194

# EXHIBIT 15

Exhibit 15
Page 195





---

## Lew v. Medtronic - Meet and Confer

2 messages

---

**Robert Vaage** <rfvaage@vaagelaw.com>                    Fri, Oct 31, 2014 at 9:22 AM
To: "Segura, Mildred" <msegura@reedsmith.com>

Dear Ms. Segura:

I appreciate the opportunity to meet and confer regarding your potential motion to dismiss.  As I read through the order in the *Dunbar* case, I noted distinctions between that case and the *Lew* case.  First:  Mr. Lew has no strict product liability or breach of express warranty causes of action.  Second:  Mr. Lew's cause of action for negligence per se is based on violations of California state statutes, not the FDCA.  Third:  The court held that the *Dunbar* plaintiffs' fraud claims were not preempted and were adequately pled under Rule 9(b).  I fail to see how the *Dunbar* ruling has any application to this case involving fraud, battery, and negligence based on California state laws.

With regard to the tolling document, it is well settled that parties cannot confer subject matter jurisdiction by consent, waiver or estoppel.  Therefore, any item in the tolling document requiring filing of the complaint in a specific jurisdiction is unconscionable and unenforceable.  The remainder of the tolling document applies to Mr. Lew's negligence per se cause of action.  Mr. Lew's causes of action for fraud and battery are new causes of action, not subject to the tolling document, and were filed well before the running of their respective statutes of limitation.  We also believe they have been adequately pled.

I believe that a motion to dismiss would be improper under Rule 11.  If you would like to discuss this further, I am in deposition this morning.  I will likely be available after 3:00 this afternoon,

Sincerely,

Robert F. Vaage



http://www.yeson46.org

LAW OFFICES OF ROBERT VAAGE
110 West C St., Ste. 2300
San Diego, CA  92101-3910
P:  619-338-0505
F:  619-338-0588
E:  rfvaage@vaagelaw.com
http://www.vaagelaw.com

---

*CONFIDENTIALITY NOTICE:*

*This e-mail and any attachments contain information from the Law Offices of Robert Vaage and are intended solely for the use of the named recipient or recipients.  This e-mail may contain privileged attorney/client communications or work product.  Any dissemination of this e-mail by anyone other than an intended recipient is strictly prohibited.  If you are not a named recipient, you are prohibited from any further*

Exhibit  15

# EXHIBIT 16

Exhibit _16
Page 197

11/11/2014                                    Vaage Law Mail - Lew v. Medtronic - Motion to Amend and Remand
Case 2:14-cv-08303-JLS-VBK    Document 8-1    Filed 11/14/14    Page 202 of 232    Page
                                            ID #:252



Robert Vaage <rfvaage@vaagelaw.com>

---

# Lew v. Medtronic - Motion to Amend and Remand

4 messages

---

**Robert Vaage** <rfvaage@vaagelaw.com>                          Mon, Nov 3, 2014 at 1:15 PM
To: "Segura, Mildred" <msegura@reedsmith.com>

Dear Ms. Segura:

Plaintiff is intending to file a motion to amend his complaint to join Dr. Wang and The Regents to the federal complaint against your client and then remand under 28 USC §1447(e). Plaintiff meets all the factors for consideration in allowing amendment to add non-diverse parties set forth in *IBC Aviation Servs., Inc. v. Compania Mexicana de Aviacion, S.A. de C.V.* (N.D. Cal.2000) 125 F.Supp.2d 1008, 1011. Furthermore, the court has discretion to allow joinder and remand even though the defendants sought to be joined were already named defendants in a state court action.

I believe that filing an amended complaint will render your proposed motion to dismiss moot. I am available to discuss this in more detail today after 4:00 p.m. or tomorrow between 10:00 a.m. and 2:00 p.m. I look forward to hearing from you.


Sincerely,


Robert F. Vaage



http://www.yeson46.org


LAW OFFICES OF ROBERT VAAGE
110 West C St., Ste. 2300
San Diego, CA 92101-3910
P: 619-338-0505
F: 619-338-0588
E: rfvaage@vaagelaw.com
http://www.vaagelaw.com


CONFIDENTIALITY NOTICE:

*This e-mail and any attachments contain information from the Law Offices of Robert Vaage and are intended solely for the use of the named recipient or recipients. This e-mail may contain privileged attorney/client communications or work product. Any dissemination of this e-mail by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or any attachments or from making any use of the e-mail or attachments. If you believe you have received this e-mail in error, notify the sender immediately and permanently delete the e-mail, any attachments, and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachment.*

Exhibit 16
Page 198

---

**Segura, Mildred** <MSegura@reedsmith.com>          Tue, Nov 4, 2014 at 9:56 AM
To: Robert Vaage <rfvaage@vaagelaw.com>
Cc: "Brown, Michael K." <MKBrown@reedsmith.com>

Robert, can you clarify whether you are only seeking to add non-diverse parties or whether you also intend to amend any of the existing causes of action against Medtronic?

Mildred Segura, Esq.
**Reed Smith LLP**
355 South Grand Avenue, Suite 2900
Los Angeles, California 90071
Direct: (213) 457-8003
Main: (213) 457-8000
Fax: (213) 457-8080
Email: msegura@reedsmith.com

**From:** Robert Vaage [mailto:rfvaage@vaagelaw.com]
**Sent:** Monday, November 03, 2014 1:15 PM
**To:** Segura, Mildred
**Subject:** Lew v. Medtronic - Motion to Amend and Remand

[Quoted text hidden]

\* \* \*

This E-mail, along with any attachments, is considered confidential and may well be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. Thank you for your cooperation.

Disclaimer Version RS.US.201.407.01

---

**Robert Vaage** <rfvaage@vaagelaw.com>          Tue, Nov 4, 2014 at 11:50 AM
To: "Segura, Mildred" <MSegura@reedsmith.com>

Dear Ms. Segura,

Thank you for your prompt response to my e-mail regarding plaintiff's intent to move to amend and remand. In this motion, we only intend to add parties, although the language in the existing causes of action against Medtronic will have to be reworded.

If you have more questions, I'm available today until 2:30 p.m. or tomorrow between 10:00 a.m. and noon.

Exhibit 16
Page 199

Sincerely,

Robert F. Vaage


LAW OFFICES OF ROBERT VAAGE
110 West C St., Ste. 2300
San Diego, CA  92101-3910
P:  619-338-0505
F:  619-338-0588
E:  rfvaage@vaagelaw.com
http://www.vaagelaw.com


<u>CONFIDENTIALITY NOTICE:</u>

*This e-mail and any attachments contain information from the Law Offices of Robert Vaage and are intended solely for the use of the named
recipient or recipients.  This e-mail may contain privileged attorney/client communications or work product.  Any dissemination of this e-mail by
anyone other than an intended recipient is strictly prohibited.  If you are not a named recipient, you are prohibited from any further viewing of
the e-mail or any attachments or from making any use of the e-mail or attachments.  If you believe you have received this e-mail in error,
notify the sender immediately and permanently delete the e-mail, any attachments, and all copies thereof from any drives or storage media
and destroy any printouts of the e-mail or attachment.*


[Quoted text hidden]

---

**Segura, Mildred** <MSegura@reedsmith.com>                          Wed, Nov 5, 2014 at 3:58 PM
To: Robert Vaage <rfvaage@vaagelaw.com>
Cc: "Brown, Michael K." <MKBrown@reedsmith.com>

Robert, thanks for the clarification but after reviewing the authorities cited in your email of Nov. 3, we don't
believe they support the relief plaintiff seeks in this case.  We therefore cannot consent to plaintiff's
proposed motion to amend/remand.



Mildred Segura, Esq.
**Reed Smith LLP**
355 South Grand Avenue, Suite 2900
Los Angeles, California 90071
Direct: (213) 457-8003
Main: (213) 457-8000
Fax: (213) 457-8080
Email: msegura@reedsmith.com


**From:** Robert Vaage [mailto:rfvaage@vaagelaw.com]
**Sent:** Tuesday, November 04, 2014 11:51 AM
**To:** Segura, Mildred
**Subject:** Re: Lew v. Medtronic - Motion to Amend and Remand

[Quoted text hidden]

Exhibit  16
Page 200

# EXHIBIT 17

Exhibit 17
Page 202

1  Robert F. Vaage, Esq.  (SBN 106437)
   rfvaage@vaagelaw.com
2  Elizabeth H. Teixeira, Esq. (SBN 259788)
   eteixeira@vaagelaw.com
3  LAW OFFICES OF ROBERT VAAGE
   110 West C Street, Suite 2300
4  San Diego, CA  92101-3910
   Telephone:  (619) 338-0505
5  Facsimile:    (619) 338-0588

6  Attorneys for Plaintiff JEROME LEW

7

8

9              UNITED STATES DISTRICT COURT

10       CENTRAL DISTRICT OF CALIFORNIA, WEST DISTRICT

11

12 JEROME LEW,                          Case No:  2:14-CV-8303-MWF (VBK)

13              Plaintiff,              [Removed from Superior Court of
                                        California, County of Los Angeles,
14       v.                             Case No. SC123264]

15                                      FIRST AMENDED COMPLAINT
   MEDTRONIC, INC.; MEDTRONIC          FOR DAMAGES FOR:
16 SOFAMOR DANEK USA, INC.; and
   DOES 1 through 100, inclusive,       1.    FRAUD
17                                      2.    BATTERY
                Defendants.             3.    NEGLIGENCE
18
                                        DEMAND FOR JURY TRIAL
19

20                                      Complaint Filed:  October 17, 2014

21

22       COMES NOW Plaintiff JEROME LEW, who alleges as follows:

23                    **GENERAL ALLEGATIONS**

24       1.    The damages upon which this action is based occurred in the City of Santa

25 Monica, County of Los Angeles, state of California.

26       2.    At all times relevant herein, Plaintiff JEROME LEW ("Plaintiff" or "MR.

27 LEW") is and was a resident of Orange County, California.

28 ///

Exhibit _17
Page 203

-1-
FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

3.    Plaintiff is informed and believes and thereon alleges that Defendant MEDTRONIC, INC., is a Minnesota corporation engaged in the business of manufacturing, marketing, promoting and selling medical products and devices in California for use on California citizens.  Medtronic maintains research, development, manufacturing and/or distribution facilities in Los Angeles County.

4.    Plaintiff is informed and believes and thereon alleges that Defendant MEDTRONIC SOFAMOR DANEK USA, INC., is a Tennessee corporation engaged in the business of manufacturing, marketing, promoting and selling medical products and devices in California for use on California citizens.  Medtronic maintains research, development, manufacturing and/or distribution facilities in Los Angeles County.   Defendants MEDTRONIC, INC., and MEDTRONIC SOFAMOR DANEK USA, INC., will hereinafter be collectively referred to as "MEDTRONIC."

5.    Plaintiff is informed and believes and thereon alleges that at all relevant times, MEDTRONIC maintained facilities dedicated to conduct research and development, manufacturing, or distribution in the following Southern California locations: Chatsworth and Northridge (Los Angeles County), Corona (Riverside County), Goleta (Santa Barbara County), and Santa Ana (Orange County).  Medtronic also operates two Bakken Education Centers in Los Angeles and Woodland Hills (Los Angeles County), where thousands of medical professionals visit each year to gain hands-on experience with new technologies.

6.    Plaintiff is informed and believes and thereon alleges that Defendant JEFFREY C. WANG, M.D. ("DR. WANG") is a resident of the County of Los Angeles, State of California, and is a physician duly licensed by the State of California to practice medicine and/or surgery in said state, under License No. 76303, and at all relevant times herein was rendering healthcare services to Plaintiff MR. LEW.

7.    Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, Defendant REGENTS OF THE UNIVERSITY OF CALIFORNIA (hereinafter "THE REGENTS"), is a corporation, incorporated in the State of California and licensed and doing business in the County of Los Angeles, State of California, as UCLA Medical

1   Center in Santa Monica, California.

2       8.    Plaintiff is informed and believes and thereon alleges that at all relevant times

3   herein, DR. WANG was a managing agent, servant, and employee of THE REGENTS, and

4   that at the time of plaintiff's surgery, DR. WANG was the Co-Director of the UCLA Spine

5   Center.

6       9.    Plaintiff is ignorant of the true names and capacities of defendants sued herein

7   as DOES 1 through 100, inclusive, and therefore sues these defendants by such fictitious

8   names.  Plaintiff will amend his Complaint to allege their true names and capacities and

9   causes of action against said fictitiously named defendants when same have been

10  ascertained. Plaintiff is informed and believes and thereon alleges that each of the

11  defendants designated herein as a "DOE" is responsible in some manner and liable herein

12  to Plaintiff JEROME LEW for his injuries.

13      10.   Plaintiff is informed and believes and thereon alleges that at all times herein

14  mentioned, Defendants, and each of them, and their aggregates, corporates, associates, and

15  partners, and each of them, were the agent, servant, employee, assignee, permissive user,

16  successor in interest or joint venture of their co-defendants, and were acting within the time,

17  purpose or scope of such agency or employment or permission; and all acts or omissions

18  alleged herein of each such Defendant were authorized, adopted, approved, consented to,

19  and ratified by each of the other Defendants, except where stated otherwise below.

20      11.   Each of these acts and failures to act is alleged against each defendant whether

21  acting individually, jointly, or severally.  Each of the defendants or their alter egos agreed

22  and conspired with others in the commission of these acts or failures to act.

23

24              **FACTUAL ALLEGATIONS**

25  A.    **The Infuse® Bone Graft Device and Corpectomy Cage**

26      12.   Plaintiff is informed and believes that the Infuse® Bone Graft ("Infuse®") was

27  designed by MEDTRONIC for anterior approach lumbar spine surgery.  Infuse® uses a

28  genetically engineered protein, rhBMP-2, a manufactured version of a protein already

Exhibit _17
Page 205
-3-

FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

present in the body that promotes bone growth, to help fuse vertebrae in the lower (lumbar) spine in order to treat degenerative disc disease.

13.    Plaintiff is informed and believes that Infuse® was approved through the premarket approval process by the United States Food and Drug Administration ("FDA") on July 2, 2002, for use at a single level in the lower region of the spine (L4 through S1) with a lumbar fusion containment cage to treat degenerative disc disease.  That approval was later expanded to allow the use of Infuse at one level in the lower region of the spine (L2 through S1).  It has never been approved for use in the cervical spine.

14.    Plaintiff is informed and believes that the approved Infuse® device for the lumbar spine consists of the following components: (1) a metallic spinal fusion containment cage, (2) the bone graft substitute Infuse®, and (3) a sponge-like carrier or scaffold for the protein that is placed inside the fusion cage.

15.    Plaintiff is informed and believes that in 2009, the FDA had only approved two cages for use with Infuse® in the lumbar spine:  Medtronic LT cage (lumbar tapered) and Medtronic InterFix cage.  These cages were specifically designed to attempt to contain the Infuse® bone graft to protect the spinal cord from bony overgrowth and migration outside the cage.

16.    Plaintiff is informed and believes that the Medtronic LT and InterFix cages are only FDA approved for use in the lumbar spine.

17.    Plaintiff is informed and believes that the LT and InterFix cages are too big to be used in the cervical spine.

18.    Plaintiff is informed and believes that Infuse® is FDA-approved only for use in the lower spine with the appropriate approved cages.  Infuse® is also sold and distributed separately for certain tibia (leg) fractures and dental surgeries.

19.    Plaintiff is informed and believes that the use of Infuse® in the cervical spine has never been approved by the FDA.

20.    Plaintiff is informed and believes that Infuse® has become a bestseller for MEDTRONIC with one market analyst estimating that the product's sales were

Exhibit _17
Page 206
-4-
FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

approximately $815 million for the fiscal year ended in April 2008.

21.   Plaintiff is informed and believes that on July 1, 2008, the FDA issued a Public Health Notification to healthcare practitioners about complications from the use of rhBMP, including Infuse®, in the neck or cervical area of the spine. The FDA reported that it had received 38 reports over a four-year period through July 1, 2008, of complications from cervical use of rhBMP with some reports of life-threatening and fatal events.  Some of the complications were associated with swelling of the neck and throat tissue, which resulted in compression of the airway and/or neurological structures in the neck, and patients reported difficulty swallowing, breathing and speaking.   Several patients required emergency treatment, including tracheotomies and the insertion of feeding tubes.

22.   Plaintiff is informed and believes that 75% of the adverse reports related to the Infuse® were related to non-cleared, non-approved use of the product.

23.   The FDA noted that the anatomical proximity of the cervical spine to airway structures in the body had contributed to the seriousness of the events reported and the need for emergency medical intervention with the use of rhBMP, including Infuse®, in the cervical spine.

24.   The July 1, 2008, FDA Safety Alert regarding MEDTRONIC's Infuse® product was intended to alert physicians to:

> "…reports of life-threatening complications associated with recombinant human Bone Morphogenetic Protein (rhBMP) when used in the cervical spine. **Note that the safety and effectiveness of rhBMP in the cervical spine have not been demonstrated and these products are not approved by FDA for this use.**"
>
> *FDA Public Health Notification: Life-threatening Complications Associated with Recombinant Human Bone Morphogenetic Protein in Cervical Spine Fusion*, issued July 1, 2008 (http://www.fda.gov/cdrh/safety/070108-rhbmp.html) (emphasis in original).

///

25.    Plaintiff is informed and believes that Defendants and their co-conspirators were aware of the July 1, 2008, FDA Safety Alert regarding the risks associated with use of rhBMP, including Infuse®, in the cervical spine.

**B.    New and Adulterated Devices**

26.    California Health & Safety Code §111550 states, "No person shall sell, deliver, or give away any new drug or new device" unless it satisfies one of the specific delineated exceptions of California Health and Safety Code §111550.

27.    Under California Health and Safety Code §109975 "New device" means "any device the composition, construction, or properties of which are such that the device is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of devices, as having been adequately shown, through scientific investigations to be safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling or advertising thereof" or "any device the composition, construction, or properties of which are such that the device, as a result of such investigation to determine its safety and effectiveness for use under these conditions, has become so recognized, but which has not, otherwise than in the investigations, been used to a material extent or for a material time under the condition."

28.    Plaintiff is informed and believes that the cervical corpectomy cage used during Plaintiff's surgery was a "new device" as defined by California Health & Safety Code §109975.

29.    Plaintiff is informed and believes that the cervical corpectomy cage used during Plaintiff's surgery was not reported to or approved by the FDA either as a substantially equivalent device or a device requiring pre-market approval, and that Plaintiff was unaware of this fact.

30.    Plaintiff is informed and believes that the cervical corpectomy cage used during Plaintiff's surgery with the Infuse® bone graft substitute along with a sponge-like carrier for the protein created a "new device" as defined by California Health & Safety Code §109975.

Exhibit 17

Page 208

FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

31.    California Health and Safety Code §11295: "It is unlawful for any person to manufacture, sell, deliver, hold, offer for sale any drug or device that is adulterated." Under California Health and Safety Code §11290 "any drug or device is adulterated if any substance has been mixed or packed with it so as to reduce its quality or strength or if any substance has been substituted, wholly or in part, for the drug or device."

32.    Plaintiff is informed and believes that the substitution of an unapproved or uncleared cervical corpectomy cage for the LT or InterFix cages for use with the Infuse® Bone Graft and sponge created an "adulterated device" as defined by California Health & Safety Code §11290.

## C.    **MEDTRONIC's Financial Relationship with DR. WANG**

33.    Plaintiff is informed and believes that DR. WANG was an employee of THE REGENTS and was working as a clinical instructor and orthopedic surgeon at UCLA Medical Center.

34.    Plaintiff is informed and believes that at the time of plaintiff's consultation with DR. WANG in March 2009 and surgery on May 11, 2009, DR. WANG had a financial relationship with MEDTRONIC.

35.    Plaintiff is informed and believes that as part of his relationship with MEDTRONIC, DR. WANG received royalties for products manufactured by MEDTRONIC, including products used in spinal surgery.

36.    Plaintiff is informed and believes that DR. WANG was paid by MEDTRONIC to consult on development of products, including attending product design meetings for MEDTRONIC. MEDTRONIC has surgical technique guides based on surgical techniques used by DR. WANG.

37.    Plaintiff is informed and believes that as part of his relationship with MEDTRONIC, DR. WANG has received compensation from MEDTRONIC. Plaintiff is informed and believes that some of the compensation from MEDTRONIC has been related to DR. WANG's research on MEDTRONIC's medical devices.

38.    Plaintiff is informed and believes that DR. WANG has extensive research

1  interests in rhBMP, including the Infuse® product.

2      39.    The California Fair Political Practices Commission ("FPPC") requires that a

3  principal investigator for clinical trials/studies disclose his/her financial relationship with

4  the manufacturer who is running or funding the study/trial.  The FPPC is concerned that

5  conflicts of interest and/or bias may affect the integrity of reported outcomes of clinical

6  investigations.

7      40.    Plaintiff is informed and believes that DR. WANG failed to disclose and

8  misrepresented his financial relationship with MEDTRONIC on FPPC Statement of

9  Economic Interest forms signed under penalty of perjury for principal investigators in

10  clinical studies/trials.

11      41.    Plaintiff is informed and believes that DR. WANG stipulated to violations of

12  the FPPC requirements and was fined by the California Fair Political Practices Commission

13  ("FPPC") in 2010 for failing to disclose his financial interest in MEDTRONIC in relation

14  to his clinical studies.  Plaintiff is informed and believes that Defendants were aware of the

15  fine.

16      42.    Plaintiff is informed and believes that DR. WANG was also investigated by

17  the U.S. Senate and THE REGENTS (UCLA) for failing to disclose his financial

18  relationship with medical device manufacturers, including MEDTRONIC, as far back as

19  2007.

20      43.    Plaintiff is informed and believes that Defendants were aware that DR. WANG

21  was investigated by the U.S. Senate and THE REGENTS (UCLA) for failing to disclose his

22  financial relations with medical device manufacturers, including MEDTRONIC, as far back

23  as 2007.

24  **D.    Surgery of Plaintiff Jerome Lew**

25      44.    On or about March 31, 2009, Plaintiff consulted DR. WANG regarding

26  numbness and pain in both of his hands. DR. WANG diagnosed Plaintiff with "cervical

27  stenosis and cervical myelopathy with herniated disk at C4-C5 and C5-C6, and degenerative

28  disk disease."

45.     DR. WANG did not disclose to Plaintiff during consultation or at any time prior to surgery that DR. WANG had a financial relationship with MEDTRONIC, or that he intended to use MEDTRONIC's spine implant products during the surgery he planned for the Plaintiff.

46.     In a visit prior to surgery, DR. WANG told Plaintiff that a routine cervical fusion would be performed.

47.     Prior to Plaintiff's surgery, there were no conversations regarding use of Infuse®, and it was Plaintiff's understanding that he was receiving only an autograft from bone harvested from his own body during the surgery.

48.     On May 11, 2009, DR. WANG performed an "anterior C5 vertebrectomy and corpectomy, and C4-C6 anterior interbody fusion."    The surgery was performed at THE REGENTS' UCLA Medical Center in Santa Monica.

49.     During this procedure, DR. WANG removed the central portion of the C5 vertebral body and used a vertebral body replacement device to fill the space where the C5 body was partially removed.    Then he inserted the Infuse®-soaked absorbable collagen sponge and bone from the C5 vertebra into the cervical corpectomy cage with the intention that it would stimulate bone growth over time in order to "fuse." The cervical corpectomy cage and Infuse® products were manufactured and provided by MEDTRONIC.

50.     A sales representative from MEDTRONIC by the name of Brad Schaeffer was in the operating room throughout the Plaintiff's surgery.

51.     Plaintiff did not consent to a corpectomy or removal of his C5 vertebra.

52.     Plaintiff did not consent to replacement of the partially removed C5 vertebra with a corpectomy cage.

53.     Plaintiff did not consent to use of the Infuse® product.

54.     Plaintiff did not consent to a multi-level surgical procedure.  He only consented to a single C5-6 procedure.

55.     The use of the Infuse® product in the cervical spine had never been approved by the FDA as it had never been determined as safe and effective for the type of surgery

1   performed by DR. WANG.

2         56.    According to UCLA Medical Center and MEDTRONIC documentation, a
3   MEDTRONIC Verte-Stack corpectomy cage was implanted in Plaintiff.

4         57.    Plaintiff is informed and believes that the Verte-Stack device only had FDA
5   clearance for use in the thoracolumbar spine in 2009 and was noted to be contraindicated
6   for cervical spine surgery.

7         58.    Plaintiff is informed and believes that there was no legally approved,
8   manufactured, and distributed Verte-Stack corpectomy cage for use in the cervical spine at
9   the time of plaintiff's surgery, and that the Verte-Stack device cleared for the thoracolumbar
10  spine would not fit in the cervical spine.

11        59.    Plaintiff is further informed and believes that in 2009 there were no
12  MEDTRONIC corpectomy cages that were FDA-cleared and/or approved for the cervical
13  spine.

14        60.    Plaintiff is informed and believes that the cervical corpectomy cage that
15  DR. WANG implanted in Plaintiff during the cervical fusion surgery was manufactured and
16  provided by MEDTRONIC and was not cleared and/or approved by the FDA at the time of
17  plaintiff's surgery.

18        61.    Plaintiff is informed and believes that MEDTRONIC and DR. WANG were
19  experimenting with the use of rhBMP (Infuse®) in the cervical spine.  MEDTRONIC
20  provided the Infuse® and cervical corpectomy cage, DR. WANG provided the
21  patient/human subject, MR. LEW, and THE REGENTS allowed the uncleared/unapproved
22  cervical corpectomy cage to enter its hospital and be implanted in MR. LEW.

23        62.    Neither MEDTRONIC nor DR. WANG nor THE REGENTS disclosed to
24  plaintiff that an unapproved or uncleared cervical corpectomy cage would be implanted
25  during his surgery.

26        63.    After his May 2009 surgery, Plaintiff's symptoms initially improved.
27  However, he later began to experience numbness and pain in both hands, dysphagia, neck
28  pain, fatigue and residual hoarseness.

64.     A subsequent CT scan in March 2011 showed evidence of bony overgrowth present around and outside the corpectomy cage. Radiology studies done in May through July 2012, including cervical MRI and CT scans, revealed evidence of bony overgrowth posteriorly from the cage entering into the canal and compressing the cord.

65.     As a result of the significant bony overgrowth, Plaintiff underwent a cervical laminectomy and bilateral neural foraminotomies on September 5, 2012.   Despite the corrective surgery, Plaintiff continues to suffer from chronic nerve damage as a result of the surgery performed by DR. WANG with MEDTRONIC devices at THE REGENTS' hospital.

66.     Excessive bony overgrowth is one of the known, inherent dangers associated with the improper use of the Infuse® bone graft, and one of the primary reasons it is not approved for use in the cervical spine.

# I.

# **FIRST CAUSE OF ACTION**

## **(Fraud by Concealment against All Defendants)**

67.     Plaintiff incorporates by reference paragraphs 1 through 66 of this Complaint as if fully set forth here and further alleges as follows:

68.     Plaintiff is informed and believes and thereon alleges that Defendants MEDTRONIC and DOES 1 through 50 conspired with DR. WANG and THE REGENTS and DOES 51 through 100 to fraudulently coerce patients into undergoing experimental cervical spine surgery with an unapproved/uncleared corpectomy cage and the Infuse® Bone Graft.

69.     Plaintiff is informed and believes and thereon alleges that Defendants MEDTRONIC and DOES 1 through 50 conspired with DR. WANG and THE REGENTS and DOES 51 through 100 to convince MR. LEW to undergo surgery in his cervical spine. Plaintiff is informed and believes and thereon alleges that Defendants were experimenting with the use of rhBMP, including Infuse®, in the cervical spine.   MEDTRONIC would provide the Infuse® and the experimental corpectomy cage, THE REGENTS would allow

1    the unapproved/uncleared device into its hospital, and DR. WANG would provide the

2    patient/human subject, MR. LEW.

3        70.    Plaintiff is informed and believes and thereon alleges that Defendants acted in

4    furtherance of a conspiracy to commit fraud to convince MR. LEW to undergo cervical

5    spine surgery.

6        71.    Plaintiff further alleges that as part of the conspiracy to commit fraud,

7    Defendants intentionally concealed and failed to disclose to plaintiff the following facts:

8        a.    That DR. WANG would be using the Infuse® Bone Graft product during

9            the cervical surgery he performed on the Plaintiff on May 11, 2009;

10       b.    That the Infuse® Bone Graft Product had received only limited FDA

11           approval for certain specific procedures and was not approved for use in the

12           cervical spine;

13       c.    That there were additional risks involved in using the Infuse® Bone Graft

14           product in the cervical spine, including unwanted bony overgrowth and

15           migration to sensitive nerve areas which could exacerbate Plaintiff's pain;

16       d.    That use of the Infuse® Bone Graft product could cause severe, debilitating,

17           permanent neck and back pain;

18       e.    That DR. WANG had a financial relationship with MEDTRONIC, the

19           medical device manufacturer of the Infuse® Bone Graft product and

20           corpectomy cage DR. WANG used during the procedure;

21       f.    That MEDTRONIC provided to DR. WANG a corpectomy cage that was

22           not approved or cleared by the FDA for use in the cervical spine;

23       g.    That DR. WANG intended to use and did use a corpectomy cage that was

24           not approved or cleared by the FDA for use in the cervical spine during the

25           procedure;

26       h.    That DR. WANG intended to use and did use a corpectomy cage that was

27           not approved or cleared by the FDA for use with the Infuse® Bone Graft

28           Product;

i.    That the use of an unapproved or uncleared corpectomy cage meant that it had never been determined as safe and effective for use in the manner in which DR. WANG and MEDTRONIC intended to use the cage during Plaintiff's surgery, and that it carried additional risks of unwanted bone growth and migration and danger to plaintiff's nerves;

j.    That DR. WANG and MEDTRONIC were experimenting with uncleared/ unapproved products for the cervical spine and using Plaintiff as a test subject;

k.    That THE REGENTS allows the use of Infuse® in a manner that was not considered safe and was against its own policies; and

l.    That THE REGENTS allowed unapproved or uncleared medical devices into its hospital for implant in patients, like MR. LEW.

72.    At the time of Plaintiff's surgery, Plaintiff was unaware of any of the above-stated material facts, including the fact DR. WANG intended to use Infuse® and an unapproved/uncleared corpectomy cage during the recommended cervical spine surgery; that DR. WANG had a financial relationship with MEDTRONIC; that MEDTRONIC would be providing and delivering to DR. WANG at THE REGENTS' hospital an unapproved and uncleared corpectomy cage for use in his cervical spine; that the Infuse® was not recommended for use in the cervical spine and that there were additional risks including risk of bone migration and nerve damage when used in the cervical spine; that the unapproved or uncleared corpectomy cage had never been determined as safe and effective for use in the cervical spine; that THE REGENTS would allow unapproved and uncleared devices into its hospital for use during spine surgery; and that Defendants were experimenting on him.

73.    Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, were aware that DR. WANG was using Infuse® in the cervical spines of patients, including MR. LEW, and that MEDTRONIC was supplying DR. WANG at THE REGENTS' hospital with an unapproved or uncleared corpectomy cage device that

Defendants intended for use in the cervical spine with the Infuse® Bone Graft product.

74.    Plaintiff is informed and believes and thereon alleges that Defendants were aware that THE REGENTS would not prevent MEDTRONIC from supplying to THE REGENTS' hospital an unapproved or uncleared corpectomy cage so that DR. WANG could implant the unapproved or uncleared device in patients, like MR. LEW.

75.    Plaintiff is informed and believes and thereon alleges that Defendants were aware of the fact the Infuse® Bone Graft was not intended for use in the cervical spine and that there were additional risks involved in using the Infuse® Bone Graft Product in the cervical spine, including unwanted bone growth and migration of the bone to sensitive nerve areas which could exacerbate Plaintiff's pain and potentially lead to life-threatening complications.

76.    Plaintiff is informed and believes and thereon alleges that Defendants were aware that the corpectomy cage device that MEDTRONIC provided to DR. WANG at THE REGENTS' hospital for implantation in Plaintiff's cervical spine was not cleared or approved by the FDA, and it had never been determined as safe and effective or substantially equivalent, and that it carried additional risks of unwanted bone growth and migration and danger to plaintiff's nerves.

77.    Plaintiff is informed and believes that DR. WANG was involved in clinical investigations funded by MEDTRONIC on rhBMP-2 at UCLA Medical Center, and rhBMP-2 is the active biologic in the Infuse® product.

78.    Plaintiff is informed and believes that Defendants, and each of them, were aware that DR. WANG was using the Infuse® in a contraindicated and potentially dangerous manner and intentionally concealed the above-stated facts from the Plaintiff in order to induce Plaintiff to undergo cervical surgery.

79.    Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, were aware that MEDTRONIC provided DR. WANG at THE REGENTS' hospital with an uncleared/unapproved corpectomy cage for use in Plaintiff's cervical spine surgery in an unsafe and potentially dangerous manner and intentionally concealed the

Exhibit _17
Page 216
-14-

FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

above-stated facts from the plaintiff in order to induce Plaintiff to undergo cervical surgery.

80.    Plaintiff is informed and believes and thereon alleges that Defendants MEDTRONIC and DOES 1 through 50 conspired with DR. WANG and THE REGENTS and DOES 51 through 100 to coerce the Plaintiff to undergo surgery.  Plaintiff alleges that in furtherance of the conspiracy, MEDTRONIC intentionally supplied DR. WANG and THE REGENTS with a corpectomy cage to be used with the Infuse® in the cervical spine despite their knowledge that the cage was not approved or cleared for such use.

81.    Having failed to inform Plaintiff of these facts and risks, Defendants and each of them, never obtained Plaintiff's informed consent to perform the procedures that were performed using Defendants' unapproved or uncleared devices.

82.    Plaintiff was unaware that he was being used as a human test subject for MEDTRONIC's products.

83.    Had Plaintiff known the facts regarding DR. WANG's relationship with MEDTRONIC, and the facts regarding the Infuse® and corpectomy cage that were available only to Defendants and their co-conspirators at the time of the surgery, Plaintiff would not have elected to proceed.

84.    Plaintiff is informed and believes and thereon alleges that Defendants, by and through their managing agents identified herein, and defendants' co-conspirators intended to induce Plaintiff's reliance.

85.    Plaintiff did rely on the fraud, in that but for the concealments of Defendants and their agents and co-conspirators, Plaintiff would not have undergone treatment and surgery with DR. WANG, who was provided the Infuse® and uncleared/unapproved corpectomy cage by MEDTRONIC at THE REGENTS' hospital.

86.    Plaintiff's reliance on the representations of Defendants and their agents and co-conspirators was reasonable and justifiable because Plaintiff was entitled to rely on the representations of his healthcare providers, including DR. WANG, and believe those representations were complete, and he was entitled to rely on medical device manufacturers, like MEDTRONIC, to not provide his healthcare providers, including DR. WANG and THE

Exhibit _17
Page 217
-15-
FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

REGENTS, with uncleared or unapproved devices for use during his surgery.

87.    Furthermore, Plaintiff is informed and believes and thereon alleges that the intent of Defendants and their agents and co-conspirators to induce Plaintiff to alter his position can be inferred from the fact that Defendants MEDTRONIC and DOES 1 through 50 worked with Plaintiff's healthcare providers DR. LEW and THE REGENTS and DOES 51 through 100 and provided unapproved/uncleared medical devices for use during Plaintiff's surgery, knowing that the Plaintiff would act in reliance on the information provided by the healthcare providers based on their medical expertise and positions as managing agents for THE REGENTS.

88.    The acts and omissions alleged herein against Defendants MEDTRONIC, THE REGENTS, and any corporate DOES 1 through 100 were actually committed, ratified, and/or authorized by managing agents of the business entity, including but not limited to defendants' officers, administrators and directors.

89.    Plaintiff is informed and believes and thereon alleges that plaintiff's reliance on the representations of Defendants and their agents and co-conspirators was a substantial factor in causing his harm.

90.    As a direct and proximate result of the fraudulent concealments of Defendants MEDTRONIC, DR. WANG, THE REGENTS, and DOES 1 through 100, Plaintiff has been injured in his health, strength and activity, and has suffered, continues to suffer and, on information and belief, will suffer indefinitely into the future, severe, lasting and debilitating physical and mental pain and suffering, some of which injuries may be permanent, all in an amount in excess of the jurisdictional minimum of the Court.

91.    As a further direct and proximate result of the fraudulent concealments of Defendants MEDTRONIC, DR. WANG, THE REGENTS, and DOES 1 through 100, Plaintiff has lost earnings and earning capacity, and will continue to incur such losses for an indefinite period of time in the future, and some of which losses may be permanent, all in an amount excess of the jurisdictional minimum of the Court.

92.    As a further direct and proximate result of the fraudulent concealments of

1  Defendants MEDTRONIC, DR. WANG, THE REGENTS, and DOES 1 through 100,

2  Plaintiff has incurred medical, hospital and related expenses and, on information and belief,

3  will continue to incur such expenses in the future, all in an amount in excess of the

4  jurisdictional minimum of the Court.

5        93.    The aforementioned conduct of corporate defendants MEDTRONIC and

6  DOES 1 through 50 was despicable and done with malice, oppression and fraud, and

7  subjected plaintiff to cruel and unjust hardship in willful and conscious disregard of the

8  plaintiff's rights and safety, so as to justify an award of exemplary and punitive damages.

9                                            II.

10                          **SECOND CAUSE OF ACTION**

11                        (**Battery against All Defendants**)

12        94.    Plaintiff incorporates by reference paragraphs 1 through 66 and paragraphs 68

13  through 89 of the First Cause of Action as though fully set forth herein and further alleges

14  as follows:

15        95.    Plaintiff is informed and believes and thereon alleges that Defendants

16  DR. WANG and THE REGENTS and DOES 51 through 100 conspired with MEDTRONIC

17  and DOES 1 through 50 to commit battery on patients undergoing cervical spine surgery by

18  implanting unapproved/uncleared corpectomy cages and the Infuse® bone graft without the

19  patient's consent.

20        96.    In order to perpetrate the battery, DR. WANG and THE REGENTS and DOES

21  51 through 100 needed MEDTRONIC's unapproved/uncleared cervical corpectomy cages

22  and Infuse®.   DR. WANG, MEDTRONIC and DOES 1 through 100 needed THE

23  REGENTS to allow the unapproved or uncleared corpectomy cage and Infuse® into its

24  hospital.  MEDTRONIC and DOES 1 through 50 needed DR. WANG to provide the test

25  subject for the experimental surgery on the cervical spine using MEDTRONIC's

26  unapproved/uncleared devices.

27        97.    Plaintiff is informed and believes and thereon alleges that Defendant

28  MEDTRONIC and DOES 1 through 50 conspired and agreed with DR. WANG and THE

Exhibit 17

Page 219

1 | REGENTS and DOES 51 through 100 to convince MR. LEW to undergo surgery in his
2 | cervical spine with the Infuse® Bone Graft device and unapproved/uncleared corpectomy
3 | cage.

4 |     98.    Plaintiff is informed and believes and thereon alleges that MR. LEW was
5 | unaware the surgery was experimental.

6 |     99.    Plaintiff is informed and believes and thereon alleges that DR. WANG
7 | committed battery by performing an operation and procedures to which the patient had not
8 | consented.

9 |     100.   Plaintiff is informed and believes and thereon alleges that DR. WANG could
10 | not commit the battery without the agreement of Defendants MEDTRONIC and THE
11 | REGENTS and DOES 1 through 100. MEDTRONIC supplied the Infuse® and the
12 | unapproved or uncleared corpectomy cage that were used during plaintiff's surgery at THE
13 | REGENTS' hospital.

14 |     101.   Plaintiff MR. LEW did not consent to use of a corpectomy cage that was not
15 | cleared or not approved by the FDA for use in his cervical spine or with the Infuse® product.

16 |     102.   Plaintiff is informed and believes and thereon alleges that the use of the
17 | unapproved or uncleared corpectomy device with the Infuse® product was a substantially
18 | different procedure than what the plaintiff consented to.

19 |     103.   Defendants MEDTRONIC and DOES 1 through 50, through their co-
20 | conspirator DR. WANG and DOES 51 through 100, did intentionally touch the plaintiff by
21 | performing a fusion with an uncleared or unapproved corpectomy cage using the Infuse®
22 | product supplied by Defendants MEDTRONIC and DOES 1 through 50.

23 |     104.   Defendant THE REGENTS and DOES 51 through 100, through its agents,
24 | including DR. WANG, did intentionally touch the plaintiff by performing a fusion with an
25 | uncleared or unapproved corpectomy cage using the Infuse® product supplied by
26 | Defendants MEDTRONIC and DOES 1 through 50 at THE REGENTS' hospital.

27 |     105.   The touching performed by the Defendants' co-conspirator and agent
28 | DR. WANG resulted in harmful or offensive contact with the plaintiff's person.

106.   Plaintiff is informed and believes and thereon alleges that Defendant THE REGENTS and its agent DR. WANG conspired with MEDTRONIC and DOES 1 through 50 to commit a battery on Plaintiff by allowing MEDTRONIC's uncleared/unapproved corpectomy cage with the Infuse® product into its hospital for implantation by DR. WANG into plaintiff during an experimental surgery.  Plaintiff is further informed and believes that THE REGENTS ratified the conduct of DR. WANG by allowing the uncleared/unapproved device into tis hospital and promoting DR. WANG to Vice Chair of Clinical Operations in 2012.

107.   Plaintiff is informed and believes and thereon alleges that Defendant MEDTRONIC and DOES 1 through 50 intentionally acted in furtherance of a conspiracy to commit battery by intentionally manufacturing and supplying to DR. WANG, THE REGENTS and DOES 51 through 100, at THE REGENTS' hospital, an unapproved/uncleared corpectomy cage for use in Plaintiff's cervical spine with the Infuse® Bone Graft product

108.   Plaintiff is informed and believes and thereon alleges that Defendant MEDTRONIC and DOES 1 through 50 knew that the corpectomy cage they were manufacturing and supplying to DR. WANG and THE REGENTS and DOES 51 through 100 for use in cervical spine surgery, including Plaintiff's surgery, was not cleared or approved by the FDA for use in the cervical spine or with the Infuse® Bone Graft and that the safety and efficacy of these corpectomy cages with Infuse® was not shown or proven.

109.   Plaintiff is informed and believes and thereon alleges that Defendants DR. WANG, THE REGENTS, and DOES 51 through 100, through their agents, knew that the corpectomy cage and Infuse® manufactured and supplied by MEDTRONIC were not cleared or approved or found to be safe or effective for use in the cervical spine.

110.   Plaintiff is informed and believes and thereon alleges that Defendants MEDTRONIC and THE REGENTS and DOES 1 through 100 were aware that DR. WANG was implanting these unapproved/uncleared corpectomy cages with Infuse® into patients' cervical spines, including Plaintiff's cervical spine, and agreed and ratified DR. WANG's

Exhibit _17
Page 221
-19-
FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

use of these unauthorized cages by providing the unapproved/uncleared corpectomy cage and Infuse® for Plaintiff's surgery.

111.   The acts and omissions alleged herein against Defendants MEDTRONIC, THE REGENTS and any corporate DOES 1 through 100 were actually committed, ratified, and/or authorized by managing agents of the business entity, including but not limited to defendants' officers, administrators and directors.

112.   As a result of the intentional and harmful or offensive, unconsented to touching by Defendants DR. WANG and THE REGENTS and DOES 51 through 100, and MEDTRONIC and DOES 1 through 50 through their conspiracy with DR. WANG and THE REGENTS, plaintiff was hurt and injured in his health, strength, and activity and sustained injury to his body and shock and injury to his nervous system and person, all of which have caused and continue to cause said plaintiff great mental, physical, and nervous pain and suffering, and fright, grief, anxiety, worry, and apprehension, all to his general damage in an amount in excess of the jurisdictional limits of this court.

113.   As a further result of the battery committed by Defendants DR. WANG and THE REGENTS and DOES 51 through 100, and MEDTRONIC and DOES 1 through 50 through their conspiracy with DR. WANG and THE REGENTS, Plaintiff was required to and did employ physicians, surgeons and other healthcare providers to examine, treat and care for him and did incur medical, nursing and incidental expenses, and was further required to employ the services of friends and family members to provide nursing and related services.  The exact amount of such expense is unknown to plaintiff at this time, and inasmuch as the same is continuing and ongoing, plaintiff will seek leave of the court to prove said amount at the time of trial.

114.   As a further result of the battery committed by Defendants DR. WANG and THE REGENTS and DOES 51 through 100, and MEDTRONIC and DOES 1 through 50 through their conspiracy with DR. WANG and THE REGENTS, Plaintiff has been permanently hurt and injured in his health and physical ability, thereby causing loss of past and future earning and future earning capacity, all to his damage in an amount to be proven

at the time of trial.

115.   The aforementioned conduct of corporate defendants MEDTRONIC and DOES 1 through 50 was despicable and done with malice, oppression and fraud, and subjected plaintiff to cruel and unjust hardship in willful and conscious disregard of the plaintiff's rights and safety, so as to justify an award of exemplary and punitive damages.

### III.

### THIRD CAUSE OF ACTION

### (Negligence against Defendants MEDTRONIC and DOES 1-50)

116.   Plaintiff incorporates by reference paragraphs 1 through 66, paragraphs 68 through 89 of the First Cause of Action, and paragraphs 95 through 111 of the Second Cause of Action as though fully set forth herein and further alleges as follows:

117.   According to MEDTRONIC documentation and documentation from UCLA Medical Center, a Medtronic Verte-Stack corpectomy cage was implanted in Plaintiff.

118.   Plaintiff is informed and believes and thereon alleges that the Verte-Stack device only had FDA 510(k) clearance for use in the thoracolumbar spine in 2009.

119.   Plaintiff is informed and believes and thereon alleges that there was no legally approved, manufactured, and distributed Verte-Stack corpectomy cage for use in the cervical spine at the time of plaintiff's surgery.

120.   Plaintiff is informed and believes and thereon alleges that the device implanted in his neck is not a Verte-Stack corpectomy cage.

121.   Plaintiff is further informed and believes and thereon alleges that Defendants MEDTRONIC and DOES 1 through 50 did not manufacture or distribute an FDA-cleared and/or approved cervical corpectomy cage in 2009.

122.   Plaintiff is informed and believes and thereon alleges that the corpectomy cage provided by Defendants MEDTRONIC and DOES 1 through 50 and implanted by DR. WANG during surgery was not cleared and/or approved by the FDA at the time of plaintiff's surgery.

123.   Plaintiff is informed and believes and thereon alleges that Defendants

MEDTRONIC and DOES 1 through 50 manufactured and provided an unapproved or uncleared corpectomy cage to DR. WANG and intended it to be implanted during MR. LEW's cervical spine surgery with the Infuse® Bone Graft.

124.    Plaintiff is informed and believes and thereon alleges that Defendants MEDTRONIC and DOES 1 through 50 violated various California laws, statutes and regulations, including but not limited, to the following:

125.    Plaintiff is informed and believes and thereon alleges that Defendants MEDTRONIC and DOES 1 through 50 violated California Health and Safety Code §111550: "No person shall sell, deliver, or give away any new drug or new device" unless it satisfies one of the specific delineated exceptions of California Health and Safety Code §111550(a) and (b).

126.    Plaintiff is informed and believes and thereon alleges that the corpectomy cage implanted in Plaintiff does not qualify for any of the exceptions listed in California Health and Safety Code §111550(a) and (b).

127.    Plaintiff is informed and believes that the cervical corpectomy cage implanted in Plaintiff was not reported to or approved by the FDA either as a substantially equivalent device or a device requiring pre-market approval, and that Plaintiff was unaware of this fact.

128.    Under California Health and Safety Code §109975 "New device" means "any device the composition, construction, or properties of which are such that the device is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of devices, as having been adequately shown, through scientific investigations to be safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling or advertising thereof" or "any device the composition, construction, or properties of which are such that the device, as a result of such investigation to determine its safety and effectiveness for use under these conditions, has become so recognized, but which has not, otherwise than in the investigations, been used to a material extent or for a material time under the conditions."

129.    Plaintiff is informed and believes and thereon alleges that the corpectomy cage

implanted in Plaintiff was a "new device" as defined by California Health & Safety Code §109975.

130.   Plaintiff is informed and believes and thereon alleges that the corpectomy cage implanted in Plaintiff with the Infuse® bone graft substitute and the sponge-like carrier for the protein created a "new device" as defined by California Health & Safety Code §109975.

131.   Plaintiff is further informed and believes and thereon alleges that defendants violated California Health and Safety Code §111295: "It is unlawful for any person to manufacture, sell, deliver, hold, offer for sale any drug or device that is adulterated."

132.   Under California Health and Safety Code §111290 "any drug or device is adulterated if any substance has been mixed or packed with it so as to reduce its quality or strength or if any substance has been substituted, wholly or in part, for the drug or device."

133.   Plaintiff is informed and believes and thereon alleges that only the Medtronic LT (lumbar tapered) and InterFix cages were approved as the spinal fusion containment cage components of the Infuse® device.  The Medtronic LT and InterFix cages are only FDA approved for use in the lumbar spine.

134.   Plaintiff is informed and believes and thereon alleges that Defendants MEDTRONIC and DOES 1 through 50 manufactured and delivered or offered for sale a corpectomy cage to be used in the cervical spine with the Infuse® Bone Graft.

135.   Plaintiff is informed and believes and thereon alleges that the substitution of an unapproved or uncleared cage for the LT or InterFix cages for use with the Infuse® Bone Graft and sponge created an "adulterated device" as defined by California Health & Safety Code §111290.

136.   Plaintiff is informed and believes and thereon alleges that the violation of these laws and statutes was a substantial factor in causing injury to the plaintiff.

137.   Plaintiff is informed and believes and thereon alleges that the injury resulted from an occurrence of the nature which the above statutes were designed to prevent.

138.   Plaintiff is informed and believes and thereon alleges that he was of the class of persons for whose protection the statutes were adopted.

139.   Plaintiff relied on the fact that Defendants MEDTRONIC and DOES 1 through 50 would not sell, deliver or give away a "new device," or would not manufacture, sell, deliver or offer for sale an "adulterated device" as defined by the California Health and Safety Code.

140.   As a result of the actions and representations by Defendants, Plaintiff underwent the May 11, 2009, surgery unaware that the surgery involved a new and adulterated device.

141.   Plaintiff is informed and believes and thereon alleges that as a result of the use of a new and/or adulterated device, the Infuse® was not contained within the corpectomy cage, causing unwanted bony overgrowth that injured Plaintiff's nerves and caused permanent damage.

142.   Plaintiff is informed and believes and thereon alleges that Defendants MEDTRONIC and DOES 1 through 50 were aware that the use of a new and adulterated device could cause unwanted bony overgrowth and migration that could damage plaintiff's nerves.

143.   The acts and omissions alleged herein against Defendants MEDTRONIC and DOES 1 through 50 were actually committed, ratified, and/or authorized by managing agents of Defendants MEDTRONIC and DOES 1 through 50, including but not limited to defendants' officers, administrators and directors.

144.   As a direct and proximate result of the acts and omissions of Defendants MEDTRONIC and DOES 1 through 50, plaintiff was hurt and injured in his health, strength, and activity and sustained injury to his body and shock and injury to his nervous system and person, all of which have caused and continue to cause said plaintiff great mental, physical, and nervous pain and suffering, and fright, grief, anxiety, worry, and apprehension, all to his general damage in an amount in excess of the jurisdictional limits of this court.

145.   As a further direct and proximate result of the acts and omissions of Defendants MEDTRONIC and DOES 1 through 50, Plaintiff was required to and did employ physicians, surgeons and other healthcare providers to examine, treat and care for him and

1  did incur medical, nursing and incidental expenses, and was further required to employ the

2  services of friends and family members to provide nursing and related services.  The exact

3  amount of such expense is unknown to plaintiff at this time, and inasmuch as the same is

4  continuing and ongoing, plaintiff will seek leave of the court to prove said amount at the

5  time of trial.

6       146.   As a further direct and proximate result of the acts and omissions of Defendants

7  MEDTRONIC and DOES 1 through 50, Plaintiff has been permanently hurt and injured in

8  his health and physical ability, thereby causing loss of past and future earning and future

9  earning capacity, all to his damage in an amount to be proven at the time of trial.

10       147.   The aforementioned conduct of corporate defendants MEDTRONIC and

11  DOES 1 through 50 was despicable and done with malice, oppression and fraud, and

12  subjected plaintiff to cruel and unjust hardship in willful and conscious disregard of the

13  plaintiff's rights and safety, so as to justify an award of exemplary and punitive damages.

14

15                      **<u>PRAYER FOR RELIEF</u>**

16      **WHEREFORE,** Plaintiff prays for judgment against Defendants as follows:

17            1.    For general damages in an amount according to proof at the

18                 time of trial;

19            2.    For medical and incidental expenses and the reasonable value

20                 of nursing and therapy services, past and future, according to

21                 proof;

22            3.    For loss of earnings, past and future, and loss of earning

23                 capacity, according to proof;

24            3.    For special damages according to proof;

25            4.    For punitive damages as to the First, Second and Third Causes

26                 of Action;

27            5.    For pre-judgment and post-judgment interest as allowed by

28                 law;

Exhibit _17
Page 227
-25-

FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

6.    For costs of suit incurred herein; and

7.    For such other and further relief as the court may deem just and proper.

DATED:  November __14__, 2014            LAW OFFICES OF ROBERT VAAGE


                                        By: _/s/  Robert F. Vaage_____
                                            ROBERT F. VAAGE
                                            Attorney for Plaintiff


## DEMAND FOR JURY

Plaintiff hereby respectfully requests a jury trial as to all claims.


DATED:  November __14__, 2014            LAW OFFICES OF ROBERT VAAGE


                                        By: _/s/  Robert F. Vaage_____
                                            ROBERT F. VAAGE
                                            Attorney for Plaintiff


Exhibit _17_
Page 228
-26-
FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL